IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION


REUBEN MORGAN,                        )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )   CIVIL ACTION 11-0535-WS-B
                                      )
BILL VANN COMPANY, INC., *et al.*,    )
                                      )
        Defendants.                   )


ORDER

This action was recently transferred to the docket of the undersigned.  Docket review revealed a number of pending motions, including Plaintiff's Motion for Remand (doc. 39) and Plaintiff's Motion for Expedited Consideration of Pending Remand Motions (doc. 48).  These motions are now ripe for consideration.[1]

The Motion for Expedited Consideration is **granted** in light of plaintiff's terminal health condition and the likelihood of imminent transfer of this action to Multidistrict Litigation

---

[1]     Two points are noted from the outset.  First, plaintiff filed a pair of redundant motions for expedited consideration of the Motion to Remand.  The earlier-filed Motion for Expedited Consideration (doc. 38) is **moot** because plaintiff later filed another motion requesting precisely the same relief.  Second, plaintiff disregarded the 15-page limitation on reply briefs as prescribed by Local Rule 7.1(b) when he filed a 41-page reply (doc. 47) without leave of court. This is improper and would justify striking plaintiff's brief and requiring him to refile an edited 15-page version.  Those page limitations exist for good reason, to protect litigants and judicial resources alike, and are neither aspirational nor advisory in a litigant's discretion.  Because of the time-sensitivity of the Motion to Remand, the Court will not force Morgan to re-craft his brief; however, plaintiff's counsel is expected to conform future filings to Local Rule 7.1(b) or, if he cannot reasonably do so, to seek prior leave of court to file excess pages, as defendants did here. Plaintiff's counsel also raises a large number of new arguments in his reply brief, which is improper in federal practice.  *See, e.g., Herring v. Secretary, Dep't of Corrections*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotes omitted); *Sharpe v. Global Sec. Int'l*, 766 F. Supp.2d 1272, 1294 n.26 (S.D. Ala. 2011) ("Because it is improper for defendant to raise this new argument in its reply brief, that argument will not be considered.").

proceedings in the Eastern District of Pennsylvania, with the potential for delay in adjudication of the merits.  Because plaintiff insists that federal removal jurisdiction does not lie and that there are procedural defects in removal, the Court agrees that these issues should be resolved promptly before any MDL transfer takes effect.  Doing so will ensure that if removal was improper for the stated jurisdictional or procedural reasons, then this case may be remanded without delay to state court, without first undergoing a potentially protracted detour to the MDL docket.

## I.    Background.

The factual and legal posture of this action are familiar in many ways.  Indeed, this case is one of myriad state-court asbestos actions involving former U.S. Navy or Coast Guard personnel that has been removed to federal court by a private contractor on the basis of federal officer or federal enclave jurisdiction, only for the plaintiff to challenge the propriety of removal via motion to remand.  The scenario has played out countless times in federal courthouses (including this one) across the United States in recent years, with the same or substantially similar legal issues in play.

Plaintiff, Reuben Morgan, brought this action in the Circuit Court of Wilcox County, Alabama, in May 2011.  His Complaint named dozens of defendants, among them CBS Corporation and General Electric Company.  In his pleading, Morgan alleged that he was exposed to asbestos products that the defendants had manufactured, processed, sold, installed, marketed and/or allowed to be on premises they controlled, and that he had contracted "an asbestos related disease" via such exposure.  The Complaint did not pinpoint the time, locations, or sources of those asbestos exposures, but merely alleged that "[f]rom approximately 1950 through 1992, Morgan was exposed to asbestos and asbestos containing products … while working with and around asbestos and asbestos products manufactured and supplied by Defendants."  (Complaint (doc. 1-2), ¶¶ 54-55.)  On that basis, plaintiff asserted purely state-law causes of action against defendants for negligence, strict liability, and gross, willful and wanton misconduct.  A fair reading of the Complaint shows that Morgan's claims encompass both "defective design" and "failure to warn" theories of relief.  (*Id.*, ¶¶  57, 63.)  The Complaint did not specify that Morgan sought to recover against CBS, General Electric, or anyone else for asbestos exposures onboard a U.S. Navy or U.S. Coast Guard vessel.

On July 7, 2011, Morgan filed discovery responses to which he affixed a three-page chart labeled "Reuben Morgan – Work History Summary." That exhibit purported to list all of his job sites and employers from 1950 through 1992. The first four entries referred to Morgan's work in the U.S. Navy from 1950 through 1954, reflecting that he was assigned to the USS *Kleinsmith*, the USS *Earle B. Hall*, and the USS *Burdo* at various times during that period, working predominantly as a machinist / engine room worker. (Doc. 39, Exh. A, at 29-31.) Later entries showed that Morgan worked as a machinist onboard a pair of Coast Guard vessels between 1959 and 1964. Nothing in those discovery responses expressly disclosed Morgan's contention that he was exposed to asbestos while assigned to those military vessels, much less linked his military service to particular products manufactured, designed, installed or marketed by CBS or General Electric.[2] This is so despite the fact that the subject interrogatories specifically asked Morgan to "set forth the places, circumstances, and dates of exposure" for each asbestos-containing product to which he claimed to have been exposed. (*Id.* at Set I, Interrogs. # 9, 10.)

In deposition sessions on August 16 and 25, 2011, Morgan testified that he associated asbestos with turbines onboard one or more of those Navy and Coast Guard ships, and that the turbines had been manufactured by General Electric and/or Westinghouse (a predecessor in interest to CBS). (Doc. 44, Exh. B, at 274-76, 281.) On September 15, 2011 (within 30 days after plaintiff's deposition), CBS and General Electric filed a Notice of Removal (doc. 1) in this District Court. They alleged that removal was proper under the "federal officer" provisions of 28 U.S.C. § 1442(a) and explained the timing of the Notice of Removal by stating that Morgan's deposition was the "first paper" from which the removable status of his claims could be ascertained. (Doc. 1, ¶ 5(e).) On October 14, 2011, plaintiff moved for remand of this action to state court, citing both jurisdictional and procedural defects in removal.

II.     **Analysis.**

   A.     ***Legal Standard for Removal Under 28 U.S.C. § 1442(a)(1).***

The relevant removal statute provides that "[a] civil action or criminal prosecution commenced in a State court against any of the following may be removed by them …: The

---

[2]     The same is true of discovery responses that Morgan served on July 12, 2011, when he indicated that he "served in both the Navy and the Coast Guard" and referred to his Work History Summary, without elaboration. (Doc. 39, Exh. B, at Interrog. #11.)

United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office …."  28 U.S.C. § 1442(a)(1).  "Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law."  *Jefferson County, Ala. v. Acker*, 527 U.S. 423, 431, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999).  In a nutshell, the policy concern animating § 1442(a) is that "[i]f the federal government can't guarantee its agents access to a federal forum if they are sued or prosecuted, it may have difficulty finding anyone willing to act on its behalf."  *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Corley v. Long-Lewis, Inc.*, 688 F. Supp.2d 1315, 1332 (N.D. Ala. 2010) ("The purpose of § 1442(a)(1) is to permit the removal of those actions commenced in state court that expose a federal official to potential civil liability or criminal penalty for an act performed … under color of office.") (citation and internal quotation marks omitted); *Parlin v. DynCorp Int'l, Inc.*, 579 F. Supp.2d 629, 634 (D. Del. 2008) (explaining that § 1442(a) "seeks to protect federal officials from state-court proceedings that may reflect local prejudice against unpopular federal laws or federal officials").

To establish jurisdiction under § 1442(a)(1), a removing defendant situated like CBS and General Electric must show that "(1) it is a 'person' within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct 'acting under' a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office."  *Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3rd Cir. 1998); *see also Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010) (defendant invoking § 1442(a)(1) must establish that it is a person within the meaning of the statute, that it acted under a federal officer, that it performed the actions for which it is being sued under color of federal office, and that it has a colorable federal defense); *Isaacson v. Dow Chemical Co.*, 517 F.3d 129, 135 (2nd Cir. 2008) (similar); *In re Asbestos Litigation*, 661 F. Supp.2d 451, 453 (D. Del. 2009) (similar).

In his Motion to Remand, plaintiff recites well-worn principles that removal jurisdiction is narrow and that "the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear."  (Doc. 39, at 3.)  Certainly, these statements are true as general propositions; however, they do not take into account the particular features of the federal

officer removal statute in play here.  Unlike certain other removal provisions, § 1442(a) must be liberally construed in favor of removal.  *See, e.g., Hagen v. Benjamin Foster Co.*, 739 F. Supp.2d 770, 777 (E.D. Pa. 2010) ("the Court must broadly construe Defendants' ability to remove under Section 1442(a)(1) as to avoid frustrating its policy objective of having the validity of the defense of official immunity tried in a federal court by applying a narrow, grudging interpretation") (citations and internal marks omitted); *McGee v. Arkel Int'l, LLC*, 716 F. Supp.2d 572, 578 (S.D. Tex. 2009) ("In light of the policy behind § 1442(a), the statute must be interpreted liberally to allow a defendant acting under the control of a federal officer to assert his or her federal defenses in federal court."); *Parlin*, 579 F. Supp.2d at 634 ("Unlike section 1441, which is strictly construed …, section 1442(a) is liberally construed to give full effect to the purposes for which it was enacted.") (citation and internal marks omitted).  The Court proceeds in recognition of this principle.

> ### B.   Propriety of Removal under § 1442(a)(1).

As discussed *supra*, CBS and General Electric were entitled to remove this action pursuant to the federal officer removal statute if they could show that they are "persons" who were "acting under" a federal officer, that they have raised a colorable federal defense, and that there is a causal nexus between the claims and the conduct performed under color of federal office.  The Motion to Remand challenges defendants' ability to satisfy both the "colorable federal defense" and the "causal nexus" requirements.[3]

---

[3]      Plaintiff does not dispute defendants' ability to satisfy the "persons" and "acting under" prongs.  This concession was prudent, as there is no reasonable room for doubt that CBS and General Electric (as government contractors who supplied turbine equipment to the U.S. Navy for installation on military vessels in the 1940s and 1950s) are "persons" within the meaning of § 1442(a)(1).  *See Bennett*, 607 F.3d at 1085 (explaining that plain language of § 1442 does not exclude corporations and deeming interpretation of "person" to include corporations as being consistent with the statutory scheme); *Isaacson*, 517 F.3d at 136 (opining that the term "person" in § 1442(a)(1) includes corporate persons); *In re Asbestos*, 661 F. Supp.2d at 454 ("defendants, as corporations, are 'persons' within the meaning of the statute"); *Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp.2d 129, 142 (D. Mass. 2009) (collecting authority and stating that "government contractors are entitled to seek removal under" § 1442(a)(1)); *Pantalone v. Aurora Pump Co.*, 576 F. Supp.2d 325, 329 (D. Conn. 2008) (recognizing that § 1442(a)(1) removal privilege "extends to persons who, through contractual relationships with the Government, perform jobs that the Government otherwise would have performed") (citation and internal quotation marks omitted).  And the "acting under" element is satisfied if a defendant's "actions that led to the lawsuit were based on a federal officer's direct orders or (Continued)

**1.    *Defendants May Reference Materials Outside the Notice of Removal.***

Plaintiff's threshold ground for his Motion to Remand is that defendants "offered no evidence, testimonial or otherwise," in support of their Notice of Removal on federal officer removal jurisdiction grounds.  (Doc. 39, at 7.)  This theme is recurrent throughout plaintiff's Motion, as he characterizes the Notice of Removal as "nothing more than a collection of unsubstantiated blanket assertions."  (*Id.*)  Indeed, Morgan repeatedly derides the Notice of Removal for failing to furnish proof to substantiate the factual allegations therein.  (*See id.* at 8, 9, 11, 14.)[4]

The fundamental shortcoming in this line of attack is that plaintiff fails to identify a single authority holding that § 1442(a)(1) removal requires submission of a comprehensive evidentiary showing of each of that statute's requirements contemporaneously with the Notice of Removal in order for removal to withstand scrutiny.  Nothing in the statute imposes such a draconian obligation at the moment of removal, and federal courts have routinely allowed defendants removing on the basis of federal officer jurisdiction either to make an evidentiary showing post-removal or to rely on factual allegations in the notice of removal untethered to specific evidentiary proof.  *See, e.g., Hagen*, 739 F. Supp.2d at 778 n.8 ("These facts may be cited in the answer, the notice of removal or in the response to a motion for remand.");  *Pantalone v. Aurora Pump Co.*, 576 F. Supp.2d 325, 331-32 (D. Conn. 2008) ("it is enough to rely on a defendant's assertions of the basis for the defense in the notice of removal and supporting documents," and defendant's showing "[t]hrough the factual assertions in its notice of removal and supporting affidavits" suffices).  Where exhibits and affidavits clarifying

_____

comprehensive and detailed regulations."  *Hagen*, 739 F. Supp.2d at 784 (citation and internal quotation marks omitted).  Defendants have adequately shown that they were acting under federal officers, inasmuch as "they produced the equipment at issue pursuant to specific procurement requests from the Navy and under the close supervision of its employees."  *Holdren*, 614 F. Supp.2d at 149.  Nothing further is needed to show that the removing defendants were "acting under" a federal officer for purposes of § 1442(a)(1).

[4]    Representative of this category of arguments is plaintiff's insistence in the Motion that "CBS and GE have offered absolutely no evidence to show that the use of asbestos-containing materials in the manufacture of their equipment was mandated by its naval contracts.  There is thus no evidence from which to judge whether or not Defendants' equipment conformed to government specifications …."  (Doc. 39, at 11.)

-6-

jurisdictional facts from the notice of removal are filed later, "it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits." *Willingham v. Morgan*, 395 U.S. 402, 408 n.3, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969); *see also Carter v. Monsanto Co.*, 635 F. Supp.2d 479, 487 (S.D. W.Va. 2009) ("Where subsequently-filed documents clarify allegations already stated in the notice of removal, a court may construe those documents as amending the notice of removal."); *Wang v. Asset Acceptance, LLC*, 680 F. Supp.2d 1122, 1125 (N.D. Cal. 2010) (where notice of removal included factual allegations as to amount in controversy and class size, and where opposition to motion to remand attached declaration supporting those allegations, declaration was properly considered because the removing defendant "is merely clarifying its alleged basis for federal jurisdiction").

Here, the Notice of Removal filed by CBS and General Electric expressly alleged that removal was predicated on 28 U.S.C. § 1442(a)(1), based on the following facts, among others: (i) "[i]n designing, manufacturing and supplying turbine generators and similar items of marine equipment to the United States Navy, Removing Defendants acted under the detailed direction and control of the Navy and its officers," (ii) "any use of asbestos in conjunction with such equipment was the direct result of the Navy's own detailed plans, specifications and/or regulations"; (iii) defendants' equipment was designed and manufactured in compliance with detailed Navy specifications and was accepted by the Navy only after thorough testing by the Navy for compliance with such specifications; and (iv) at all relevant times, the Navy was fully aware of asbestos-related health hazards.  (Doc. 1, ¶¶ 8-10.)  CBS and General Electric did not submit affidavits or other exhibits to bolster these specific factual allegations contemporaneously with their Notice of Removal; however, they did so in connection with their response to the Motion to Remand.  Under the circumstances, and absent contrary argument by plaintiff, the Court finds that these affidavits and exhibits are properly deemed to amend the Notice of Removal to include supplemental information and evidence.  As such, the Court does not embrace plaintiff's contention that the Notice of Removal is facially deficient for want of contemporaneous evidentiary support for its detailed factual assertions.[5]

---

[5]    In his reply brief, plaintiff does not argue otherwise.  He does not suggest that the affidavits and exhibits accompanying defendants' response to the Motion to Remand were filed too late to be considered, or that *Willingham*-style amendment of the Notice of Removal would (Continued)

## 2.      *Colorable Federal Defense.*

As discussed *supra*, General Electric and CBS must make a showing of a "colorable federal defense" to remove this action under § 1442(a)(1).  *See, e.g., Mesa v. California*, 489 U.S. 121, 129, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989) ("we have not departed from the requirement that federal officer removal must be predicated on the allegation of a colorable federal defense").  In applying this requirement, it bears emphasis that an "officer need not win his case before he can have it removed."  *Willingham*, 395 U.S. at 407.  "That defense need only be plausible; its ultimate validity is not to be determined at the time of removal."  *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996); *see also Hagen*, 739 F. Supp.2d at 781 (recognizing "the Supreme Court's clear teaching that a colorable defense need not be proven at this stage of the litigation due to the broad removal right the statute creates").

Although different courts have couched the quantum of proof necessary to establish a "colorable federal defense" differently, they have overwhelmingly framed it as a modest burden for removing defendants.  *See, e.g., Hagen*, 739 F. Supp.2d at 783 ("[T]he Court concludes that a defense is colorable for purposes of determining jurisdiction under Section 1442(a)(1) if the defendant asserting it identifies facts which, viewed in the light most favorable to the defendant, would establish a complete defense at trial."); *Corley*, 688 F. Supp.2d at 1332 (to satisfy "colorable defense" requirement, "[a]ll a removing defendant needs to do is to make a showing that his federal defense is not without foundation and made in good faith.") (citation and internal quotation marks omitted); *McGee*, 716 F. Supp.2d at 578 (to satisfy this prong, the removing defendant "need not prove the asserted defense, but need only articulate its 'colorable' applicability to the plaintiff's claims").

In their Notice of Removal, General Electric and CBS invoked the defense of "government contractor immunity from liability for injuries arising from any exposure to asbestos attributable to its Navy equipment," pursuant to the test articulated in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988).  To support this defense, the removing defendants alleged that the equipment in question had been designed and

---

be improper here.  Nor does plaintiff proffer any authority that would forbid the removing defendants from supplementing their Notice of Removal with evidence in this manner.

manufactured in compliance with detailed Navy specifications, that the Navy had tested and inspected such equipment and had found it to be in compliance with such specifications, and that the Navy had been aware of potential asbestos-related health hazards at that time.  (Doc. 1, ¶ 10.) These allegations closely adhere to the elements of the government contractor defense, as formulated in the design defect context.  Indeed, *Boyle* held that this defense applies in design defect cases where "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."  487 U.S. at 512; *see also Dorse v. Eagle-Picher Industries, Inc.*, 898 F.2d 1487, 1489 (11th Cir. 1990) ("liability for *design defects* in military equipment cannot be imposed, pursuant to state law, when 1. the United States approved reasonably precise specifications; 2. the equipment conformed to those specifications; and 3. the supplier warned the United States about the dangers in the use of equipment that were known to the supplier but not to the United States"); *In re Asbestos*, 661 F. Supp.2d at 454 (similar).  "Stripped to its essentials, the military contractor defense is available only when the defendant demonstrates with respect to its design and manufacturing decisions that the government made me do it."  *Brinson v. Raytheon Co.*, 571 F.3d 1348, 1351 (11th Cir. 2009) (citation omitted).

In briefing the Motion to Remand, the removing defendants have presented substantial evidence as to each element of the government contractor defense, as outlined in the Notice of Removal.  With respect to reasonably precise specifications, defendants' affidavits reflect that the Westinghouse and General Electric turbine equipment installed on Navy ships during the relevant time period was not off-the-shelf product, but was manufactured to meet exacting military specifications.[6]  Defendants' evidence is that "[i]t was the Navy, not contract

---

[6]     *See* Gate Aff. (doc. 44, Exh. C), ¶ 13 ("The turbines manufactured and supplied by Westinghouse for use aboard any Navy vessel were required to meet detailed and precise Navy specifications" and were "specifically designed for the vessel or class of vessels in question"); Hobson Decl. (doc. 44, Exh. D), ¶ 8 (describing "exceptionally detailed specifications … that spell out in minute detail the Navy's requirements concerning every aspect of the materials and composition of devices like Navy turbines," and explaining that contracts for such turbines "would incorporate the pertinent Military Specifications, thus binding GE to follow them to the letter"); Lehman Decl. (doc. 44, Exh. E), ¶ 4 (indicating that in the 1940s, the Navy required strict adherence to military specifications for all equipment installed on ships, and did not permit contractors to implement any changes); Horne Aff. (doc. 44, Exh. G), ¶ 16 ("turbines (Continued)

manufacturers, that required the use of asbestos thermal insulation with turbines intended for installation on Navy ships." (Horne Aff., ¶ 25.) This evidence is adequate on its face to make a plausible showing that the United States approved reasonably precise specifications in the design of removing defendants' turbines to be installed on Navy ships.

The second element of the government contractor defense is that the equipment must have conformed to the United States' specifications. Defendants' evidence shows that the Westinghouse and GE turbines were extensively tested by the Navy and were not accepted for installation on the vessels unless and until they were deemed to conform fully with military specifications.[7] The rigorous testing procedures described in defendants' evidentiary submission certainly amount to a plausible showing that the turbine equipment furnished by CBS and General Electric to Navy vessels on which Morgan worked in the 1950s was subject to extensive Navy testing for conformity with military specifications, and was not accepted unless it was fully compliant with same.

The third *Boyle* requirement for the general contractor defense is that the contractor must warn the United States about any dangers in the use of the equipment that were known to the contractor but unknown to the United States. Defendants' evidence is that it was unnecessary for them to alert the U.S. Navy to the potential human health hazards of using asbestos insulation in turbine generators in the 1940s and 1950s because the Navy was already apprised of those risks. One defense witness states that "[t]he Navy has been aware of the health risk of exposure to

---

built for Navy vessels, including Westinghouse and GE turbines, were manufactured according to plans and specifications prepared, written and issued exclusively by the Navy").

   [7]   *See* Gate Aff., ¶¶ 19-20, 24-29 (indicating that Navy tested turbines at the site of manufacture, with a detailed test agenda; that turbines were fully disassembled and inspected by Navy officials and engineers; that Navy personnel closely reviewed and approved post-installation testing of turbines at the shipyard and at sea; and that "all Westinghouse Navy equipment … was approved and accepted by the Navy as being in accordance with those specifications"); Hobson Decl., ¶¶ 11-18 (describing comprehensive testing processes used by the Navy on all turbines manufactured by GE for installation on naval vessels); Lehman Decl., ¶ 4 (confirming that Navy would reject any equipment that deviated from military specifications); Horne Aff., ¶ 34 ("any and all work performed on turbines built and supplied for Navy ships by vendors such as Westinghouse and GE was … reviewed and inspected by Navy personnel in the vendor's plant and in the shipbuilding yards to ensure that the turbines met the Navy's combat needs").

asbestos dust since at least the 1920s.  Until 1975 …, the Navy believed that it had instituted adequate controls to protect personnel working with or around asbestos materials."  (Horne Aff., ¶ 28.)  Another witness cites Navy reports and articles from the late 1930s and early 1940s addressing the "Hazard of Asbestos," observing the risk caused by asbestos exposure at Navy facilities, and identifying preventive measures for reducing such risks.  (Forman Aff. (doc. 44, Exh. J), ¶¶ 23-24.)  That witness explains that "the Navy made trade-offs between the use of asbestos and the potential health impact on personnel," in light of the benefits of asbestos as a cost-effective thermal insulator.  (*Id.*, ¶ 35.)  This evidence constitutes a plausible showing that the U.S. Navy was already familiar with the health risks associated with using asbestos-containing materials in the turbines it installed on its ships as of the 1940s and 1950s, such that CBS and General Electric were under no obligation to apprise the Navy of those risks as a prerequisite for protection under the government contractor defense.

Confronted with this showing as to each of the three prongs of the government contractor defense under *Boyle*, plaintiff does not assert that these exhibits, if properly considered on the Motion to Remand, are inadequate to satisfy defendants' burden of showing a colorable federal defense as to the design defect claims.  In fact, he admits "that many products designed by contractors for the United States Navy are designed per specific navy specifications including the use of asbestos."  (Doc. 47, at 30.)  Instead, Morgan's response is that the Court should disregard all of the affidavits and declarations submitted by CBS and General Electric as inadmissible.[8]

---

[8]    Plaintiff also states in passing that, in making a showing of the *Boyle* defense, "the Defendants concentrate solely on the Navy and studiously ignore Mr. Morgan's service in the Coast Guard."  (Doc. 47, at 13.)  Plaintiff offers no analysis and makes no arguments as to the jurisdictional significance of this purported omission.  The Court finds that plaintiff's Coast Guard reference is inconsequential for purposes of the Motion to Remand.  CBS and General Electric need not establish a federal contractor defense to <u>all</u> claims asserted against them by Morgan in order for § 1442(a)(1) jurisdiction to be proper.  Suppose, as plaintiff is apparently alleging, that CBS and General Electric built turbines for both the U.S. Navy vessels where Morgan worked in the early 1950s, and for the U.S. Coast Guard vessels where he worked in the early 1960s; and that plaintiff is bringing claims against these defendants for exposure to asbestos at all of those locations at all of those times.  If defendants' evidence shows a colorable federal contractor defense as to Morgan's claims against them concerning the Navy vessel turbines, then this action was properly removable under federal officer removal jurisdiction.  This is so, regardless of whether Morgan's claims against these defendants concerning the Coast Guard vessel turbines are also subject to the federal contractor defense.  *See, e.g., Magnin*, 91 F.3d at 1428 ("If one question of Federal character exists, if there be a single such ingredient in (Continued)

In his reply brief, plaintiff generally attacks these exhibits as speculative and "asks this Honorable Court to strike the Gate, Hobson, Lehman, Betts, Horne and Forman affidavits and declarations." (Doc. 47, at 13.)[9]  The problem with this line of argument is that the purported deficiencies in these exhibits as identified by Morgan relate almost exclusively to a failure to warn theory of liability, and not a defective design theory.[10]  As discussed *supra*, the Court is

_____

the mass, it is sufficient.  That element is decisive upon the subject of jurisdiction.") (citation and internal marks omitted); *Nadler v. Mann*, 951 F.2d 301, 306 n.9 (11th Cir. 1992) ("It is well settled that, if one claim cognizable under Section 1442 is present, the entire action is removed, regardless of the relationship between the Section 1442 claim and the non-removable claims.") (citation omitted).  Thus, it was unnecessary for the removing defendants to address the viability of a federal contractor defense to Morgan's claims against them relating to his Coast Guard exposures, provided that they satisfied the elements of a colorable federal contractor defense as to the claims concerning Navy exposures.

[9]        As a preliminary matter, the form of this request is improper.  A motion to strike is not properly embedded in a memorandum of law, but must be filed as a freestanding document.  *See* Local Rule 5.1(d) ("A request for court action should be submitted in the form of a motion, petition or other pleading as authorized by statute or rule."); *see generally Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.") (citation omitted).  By placing this request in a reply brief, rather than filing a separate motion, plaintiff would frustrate ordinary briefing procedures for motions.  On that basis, the Court **grants** the removing defendants' Motion for Leave to Respond to Plaintiff's Motion to Strike or Exclude (doc. 57), and will consider the proposed response appended thereto as Attachment 1 for purposes of evaluating plaintiff's request that the various affidavits and declarations be stricken.

[10]       In this regard, plaintiff balks that "there is no document establishing that any Navy or Coast Guard official ever exercised discretion and considered whether an equipment manufacturer should warn about asbestos" (doc. 47, at 14); that the affiants' and declarants' statements "do not constitute evidence that asbestos warnings, by their nature, would have conflicted with any documented Navy policy" (*id.*); that these witnesses cannot withstand *Daubert* scrutiny as to "whether or not the Navy prevented or prohibited manufacturers of military equipment from warning about the dangers of asbestos exposure associated with their products" (*id.* at 15); and that these witnesses lack knowledge as to whether the Navy would have allowed General Electric or CBS to affix warnings to their products had they attempted to do so (*id.* at 16-20).  If defendants were pinning § 1442(a)(1) jurisdiction on Morgan's failure to warn claims, perhaps these arguments would resonate.  As it stands, however, the Court need not address the failure to warn claims at all for purposes of the Motion to Remand as long as § 1442(a)(1) jurisdiction is supported by the defective design claims.

applying § 1442(a)(1) to this action in the context of Morgan's defective design claims, not his failure to warn claims.  As such, any shortcomings in these affidavits and declarations as to the failure to warn theory are of no meaningful import to a jurisdictional analysis.  The vast majority of the alleged evidentiary deficiencies identified by Morgan relate to aspects of these witnesses' testimony that the Court has not considered, and need not consider, in determining that defendants have advanced a colorable *Boyle* defense to plaintiff's claims predicated on defective design.

Plaintiff only offers a pair of perfunctory objections to defendants' witnesses' statements as they bear on the availability of a colorable federal contractor defense for plaintiff's defective design claims.  Specifically, Morgan argues that "[t]hese declarations offer nothing to prove that GE actually attempted to use non-asbestos materials, nor do they present any evidence that GE ever actually tried to warn the Navy about asbestos materials."  (Doc. 47, at 18.)  But plaintiff does not identify any authority for the proposition that a federal contractor defense is unavailable as a matter of law unless the contractor actually endeavored to design the product in a manner that would have alleviated the hazard, only to be rebuffed by the United States.  Certainly, *Boyle* contains no such requirement.  The undersigned declines plaintiff's unadorned invitation to engraft such a supplemental element onto the government contractor defense, particularly in the absence of any indication that any court has required it.[11]

---

[11]     Practically speaking, it would make no sense to require contractors to prove that they attempted to substitute non-hazardous materials into the product design as a prerequisite for the government contractor defense.  Defendants' witnesses unequivocally state that the Navy dictated every specification of the turbines constructed by CBS and General Electric, including the use of asbestos-containing insulation.  Plaintiff appears to be suggesting that CBS and General Electric should have ignored those stringent mandates, built turbines that did not use asbestos materials, and waited to see if the Navy objected.  But the witnesses' testimony demonstrates that the Navy insisted on absolute, to-the-letter compliance with its specifications.  Under the circumstances, for the turbine manufacturers to ignore this requirement and build turbines without asbestos, knowing that the Navy was substantially certain to reject them, would have been a hollow, pointless exercise.  The law does not require such exercises in tilting at windmills.  *See generally Ohio v. Roberts*, 448 U.S. 56, 74, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) ("The law does not require the doing of a futile act."); *Mashi v. Immigration and Naturalization Service*, 585 F.2d 1309, 1314 (5th Cir. 1978) ("[t]he law does not require a person to do a vain and empty thing").  As such, the Court will not hold that a defendant is ineligible for the federal contractor defense unless it defied the United States' specifications and the United (Continued)

Likewise, the warning prong of *Boyle* does not require a contractor to warn the United States of hazards of which the United States was already aware. Given defendants' showing that the Navy was well acquainted with the health risks of asbestos many years before defendants built the turbines in question,[12] General Electric and CBS were not required to take any action under the warning prong of the *Boyle* test. *See, e.g., In re Agent Orange Product Liability Litigation*, 517 F.3d 76, 99 (2nd Cir. 2008) (third element of *Boyle* is satisfied if "the government did not need the warnings because it already possessed that information"); *Ellis v. Pneumo Abex Corp.*, --- F. Supp.2d ----, 2011 WL 2837612, *5 (C.D. Ill. June 20, 2011) ("Defendant has no duty to warn the government of a danger of which it is already aware."); *Hagen*, 739 F. Supp.2d at 784 ("the defense does not require the contractor to warn the government where the government knew as much or more than the defendant contractor about the hazards of the … product") (citation and internal quotation marks omitted). Plaintiff's suggestion, then, that defendants' showing fails for want of proof that they actually tried to warn the Navy is unavailing.

For all of the foregoing reasons, the Court concludes that CBS and General Electric have raised a colorable federal defense, and have satisfied that aspect of their burden in establishing federal officer removal jurisdiction.

### 3. Causal Nexus.

To qualify for removal under § 1442(a)(1), a defendant must show not only that it is a person who acted under the discretion of a federal officer and that it has a colorable federal defense to the plaintiff's claim, but also that there is a causal nexus between the plaintiff's claims

States took corrective action to enforce compliance with such previously issued reasonably precise specifications.

[12] According to a defense witness, "The Navy's knowledge regarding the applications of asbestos and the health effects represented the state of the art. During the period from the early 1920s to the late 1960s, there was nothing about the hazards associated with the use of asbestos-containing products on a marine steam turbine on United States Navy ships known by a turbine manufacturer, like General Electric Company, that was not known by the United States and the United States Navy." (Betts Decl. (doc. 44, Exh. F), ¶ 29.) This evidence reflects that defendants have a plausible claim that they complied with the warning prong of *Boyle*, as needed to be eligible for the federal contractor defense.

-14-

and the acts of the defendant performed under color of federal office.  In his Motion to Remand, plaintiff asserts that "[t]here is no evidence here of a causal nexus between a federal officer's direction of CBS and GE in manufacturing equipment for the Navy and the Plaintiff's claim arising out of exposure to asbestos."  (Doc. 39, at 14.)

The Court cannot endorse this view.  After all, "[t]he causal nexus requirement does not establish a stringent standard."  *Carter*, 635 F. Supp.2d at 489; *see also Hagen*, 739 F. Supp.2d at 785 ("resolving the causal nexus requirement is not difficult in light of the Court's colorability determination").  "All a defendant needs to do to show a causal nexus is to establish that the plaintiff's claims arise from the defendants' performance of their duties under their contract with the Navy."  *Corley*, 688 F. Supp.2d at 1335; *see also Holdren*, 614 F. Supp.2d at 149 ("A removing defendant must show that the specific acts or omissions complained of were committed pursuant to a federal duty."); *Pantalone*, 576 F. Supp.2d at 330 (satisfying § 1442(a)(1) causation requirement "is not a difficult burden," as defendant "must only establish that the act that is the subject of [a plaintiff's] attack… occurred *while* Defendants were performing their official duties") (citation omitted).  Defendants have submitted abundant evidence that in designing and manufacturing turbines for the Navy, they were performing duties under contracts with the Navy.  Insofar as Morgan is complaining in this action that CBS and General Electric defectively designed those turbines, the requisite causal nexus is obviously present.  Morgan's Complaint seeks to hold General Electric and CBS liable for manufacturing U.S. Navy vessel turbines that used asbestos materials.  General Electric and CBS built these turbines for the U.S. Navy pursuant to contractual arrangements with the Navy.  Thus, defendants have made a sufficient showing that Morgan's design defect claims against them arise from the performance of their duties under their contract with the U.S. Navy.  The causal nexus prong of the § 1442(a)(1) test is satisfied.

### 4.      *Plaintiff's Arguments Based on Congressional Intent and Disclaimer.*

To advance his position that removal under § 1442(a)(1) is improper, Morgan proffers two additional arguments.  First, he contends that removal of this action under § 1442(a)(1) is contrary to Congressional intent, such that remand should be ordered even if CBS and General Electric have met the technical requirements of removal under that statute.  (Doc. 47, at 28.)  The cited authority does not support the proposition that the plain text of the removal statute, as construed by the Supreme Court, can be disregarded if removal of a particular case would not

-15-

give effect to what is perceived to be legislative intent.  Furthermore, as the undersigned recently observed in rejecting a similar argument by another asbestos plaintiff, "the Court's role is to enforce the statute, not the policies motivating its enactment.  When as here the requirements for removal under Section 1442(a), as construed by the Supreme Court, are satisfied, this Court has no authority to order remand because removal, though statutorily proper, is unnecessary to fulfill congressional policy."  *Kite v. Bill Vann Co.*, 2011 WL 4499345, *6 (S.D. Ala. Sept. 29, 2011); *see also Hagen*, 739 F. Supp.2d at 783 ("For policy reasons, Congress has erected a road to federal court for litigants who can invoke a federal defense.  It is not the Court's role to impose judicially created tolls on those who seek to travel on it.").[13]

Second, plaintiff states in his reply brief that the removing defendants' analysis of § 1442(a)(1) as to his defective design claims is misplaced because he is asserting no such claims against CBS and General Electric.  The Complaint on its face states defective design claims against these defendants.  Indeed, plaintiff's pleading alleges that these defendants "contaminated the work sites of Morgan with respirable asbestos fibers by … installing, removing, handling, ***designing***, testing, manufacturing, mining, packaging, furnishing, supplying and/or selling" asbestos-containing materials.  (Complaint, ¶ 57(a) (emphasis added).)  The Complaint's negligence claim against all defendants seeks to hold them liable for, *inter alia*, "carelessly and negligently … manufacturing … the said asbestos and asbestos products" and "failing to use substitute materials for the asbestos in the asbestos-containing products."  (*Id.*, ¶ 63(a), (*l*).)  Nonetheless, Morgan asserts that these design-defect allegations can be ignored for jurisdictional purposes because the Complaint also says that "Plaintiff expressly disclaims … any claim arising from an act or omission … by any officer of the United States or any agency or person acting under him/her under color of such office."  (*Id.*, ¶ 59.)

---

[13]     In arguing this point, plaintiff maintains that "there is a patent lack of federal interest in this personal injury case."  (Doc. 47, at 29.)  On the contrary, the federal interest is clear and obvious, given CBS's and General Electric's invocation of the federal contractor defense and their overall theory of defense that they were simply doing what the U.S. Navy told them to do.  There is quite plainly a federal interest in adjudication of that federal contractor defense, given the removing defendants' showing that they constructed the subject turbines to exacting Navy specifications.  The federal government may have difficulty convincing contractors to perform work for it in conformity with inflexible, preset military specifications unless the contractor is guaranteed a right to a federal forum to defend against third-party claims arising from its compliance with such specifications.

-16-

As formulated, the disclaimer is legally ineffective to extinguish the defective design claims Morgan brought against CBS and General Electric elsewhere in his Complaint. *See Kite*, 2011 WL 4499345, at *2 ("The plaintiff does not disclaim suit as to all exposure on Navy vessels but only those exposures which, in his own estimation, occurred as a result of a defendant's operation within the bounds of Section 1442(a), and the plaintiff stridently insists that none of the defendants fall within this section. The disclaimer does not eliminate any question of federal officer removal but simply seeks to force this federal issue to be resolved in state court."); *Marley v. Elliott Turbomachinery Co.*, 545 F. Supp.2d 1266, 1275 (S.D. Fla. 2008) ("I am reluctant to find that the plaintiffs can defeat a government contractor's right to remove by disclaiming any claim arising from any act or omission compelled by a government agency. Such a circular disclaimer would defeat the purpose of § 1442(a)(1) as it would force federal contractors to prove in state court that they were acting under the direction of the government."). The removing defendants have a right to have their federal contractor defense decided in federal court. Plaintiff's disclaimer would strip them of that right by forcing a state court to determine whether Morgan's claims against them do or do not fall within the boundaries of § 1442(a)(1), which runs directly counter to that statute's purpose of allowing removal of those claims so that a person acting under a federal officer may have his colorable federal defense adjudicated in federal court. The disclaimer poses no impediment to removal here.[14]

Plaintiff's disclaimer argument also fails for a more fundamental reason. In his principal brief in support of his Motion to Remand, Morgan repeatedly framed his claims against CBS and

---

[14]     In his reply brief filed some two months post-removal, Morgan announces a present intent to disclaim all design defect claims against CBS and General Electric, and proclaims that his claims against them "rest *solely* on Plaintiff's failure to warn claims." (Doc. 47, at 31.) Be that as it may, the propriety of removal is evaluated at the time of removal. *See, e.g., Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1350 n.9 (11th Cir. 2009) ("removal jurisdiction is determined at the time of removal, and events occurring after removal … do not oust the district court's jurisdiction") (citation and internal quotation marks omitted). Therefore, Morgan's abandonment of his design-defect claims against the removing defendants well after the Notice of Removal was filed is of no jurisdictional significance in evaluating plaintiff's Motion to Remand. *See Kite*, 2011 WL 4499345, at *3 ("Such a gesture would come too late to affect the propriety of the defendants' removal.").

General Electric as proceeding under a defective design theory.[15]  For example, plaintiff criticized the removing defendants for failing to present "evidence that the Navy specified the design for asbestos-containing products."  (Doc. 39, at 8.)  Plaintiff wrote about the defendants' burden "as to the design of equipment or components containing asbestos."  (*Id.*)  Plaintiff faulted defendants for failure to "establish the actual exercise of the discretionary design function by the Navy or the Coast Guard," and for engaging in speculation "about what the Navy did and did not do in terms of the design specifications for CBS and GE's products."  (*Id.* at 9.)  Morgan reasoned that he was entitled to remand of this action because "CBS and GE have not shown that the design specifications were provided by or accomplished under the direction of any federal officer."  (*Id.* at 10.)  In the same vein, plaintiff argued in his primary brief that "CBS and GE have offered absolutely no evidence to show that the use of asbestos-containing materials in the manufacture of their equipment was mandated by its naval contracts."  (*Id.* at 11.)  Far from evincing a disclaimer of design defect claims against CBS and General Electric, plaintiff's Motion to Remand and incorporated brief unequivocally expressed his intent to pursue exactly that category of claims against those removing defendants, notwithstanding their invocation of the federal officer removal statute.  Having emphatically committed himself in his Motion to Remand to proceeding on a design defect theory against CBS and General Electric, Morgan cannot be heard to argue in his reply brief that the disclaimer in his Complaint confirms that he was never pursuing such claims against these defendants in the first place.[16]

---

[15]     The Notice of Removal leaned heavily on the defective design theory in explaining why General Electric and CBS believe they have a colorable federal defense.  (*See* doc. 1, ¶ 10.)  Under any reasonable reading of that Notice, the removing defendants were predicating removal on the existence of a colorable federal defense to plaintiff's defective design claims.  Thus, at the time he filed his Motion to Remand, plaintiff knew of the central importance of the defective design issue to the removal petition, yet he remained silent as to his purported disclaimer until filing his reply brief, long after the fact.

[16]     To hold otherwise would be to endorse the litigation equivalent of a boxing "rope-a-dope."  Plaintiff's Motion and principal brief vigorously argued that CBS and General Electric had not made the necessary factual showing to support § 1442(a)(1) removal of plaintiff's design defect claims.  Naturally, defendants devoted much of their response brief to explaining why they could make the requisite factual showing for removability of those design defect claims under § 1442(a)(1).  In his reply, Morgan effectively announced a "gotcha" on defendants by disclaiming any intent to bring design defect claims against them in the first place, after forcing defendants to address the merits of § 1442(a)(1) removal of those design defect claims at great (Continued)

In sum, then, the removing defendants were entitled under § 1442(a)(1) to remove Morgan's defective design claims against them relating to turbines they built for Navy vessels to which Morgan was assigned.  If one aspect of this case is removable, then the entire case may be removed.  *See Magnin*, 91 F.3d at 1428 ("If one question of Federal character exists, if there be a single such ingredient in the mass, it is sufficient.  That element is decisive upon the subject of jurisdiction.") (citation and internal marks omitted).  Thus, whether federal removal jurisdiction could have hinged on Morgan's failure to warn claims, or his claims arising from Coast Guard service, are questions that simply need not be reached.  The Court finds that this entire action was properly removable under the federal officer removal statute.

C.      *Timeliness of Removal.*

The Motion to Remand is not focused exclusively on allegations that the technical requirements of § 1442(a)(1) are not satisfied here.  Rather, Morgan has also interposed a procedural objection to removal, to-wit, that CBS and General Electric failed to remove this action within the requisite 30-day removal period.  As a matter of statute, "If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or ***other paper from which it may first be ascertained that the case is one which is or has become removable***."  28 U.S.C. § 1446(b) (emphasis added).  The question presented here is whether plaintiff's July 2011 discovery responses were "other paper" commencing the 30-day removal clock.  If so, then removal was untimely because the Notice of Removal was not filed until September 15, 2011.

There is no dispute that written discovery responses can constitute "other paper" within the meaning of § 1446(b).  *See, e.g., Lowery v. Alabama Power*, 483 F.3d 1184, 1212 n.62 (11th Cir. 2007) (listing responses to requests for admissions, interrogatory, responses and deposition testimony as types of "other paper").  Where the parties disagree, however, is in whether

_____

length in their opposition brief.  Basic principles of equity and fairness preclude plaintiff from proceeding in such fashion.  *See generally Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010) ("The purpose of judicial estoppel is to protect the integrity of the judicial process by prohibiting parties from changing positions according to the exigencies of the moment.") (citation and internal quotation marks omitted).

plaintiff's July 2011 discovery responses were such that CBS and General Electric could or should have "ascertained" from them that the case had become removable.  The 30-day clock begins ticking "at the point when the defendant could have intelligently ascertained that the action was removable."  *Naef v. Masonite Corp.*, 923 F. Supp. 1504, 1511 (S.D. Ala. 1996); *see also Burrowes v. Swift Transp. Co.*, 2010 WL 2976102, *4 (S.D. Ala. June 29, 2010) ("As construed by district courts in this Circuit, the 30-day removal period prescribed by § 1446(b) commences running as soon as a defendant is able to ascertain intelligently that the action is removable.") (citation omitted).

In plaintiff's view, CBS and General Electric should have been able to ascertain that this action was removable in July 2011, when he submitted written discovery responses that included the following information: (i) Morgan worked as a "Machinist / Engine room worker (steam propulsion)" onboard several named U.S. Navy vessels from 1950 through 1954; (ii) Morgan worked as a "Machinist in boiler/engine room" on two Coast Guard vessels in the period of 1959 through 1964; and (iii) Morgan was exposed to asbestos through at least three dozen categories of products, including "General Electric motors, turbines and motor generators" and "Westinghouse motors, turbines, and motor generators."  According to plaintiff, these responses "placed the Defendants on notice that a portion of Plaintiff's exposure to their asbestos-containing products occurred while aboard military vessels" (doc. 39, at 16), so as to start the 30-day removal period.

The Court disagrees.  Plaintiff's discovery responses recited a 40+ year work history (mostly as a machinist or mechanic in industrial settings) in a host of work environments, including military vessels, manufacturing facilities, paper mills and so on.  The reference to Westinghouse and General Electric "motors, turbines and motor generators" was not in any way linked to the Navy ships, nor to any other geographic or temporal context.[17]  Section 1446(b)

---

[17]     In this regard, plaintiff argues that his interrogatory responses show that "Reuben Morgan served in the Navy and the Coast Guard on specifically identified ships and worked with and around products manufactured by Westinghouse and GE in the engine and boiler room in which he worked, e.g., steam turbines, motors, and generators."  (Doc. 47, at 12.)  This is incorrect.  To be sure, those interrogatory responses do reflect that (i) Morgan served as a machinist on specifically identified Navy and Coast Guard vessels and (ii) he was exposed to asbestos from a broad class of General Electric or Westinghouse "motors, turbines, and motor generators."  But they do not draw any connection between the two.  From those interrogatory (Continued)

-20-

does not require a defendant to guess that the action might possibly be removable, to fill in factual gaps in a plaintiff's discovery responses in a manner that maximizes removability, to read a plaintiff's mind, or to draw non-obvious linkages between disparate facts.  State-court discovery is not a "hide-the-ball" game in which the answering party provides the least amount of information possible, then faults the defendant later for not guessing the presence of additional facts that gave rise to removal jurisdiction.[18]  Timeliness arguments analogous to Morgan's have not fared well in other asbestos cases.  *See, e.g., Contois v. Able Industries Inc.*, 523 F. Supp.2d 155, 158 (D. Conn. 2007) (removing defendant could not have ascertained grounds for federal officer removal jurisdiction in interrogatory responses where plaintiff listed Navy vessel service and other work history, "leaving the defendants to guess as to whether Mortenson was exposed to products they manufactured that were used on the USS *Bordelon*"); *In re Asbestos Products Liability Litigation (No. VI)*, 770 F. Supp.2d 736, 740 (E.D. Pa. 2011) (30-day removal period not triggered by pleading in which plaintiff listed Long Beach Naval Shipyard as one of several sites of asbestos exposure, without connecting defendant's products to that worksite).

        In short, the Court agrees with the removing defendants that the first time they could intelligently ascertain the availability of § 1442(a)(1) jurisdiction was when, during plaintiff's deposition, he testified that he had been exposed to asbestos from General Electric and

_____

responses, the removing defendants could not reasonably ascertain that he was complaining of exposure via their "motors, turbines, and motor generators" on those military vessels, as opposed to these types of products at the myriad other sites where he worked during his 42-year career.

        [18]        If Morgan had wanted his discovery responses to start the 30-day removal clock, he could have answered the interrogatories more specifically and directly.  For example, plaintiff was asked, "If you believe you were exposed to asbestos materials aboard specific ships or in certain buildings, identify the ships or buildings."  (Doc. 39, Exh. A, at Set II, Interrog. #19.)  He was asked to describe "the exact nature of your work that involved exposure to asbestos materials."  (*Id.* at #20.)  He was asked to state "whether you were exposed to asbestos at the job or worksite listed" and to list "the places, circumstances, and dates of exposure."  (*Id.* at Set I, Interrogs. #8, 10.)  Yet plaintiff did not respond to any of these questions directly, instead choosing to submit a general chart of his work history and a general listing of categories of asbestos-containing products to which he claimed exposure, without linking the two.  CBS and General Electric could not have discerned from those responses <u>where</u> or even <u>when</u> Morgan claimed to have been exposed to asbestos via those defendants' motors, turbines and motor generators.

Westinghouse turbines aboard U.S. Navy vessels in the early 1950s.  Because they filed their Notice of Removal within 30 days after Morgan's deposition, CBS and General Electric complied with the timeliness provisions of 28 U.S.C. § 1446(b).  There is no procedural defect in the removal petition as to timeliness, and plaintiff's objection on that basis is **overruled**.

**III.    Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1.      Plaintiff's first Motion for Expedited Consideration (doc. 38) is **moot**;

2.      Plaintiff's second Motion for Expedited Consideration (doc. 48) is **granted**;

3.      Plaintiff's Motion to Remand (doc. 39) is **denied**; and

4.      Defendants' Motion for Leave to Respond to Plaintiff's Motion to Strike or Exclude (doc. 57) is **granted**.


DONE and ORDERED this 6th day of December, 2011.


s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE