IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RONALD MELVIN MORGAN, | ) | |
| as Personal Representative for the Estate | ) | |
| of Rueben Morgan, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 11-0535-WS-B |
| | ) | |
| BILL VANN COMPANY, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

This matter comes before the Court on defendant General Electric Company's Motion for Summary Judgment (doc. 262). The Motion has been briefed and is ripe for disposition.

**I.     Relevant Background.**

This is an asbestos action pending against 11 defendants,[1] alleging various state-law tort claims and a wrongful death cause of action based on the alleged exposure of plaintiff's decedent, Rueben Morgan, to asbestos-containing products at various times and locations. Morgan was diagnosed with malignant mesothelioma (a disease commonly linked to asbestos exposure) in or about February 2011. (Doc. 199, at Exh. A.) He died on or about November 5, 2012, at the age of 79. (Doc. 206, at Exh. A.)

On May 4, 2011, less than three months after his diagnosis, Morgan initiated this litigation against 42 named defendants (including General Electric). Morgan's pleadings alleged that he "was exposed to asbestos dust, asbestos particles, asbestos containing materials and products that were produced, manufactured, specified for use, installed, distributed, sold and/or placed into the stream of commerce by the producer and/or distributor Defendants during his

---

[1] Initially, there were numerous other named defendants; however, the ranks of defendants have dwindled as a result of settlements and voluntary dismissals. All 11 remaining defendants have pending, ripe summary judgment motions that have been taken under submission.

employment as a machinist, engine room worker, and mechanic," as a result of which he was "diagnosed with an asbestos related disease." (Doc. 1, Exh. A-2, at 6.) On July 29, 2011, Morgan amended his Complaint to name certain additional defendants. (Doc. 4, Exh. B, at 1.)

Record facts concerning Morgan's interactions with General Electric Company ("GE") products are as follows:[2] Morgan was in the United States Navy from 1950 to 1954, during which time he worked as a machinist aboard three different vessels. (Morgan Dep. I, at 35-36.)[3] During a significant portion of that time, Morgan worked around generators and turbines that were "covered with asbestos" and that were "dusty because there was … a lot of air flow and motion going on." (*Id.* at 42.) At times, Morgan would be present in the engine room when seamen were cutting, removing and replacing this asbestos insulation. (*Id.* at 43.) Both the boiler rooms and the engine rooms in which Morgan worked were dusty environments containing considerable asbestos dust. (*Id.* at 49.) Morgan recalled that the main propulsion plants (including turbines and generators) on certain of those Navy vessels were GE equipment that contained asbestos. (Morgan Dep. III, at 94-98, 101.)

From 1965 through 1967, Morgan was employed as a machinist at a civilian shipyard in Norfolk, Virginia. (Morgan Dep. I, at 78.) In this capacity, Morgan had occasion to work on GE motors by opening them up and machining the area where the brushes made contact. (Morgan Dep. III, at 101, 104.) Morgan testified that the GE motors contained asbestos fiberboard where

---

[2] The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Thus, plaintiff's evidence is taken as true and all justifiable inferences are drawn in his favor. Federal courts cannot weigh credibility at the summary judgment stage. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices."). Thus, the Court will "make no credibility determinations or choose between conflicting testimony, but instead accept Plaintiff's version of the facts drawing all justifiable inferences in Plaintiff's favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

[3] Morgan's deposition was taken multiple times in this case, including discovery depositions taken on August 16, 2011 and August 25, 2011, and trial depositions taken on September 2 and 8, 2011. For purposes of this Order, citations to Morgan's August 16 deposition will take the form "Morgan Dep. I," while citations to the August 25 deposition will take the form "Morgan Dep. II," those to the September 2 deposition will take the form "Morgan Dep. III," and those to the September 8 deposition will take the form "Morgan Dep. IV."

those segments came together.  (*Id.*; Morgan Dep. IV, at 225.)  When working on the GE motors, Morgan would encounter dust on the motors that he would blow off with an air hose and subsequently breathe in as he performed his duties.  (Morgan Dep. III, at 104.)

The record documents no further involvement between Morgan and GE products until the period of 1972-1974, when Morgan was employed as a multi-craft maintenance mechanic at a paper company called MacMillan Bloedel.  (Morgan Dep. I, at 86.)  This facility where Morgan worked produced a brown liner board used in cardboard boxes.  (*Id.* at 88.)  In his capacity as a mechanic, Morgan's job duties were to maintain the paper machine and related equipment.  (*Id.* at 86.)  During the time period that Morgan worked at McMillan Bloedel, he saw GE motors in use at that facility.  (Morgan Dep. III, at 102, 105.)

Morgan separated from his employment at MacMillan Bloedel in 1974 or 1975.  (Morgan Dep. I, at 86, 197; Morgan Dep. III, at 189.)  From 1978 through 1992, he worked at the Alabama River Pulp paper mill.  (Morgan Dep. I, at 95-96.)  During his employment at Alabama River Pulp, Morgan never saw GE motors, but only motors made by a company called Reliance.  (Morgan Dep. III, at 102.)[4]  He further testified that he did not remember seeing "any type of General Electric products or equipment or material at ARP" throughout the time that he worked there.  (*Id.* at 103.)  In a later deposition, however, Morgan testified that high-voltage electrical equipment at the ARP facility was manufactured by GE.  (Morgan Dep. IV, at 99.)  The contactor boards inside those high-voltage panel boxes at Alabama River Pulp contained asbestos.  (*Id.* at 229.)  In the course of his duties at ARP, Morgan never had occasion to work inside those panel boxes.  (*Id.* at 45-46; 229-30.)[5]  The cabinets containing the high-voltage

---

[4] In response to a question, "Did you see any GE motors at ARP at that time?" Morgan answered, "I really can't remember nothing but the Reliance motors."  (*Id.*)  A week earlier in another deposition, however, Morgan answered affirmatively (but without elaboration) when asked if he had a specific recollection of there being GE motors at Alabama River Pulp.  (Morgan Dep. II, at 283.)  Even then, Morgan indicated that he did not recall ever having worked hands-on with any GE motor at Alabama River Pulp.  (*Id.*)  Plaintiff has not attempted to reconcile or to explain the discrepancy between his two depositions as to whether GE motors were or were not present at the Alabama River Pulp facility where he was employed.

[5] Morgan's testimony on this point was emphatic, as he indicated, "I never did inside" and "As far as me having my hands in there, I haven't been there."  (*Id.* at 229-30.)  Such testimony is in conflict with that of his son, Ronald Melvin Morgan ("Ronald Morgan"), who worked for Alabama River Pulp as an instrument technician from 1979 through 1985, which (Continued)

equipment remained closed when it was in operation. (*Id.* at 228.) However, Morgan saw a person named Nick from GE testing the panel boxes during annual shutdowns to make sure the equipment was working properly. (*Id.* at 229-31.)

Sometime in the early 1980s, Morgan went back to the MacMillan Bloedel facility "to get the dimensions and pattern to make a belt grinding attachment for Alabama River Pulp's roll grinder." (Morgan Dep. III, at 192.) Morgan spent no more than "a couple of days or so" at MacMillan Bloedel on this assignment. (Morgan Dep. IV, at 246.) During the course of performing this task, Morgan had occasion to be in a "refiner" area of the plant where a GE motor was in use. (Morgan Dep. III, at 106-08; Morgan Dep. IV, at 223.) However, Morgan also testified that he did not see anyone performing repair work on GE motors at the MacMillan Bloedel facility while he was there to measure the belt attachment. (Morgan Dep. IV, at 223.) He also specified that he breathed in "whatever dust was created from the dryer section or whatever was going on up on the machine floor" through an opening that was used to move rolls of paper. (Morgan Dep. III, at 107-09.)

## II. Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v.*

---

overlapped the time period in which his father was employed at that facility. (Ronald Morgan Dep., at 36-37.) Ronald Morgan testified that the Alabama River Pulp facility utilized GE switch gear, and that his father had helped in fabricating components for some of that switch gear at various times. (*Id.* at 217.) According to Ronald Morgan, when his father performed those tasks, he would have been inside the cabinets to take measurements and would have necessarily been exposed to asbestos dust therein because he would have disturbed the dust to reach the equipment. (*Id.* at 291-92.)

*Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

### III.     Analysis.

GE's Motion for Summary Judgment proceeds from the premise that plaintiff lacks evidence that Morgan has any timely claims of sufficient exposure to GE's asbestos-containing products to support liability under Alabama law. In analyzing this question, the Court considers the following categories of evidence in turn:  (i) evidence of Morgan's exposure to GE equipment during his employment in the Navy, at the Norfolk shipyard, and at the MacMillan Bloedel facility (spanning portions of the time frame from 1950 through 1974); (ii) evidence of Morgan's exposure to GE products during the early 1980s when he visited the MacMillan Bloedel plant to take measurements; (iii) evidence of GE motors in use at Alabama River Pulp during Morgan's employment; and (iv) evidence of GE high-voltage equipment in panel boxes at Alabama River Pulp during Morgan's employment.

#### A.     *Morgan's Exposure to GE Products from 1950 through 1974.*

The parties' summary judgment briefs devote considerable attention to discussing evidence that Morgan encountered and worked directly with asbestos-containing products when he was in the U.S. Navy from 1950 to 1954, when he worked at the Norfolk shipyard from 1965 to 1967, and when he worked at the MacMillan Bloedel paper mill from 1972 to 1974. Under well-established, unambiguous Alabama law, however, any claims against GE for such exposures are time-barred by the applicable Alabama limitations period. *See* Ala. Code § 6-2-38(*l*) ("All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years.").[6]

---

[6]     Morgan's death on November 25, 2012 and his personal representative's prompt amendment of the pleadings to add a wrongful death claim within the § 6-2-38 period do not
(Continued)

Historically, Alabama applied a "last exposure rule" governing commencement of the limitations period for claims alleging personal injuries resulting from exposure to a harmful substance, regardless of when those injuries were manifested. *See Garrett v. Raytheon Co.*, 368 So.2d 516, 521 (Ala. 1979) ("[W]e hold that the statute of limitations … began to run when plaintiff was last exposed to radiation and plaintiff's ignorance of the tort or injury, there being no fraudulent concealment, does not postpone the running of the statute until the tort or injury is discovered.").

Shortly after *Garrett* was decided, the Alabama legislature stepped in to modify the judge-made accrual rule in the asbestos context, enacting the following provision: "A civil action for any injury … resulting from exposure to asbestos, including asbestos-containing products, shall be deemed to accrue on the first date the injured party, through reasonable diligence, should have reason to discover the injury giving rise to such civil action." Ala. Code § 6-2-30(b). This "discovery rule" for accrual of personal injury claims in asbestos cases took effect on May 19, 1980. The following year, the Alabama Supreme Court examined the retroactivity of § 6-2-30(b), and held that if, before the effective date of that provision, "one year

---

alter the timeliness analysis. To the contrary, Alabama law is clear that if Morgan's personal injury claims were untimely filed, then his personal representative cannot maintain a viable wrongful death cause of action arising from those personal injuries. *See* Ala. Code § 6-5-410(a) ("A personal representative may commence an action … for the wrongful act, omission, or negligence … whereby the death of the testator or intestate was caused, ***provided the testator or intestate could have commenced an action for the wrongful act, omission, or negligence if it had not caused death***.") (emphasis added). Stated differently, if Morgan's personal injury claims against GE for exposure to asbestos are time-barred, then so are the wrongful death claims relating to those injuries. *See, e.g., Henderson v. MeadWestvaco Corp.*, 23 So.3d 625, 630 (Ala. 2009) (affirming dismissal of asbestos-related wrongful death claim as time-barred under § 6-5-410(a), where decedent's personal injury claims for asbestos exposure accrued in 1972, such that at the time of his death, decedent could not have commenced an action for defendant's wrongful act, omission or negligence if it had not caused death); *In re Asbestos Products Liability Litigation (No. VI)*, 2011 WL 3273296, *3 (E.D. Pa. Apr. 15, 2011) (similar). Simply put, Alabama law leaves no doubt that "if a *decedent's* cause of action is time-barred at his or her death, then the decedent's personal representative cannot bring a wrongful death action." *Henderson*, 23 So.3d at 630 (citations omitted). As such, the crucial issue in the timeliness analysis is whether Morgan's personal injury claims related to asbestos exposure are timely. If they are not, then the later-filed wrongful death claim necessarily fails pursuant to § 6-5-410(a).

had elapsed between the date of plaintiff's exposure and the date on which plaintiff's action was commenced, then that claim is nevertheless barred by the statute of limitations." *Tyson v. Johns-Manville Sales Corp.*, 399 So.2d 263, 267 (Ala. 1981). Subject to that important caveat, the *Tyson* Court expressly upheld § 6-2-30(b)'s establishment of "a discovery rule for the accrual of asbestos injury actions in Alabama." *Id.* at 272.

In the three decades since *Tyson* was decided, Alabama courts have consistently hewed to the principle that if a plaintiff's last exposure to a defendant's asbestos-containing product predated May 19, 1979, then the resulting personal injury claims were time-barred before § 6-2-30(b) was ever enacted and cannot be revived by operation of that statute. *See, e.g., Henderson v. MeadWestvaco Corp.*, 23 So.3d 625, 630 (Ala. 2009) (following *Tyson*'s determination that asbestos claims are time-barred if, as of May 19, 1980, one year had elapsed between the date of exposure and date of commencement of suit); *Johnson v. Garlock, Inc.*, 682 So.2d 25, 28 (Ala. 1996) (reaffirming principle that "§ 6-2-30 cannot apply retroactively to actions already barred by the statute of limitations as interpreted and applied in *Garrett*").[7]

The net result, then, is that Alabama has different rules for accrual of personal injury actions relating to asbestos exposure, depending on whether the last exposure occurred prior to May 19, 1979 (in which case the *Garrett* "last exposure rule" governs) or whether the last exposure occurred thereafter (in which case the § 6-2-30(b) "discovery rule" applies).[8] *See In re*

---

[7] This bright-line rule has been repeatedly acknowledged by MDL courts applying Alabama law in asbestos cases. *See, e.g., Holland v. Armstrong Int'l, Inc.*, 2012 WL 7761487, *1 n.1 (E.D. Pa. Nov. 30, 2012) ("[T]he applicable Alabama statute of limitations bars claims arising from asbestos exposure occurring prior to May 19, 1979. Therefore, these claims are[] barred."); *Legg v. Armstrong Int'l, Inc.*, 2012 WL 7761488, *1 n.1 (E.D. Pa. Nov. 30, 2012) (same); *In re Asbestos*, 2011 WL 3273296, at *3 ("Based on the tenets of *Henderson* and *Tyson*, Mr. Corley's claim of personal injury resulting from asbestos against the moving defendants … would have accrued in 1973, on the date of his last exposure to asbestos in the U.S. Navy. Based on the one-year statute of limitations applicable to personal injury claims in effect at the time of accrual …, his claim was barred in 1974.").

[8] In 2008, the Alabama Supreme Court overruled *Garrett* and jettisoned the last-exposure rule in all toxic substance exposure cases (§ 6-2-30(b) having been confined on its face to the asbestos context), in favor of a discovery rule under which "a cause of action accrues only when there has occurred a *manifest*, present injury." *Griffin v. Unocal Corp.*, 990 So.2d 291, 293 (Ala. 2008) (citation omitted). Nonetheless, the *Griffin* Court declined to give its holding broad retroactive effect, declaring instead that "the new accrual rule of toxic-substance-exposure cases will be applied prospectively, except in this case, where it will apply retroactively." *Id.*;
(Continued)

*Asbestos Products Liability Litigation (No. VI)*, 2011 WL 3240827, *2 (E.D. Pa. July 29, 2011) ("Under Alabama law, all claims for pre–1979 exposure to asbestos must be filed within one year of the last date of exposure.  For any exposure to asbestos after May 17, 1980, the claim accrues upon discovery of an asbestos-related disease.").

As the foregoing discussion demonstrates, any claims relating to Morgan's exposure to GE's asbestos-containing products during the 1950 - 1974 time period are time-barred by straightforward application of black-letter Alabama law, as set forth in *Tyson* and its progeny. *See, e.g., Henderson*, 23 So.3d at 630 ("Tony Henderson's claim of personal injury resulting from exposure to asbestos would have accrued in 1972, on the date of his last exposure to asbestos at CAPCO.  Based on the one-year statute of limitations applicable to personal injury claims at the time …, his claim was time-barred in 1973.").

Under Alabama law, Morgan's claims of personal injury resulting from exposure to GE's asbestos-containing turbines and generators during his employment in the U.S. Navy would have accrued in 1954, when he was last exposed to GE products there.  Likewise, his claims of personal injury concerning exposure to GE's asbestos-containing motors at the Norfolk shipyard would have accrued in 1967, and his claims of personal injury concerning exposure to GE's asbestos-containing motors during his employment at MacMillan Bloedel would have accrued in 1974.  Based on the one-year statute of limitations applicable at the time, Morgan's claims for these exposures would have become time-barred in 1955, 1968, and 1975, respectively, several decades before he sued GE.  By operation of the *Tyson* line of Alabama Supreme Court decisions, those time-barred claims were not revived, revitalized or resuscitated by the Alabama legislature's subsequent enactment of § 6-2-30(b).  Plaintiff has offered no persuasive argument or authority that might allow these claims for pre-1979 exposure to asbestos-containing products of GE to be deemed timely under Alabama law; therefore, GE's Motion for Summary Judgment

---

*see also Jerkins v. Lincoln Elec. Co.*, 103 So.3d 1, 5 (Ala. 2011) (explaining that *Griffin*'s holding "would apply prospectively only, that is, only to those persons whose last exposure to a toxic substance, and first manifest injury resulting from that exposure, occurred within the two-year period before this Court released its opinion in *Griffin*").  The non-retroactivity of the *Griffin* rule means that it has no application to Morgan's claims for pre-1979 exposure, which accrued under the old *Garrett* rule decades before *Griffin* was decided.

will be **granted** insofar as it relates to those pre-1979 events and exposures during Morgan's employment in the Navy, at the Norfolk shipyard, and at the MacMillan Bloedel facility.[9]

### B.     Morgan's Exposure to GE Products at MacMillan Bloedel in the 1980s.

"Under Alabama law, when a plaintiff shows post-1979 exposure to asbestos, his or her action does not 'accrue' until the individual knew or should have known of an asbestos-related disease." *In re Asbestos*, 2011 WL 3240827, at *3. To avail himself of this more lenient discovery rule, the plaintiff must satisfy the condition precedent of showing evidence of a post-1979 exposure to the defendant's products containing asbestos.[10] Plaintiff endeavors to establish such exposure by pointing to evidence that he was in the presence of a GE motor on a single

---

[9] To be sure, plaintiff's response brief urges the Court to apply *Griffin* retroactively (even though the Alabama Supreme Court has steadfastly declined to do so). Plaintiff also filed a separate memorandum of law advocating that "[t]he Alabama Supreme Court should revisit the holding in *Griffin*" and "call[ing] for a re-examination of *Griffin* and the ruling authorizing prospective-only application" of the discovery rule for accrual of toxic tort claims. (Doc. 321, at 18, 21.) Of course, federal courts applying Alabama law must adhere to the clear pronouncements of the Alabama Supreme Court, and do not have the luxury of "revisiting" those holdings or interpreting Alabama law in a manner that deviates from them. *See, e.g., Pietri v. Florida Dep't of Corrections*, 641 F.3d 1276, 1284 (11th Cir. 2011) ("A state supreme court's interpretation of its law is binding on federal courts."); *World Harvest Church, Inc. v. Guideone Mut. Ins. Co.*, 586 F.3d 950, 957 (11th Cir. 2009) ("When we address issues of state law, like the ones in this case, we are bound by the decisions of the state supreme court."). The unbroken line of Alabama Supreme Court decisions running from *Tyson* to *Johnson* to *Griffin* to *Henderson* to *Jerkins* leaves no doubt that, under Alabama law, the last exposure rule continues to govern accrual of personal injury claims for asbestos exposures predating May 19, 1979; therefore, this Court must follow that rule. Nor does plaintiff materially advance his position by citing Alabama authority for the proposition that an asbestos plaintiff "is entitled to recover all damages which proximately flowed from his injury if his action is brought within the statutory period of limitations." *Cazalas v. Johns-Manville Sales Corp.*, 435 So.2d 55, 57 (Ala. 1983). The question presented on summary judgment is not whether plaintiff is entitled to damages for asbestos exposures pre-dating May 1979, but is instead whether "his action is brought within the statutory period of limitations" at all; therefore, *Cazalas* is inapposite. Without a post-1979 exposure to GE asbestos-containing products, plaintiff's claims against this defendant necessarily fail on timeliness grounds. What the measure of damages would be if plaintiff did have any timely claims against GE is beyond the scope of the summary judgment analysis.

[10] This proof requirement may be satisfied by circumstantial evidence. *See, e.g., Turner v. Azalea Box Co.*, 508 So.2d 253, 254 (Ala. 1987) (affirming principle that "circumstantial evidence may be used to prove identity" of the manufacturer of a defective product).

occasion in the early 1980s when he returned to the MacMillan Bloedel plant, that there were GE motors at the Alabama River Pulp facility, and that there was GE high-voltage switch gear at the Alabama River Pulp facility.

With regard to the first of these purported exposures, plaintiff's evidence is quite weak. To be sure, Morgan testified that when he was at the MacMillan Bloedel plant for a couple of days in the early 1980s to take measurements for a belt grinding attachment, there was a GE motor in use, as "things called refiner[s], they were driven by a GE motor." (Morgan Dep. III, at 108.)[11] Importantly, however, Morgan testified that no one was doing repair work on the GE motor when he present at the facility. Assuming the GE motor that Morgan observed at MacMillan Bloedel contained asbestos at all (which is something of a stretch on this record, even taking the evidence in the light most favorable to plaintiff), there is still no evidence that the motor was emitting asbestos particles or blowing asbestos dust into the air during the time that Morgan was on the premises.[12] Thus, plaintiff's presence at the MacMillan Bloedel facility for a

---

[11] This testimony was reinforced by the following exchange:

"Q: Now, and you told us that there were GE motors that were in use when you went back out there?
"A: Yes.
"Q: I – I heard that right, I think?
"A: Uh-huh."

(Morgan Dep. IV, at 223.) On summary judgment, GE characterizes this testimony as "pure speculation" (doc. 356, at 12); however, it is nothing of the sort. Contrary to defendant's position, Morgan's testimony does not reveal that he was simply guessing or speculating that GE motors were in use in the refiner area, or that he was extrapolating from his experience at MacMillan Bloedel a decade earlier and assuming that the company had not changed out the equipment in the interim. Rather, by all appearances, Morgan was properly testifying on personal knowledge based on his own observations at MacMillan Bloedel in the 1980s.

[12] On this point, plaintiff has identified no evidence and no reason to believe that the mere operation of this GE motor at MacMillan Bloedel, without more, would produce asbestos dust that persons in the facility would breathe. Rather, plaintiff's evidence focuses on the asbestos dust created when the motors were opened, repaired and machined. Morgan's testimony was that "[t]he only dust would be when you break it down" (Morgan Dep. IV, at 226), meaning the insulating material in the motors. But there is no evidence that this happened when Morgan was visiting MacMillan Bloedel in the 1980s, or that any such repairs or maintenance work on GE motors had occurred within a reasonable time period before Morgan's visit, such that Morgan might have come into contact with asbestos dust or fibers from that equipment. Likewise, plaintiff's suggestion that Morgan encountered "dust from the machine (Continued)

-10-

day or two in the 1980s when a GE motor purportedly containing asbestos was in operation does not create a jury question as to causation, absent evidence (which has not been presented) that Morgan was exposed to airborne asbestos fibers released by that GE motor during his visit. *See Sheffield v. Owens-Corning Fiberglass Corp.*, 595 So.2d 443, 457 (Ala. 1992) (affirming dismissal of plaintiffs' claims for exposure to boilers containing asbestos "rings," where "the evidence fails to show how the plaintiffs could have been exposed to airborne asbestos fibers released by the rings," "[t]here was no evidence that any of the Foster-Wheeler boilers were ever disassembled or assembled during the periods in which the plaintiffs served aboard the vessels," and "[t]here was no evidence that … plaintiffs had ever seen or handled the rings or knew of their existence"). Plaintiff cannot defeat GE's Rule 56 Motion by referencing Morgan's testimony about the GE motor at MacMillan Bloedel in the 1980s.

   C. *Morgan's Exposure to GE Motors at Alabama River Pulp.*

  Plaintiff's next argument for exposure to asbestos via GE products is that "GE motors were present at ARP," and that "electricians would clean motors and that dust from the electrical shop … would drift about the plant." (Doc. 313, at 21.) The glaring problem with this theory is that plaintiff selectively focuses on the portions of Morgan's testimony that advance this argument, while disregarding other, contrary testimony by Morgan that negates this argument.

  During one of Morgan's trial depositions, his lawyer asked him, "How about at ARP? Did you see any GE motors at ARP at that time?" (Morgan Dep. III, at 102.) Morgan answered, "I really can't remember nothing but the Reliance motors." (*Id.*) Plaintiff's counsel did not elicit further testimony or explanation from Morgan on this point, but instead let this answer lie. Yet plaintiff now opposes GE's Rule 56 Motion by arguing that "Mr. Morgan testified that GE motors were present at ARP." (Doc. 313, at 21.) To support this contention, plaintiff cites an excerpt from one of Morgan's discovery depositions, in which he answered, "Yes. Uh-huh," when asked if he had "a specific recollection of there being GE motors at ARP." (Morgan Dep.

---

floor" (doc. 313, at 6) at MacMillan Bloedel is probative of nothing without evidence (which has not been identified) that asbestos dust from the GE motor was present on the machine floor when Morgan was on-site. Thus, on this record, any suggestion that Morgan breathed in asbestos fibers from the GE motor in the refiner area of the facility is speculative and devoid of evidentiary support.

II, at 283.) Plaintiff does not acknowledge, address or otherwise respond to the fact that Morgan testified a week later that he did not remember seeing any motors other than Reliance motors at the Alabama River Pulp plant.

The Eleventh Circuit has roundly condemned the practice of a summary judgment nonmovant selectively emphasizing bits and pieces of his evidence to oppose summary judgment, while ignoring contrary aspects of his own sworn testimony. In that regard, the law is clear that "[o]ur duty to read the record in the nonmovant's favor stops short of not crediting the nonmovant's testimony in whole or part: the courts owe a nonmovant no duty to disbelieve his sworn testimony which he chooses to submit for use in the case to be decided." *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) (*en banc*); *Williamson v. Clarke County Dep't of Human Resources*, 834 F. Supp.2d 1310, 1315 n.6 (S.D. Ala. 2011) (nonmovant "cannot create a genuine issue of material fact on summary judgment by stating the facts one way in his affidavit, and another way in his brief"); *Sharpe v. Global Sec. Intern.*, 766 F. Supp.2d 1272, 1286 n.17 (S.D. Ala. 2011) ("Plaintiff has not explained the obvious inconsistency or justified any improper request that the Court credit one aspect of his testimony and discredit another part on summary judgment.").[13]

Morgan testified under oath at a trial deposition that the only motors he remembered seeing at Alabama River Pulp were Reliance motors, not GE motors. Having chosen to provide that sworn testimony in his trial deposition, plaintiff cannot retreat from it now or have this Court erase it in favor of discovery deposition testimony he had given a week earlier. Again, plaintiff does not get to pick and choose the fragments of his own evidence that best suit his purposes on summary judgment, and then stitch those pieces together while urging the Court to disregard his

---

[13] *See also Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984) ("A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct."); *Progressive Northern Ins. Co. v. McDonough*, 608 F.3d 388, 391 (8th Cir. 2010) ("Contradictory testimony in these instances is typically only allowed when the party was confused and needs to clarify an earlier statement."); *Perkins v. City of Rochester*, 641 F. Supp.2d 168, 171 n.1 (W.D.N.Y. 2009) ("A party cannot defeat summary judgment by abruptly offering different, fluctuating or wholly contradictory versions of the salient events, and I therefore conclude that Lashedica's deposition testimony is insufficient to create a material question of fact."); *Hale v. Kroger Ltd. Partnership I*, 28 So.3d 772, 780 (Ala.Civ.App. 2009) ("A nonmovant cannot rely on deposition testimony that is internally inconsistent and contradictory to create a genuine issue of material fact.").

own unfavorable, contrary testimony.[14]  If Morgan's testimony is credited in whole (as it must be, under binding precedent), then he cannot withstand summary judgment analysis on the theory that GE motors were present at Alabama River Pulp, because his own trial deposition testimony expressly denies that he ever saw any motors other than Reliance motors at that location.

### D.  *Morgan's Exposure to GE Switch Gear at Alabama River Pulp.*

In a final attempt to establish causation between GE asbestos-containing products and Morgan's injuries, plaintiff points to evidence that Alabama River Pulp had GE high-voltage switch gear housed in panel boxes with asbestos-containing contactor boards.  Plaintiff's theory is that Morgan was exposed to the asbestos in these panel boxes because (i) he "would occasionally fabricate components for the switch gear, which would require him to take measurements inside the cabinets;" and (ii) "[w]hen this occurred, [Morgan] would be exposed to the dust from the inside of the cabinets and would have inhaled this dust." (Doc. 313, at 21-22.)

The fundamental trouble with plaintiff's theory is that Morgan's deposition testimony was exactly to the contrary.  Indeed, Morgan unambiguously answered, "I never did inside," when asked if he had worked on high-voltage equipment inside the panel boxes.  (Morgan Dep. IV, at 229.)  He elaborated by saying that while he had seen the panel boxes at Alabama River Pulp open during annual inspections, "as far as me having my hands in there, I haven't been there." (*Id.* at 230.)  So the fact scenario on which plaintiff relies to establish a causal relationship between GE high-voltage equipment and Morgan's exposure to airborne asbestos fibers after 1979 – that Morgan worked inside the panel boxes by taking measurements for

---

[14]   The result might be different if plaintiff had offered any explanation for the direct contradiction in Morgan's testimony.  But plaintiff did not do so.  Why would Morgan have testified under oath on August 25, 2011 that he had a specific recollection of there being GE motors at Alabama River Pulp, then testify under oath on September 2, 2011 that he did not remember ever seeing any GE motors (but only Reliance motors) at Alabama River Pulp?  We do not know because plaintiff has not told us.  Was he confused the first time or the second time?  Again, plaintiff is silent.  How could a jury ever decide between these two sets of testimony, when Morgan is now deceased and cannot explain the discrepancy or even identify which version of his testimony he thinks is the truth?  Plaintiff does not begin to address this question, but instead asks the Court blindly to credit the portion of Morgan's testimony that favors plaintiff's summary judgment position, while discarding the portion of his testimony that undercuts it.  The Eleventh Circuit having counseled against just this sort of opportunistic parsing of a summary judgment nonmovant's own evidence, this Court declines to do so.

components, at which time he breathed asbestos dust from the contactor boards – is conclusively rebutted by Morgan's own sworn testimony.  Plaintiff cannot overcome GE's Motion for Summary Judgment on this basis.

It is no answer to argue, as plaintiff does, that the testimony of Morgan's son, Ronald Morgan, creates a genuine issue of material fact on this point.  To be sure, Ronald Morgan testified that he knew Morgan had fabricated components for GE switch gear at Alabama River Pulp, and that Morgan would have breathed asbestos dust from those panel boxes because, in "manipulating parts and pieces, you're going to disturb the residual dust that was in the cabinet, so it was just part of the process of gaining access to the equipment." (Ronald Morgan Dep., at 217-18, 290-92.)  But governing law is clear that a summary judgment nonmovant cannot create a genuine issue of material fact by presenting evidence or testimony that contradicts the nonmovant's own sworn testimony on the subject.  Indeed, "[w]hen the nonmovant has testified to events, we do not … pick and choose bits from other witnesses' essentially incompatible accounts (in effect, declining to credit some of the nonmovant's own testimony) and then string together those portions of the record to form the story that we deem most helpful to the nonmovant." *Evans*, 407 F.3d at 1278; *see also Jones v. UPS Ground Freight*, 683 F.3d 1283, 1295 (11th Cir. 2012) (reaffirming principle that "we should not consider for summary judgment purposes even non-hearsay testimony of a witness that is more favorable on a factual issue than the nonmoving party's own testimony"); *Sullivan v. City of Satsuma*, 2005 WL 2895983, *5 (S.D. Ala. Oct. 28, 2005) ("*Evans* counsels that when a plaintiff stakes himself to a version of the facts in his sworn deposition testimony, he cannot create a genuine issue of material fact by pointing to other evidence that contradicts his testimony, effectively asking the district court to disregard his own version of the facts.").  Because Morgan's testimony leaves no doubt that he "never had his hands" in the GE panel boxes and therefore could not have disturbed residual asbestos dust in the boxes that he then inhaled, plaintiff cannot rely on Ronald Morgan's contrary testimony to create an issue of material fact on summary judgment.

**IV.   Conclusion.**

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citation omitted).  This record, taken as a whole, could not lead a rational trier of fact to find that Morgan was ever exposed to asbestos from GE products

after May 19, 1979. In other words, no reasonable jury could conclude from this evidence that Morgan's illness and death were caused by asbestos exposure that (i) was attributable to GE and (ii) occurred after the effective date of the discovery rule of accrual fashioned by § 6-2-30(b).[15] Accordingly, GE is entitled to summary judgment on grounds that the record lacks sufficient evidence of product identification / causation within the applicable limitations period. *See Lee v. Celotex Corp.*, 764 F.2d 1489, 1491 (11th Cir. 1985) (defendant entitled to summary judgment where "[t]he allegation that plaintiff was exposed to defendant's asbestos-containing product is not supported by reasonable inferences arising from the undisputed facts, but is based on speculation and conjecture that renders them mere guesses or possibilities"); *Blackston v. Shook and Fletcher Insulation Co.*, 764 F.2d 1480, 1481 (11th Cir. 1985) (rejecting notion that plaintiff can show that he "was exposed to the asbestos in a defendant's products by simply showing that he worked at a job site at a time when the defendant's asbestos-containing products were used").

For all of the foregoing reasons, the Court finds that there are no genuine issues of material fact, and that movant is entitled to judgment as a matter of law. Defendant General Electric Company's Motion for Summary Judgment (doc. 262) is **granted**, and plaintiff's claims against that defendant are **dismissed with prejudice**. The Clerk of Court is directed to **terminate** General Electric as a party defendant.

DONE and ORDERED this 30th day of August, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[15] To be sure, plaintiff may well have evidence that Morgan was exposed to asbestos-containing products manufactured by other defendants after May 19, 1979. But applicable law imposes on plaintiff the burden of proving exposure to each particular defendant's products, not just proving exposure to asbestos in general. *See, e.g., Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir. 1990) ("the issue is whether a reasonable jury could conclude in this case by a preponderance of the evidence presented, that Mr. Hoffman was exposed to Armstrong's asbestos products, and that the exposure was a proximate cause of his injury"); *Lee v. Celotex Corp.*, 764 F.2d 1489, 1490 (11th Cir. 1985) ("The major factual issue at the summary judgment stage in asbestos litigation is whether plaintiff was exposed to the products of the defendant."); *Blackston v. Shook and Fletcher Insulation Co.*, 764 F.2d 1480, 1483 (11th Cir. 1985) ("Reasons behind the requirement that plaintiffs prove exposure to a particular defendant's products in order to establish proximate cause are well-stated in cases refusing to impose market-share or industry-wide liability upon asbestos manufacturers.").