# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| RONALD MELVIN MORGAN, ) <br> as Personal Representative for the Estate ) <br> of Rueben Morgan, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BILL VANN COMPANY, INC., *et al.*, ) <br> ) <br> Defendants. ) | | CIVIL ACTION 11-0535-WS-B |

## ORDER

This matter comes before the Court on defendant Mount Vernon Mills' Motion for Summary Judgment (doc. 276). The Motion has been briefed and is ripe for disposition.[1]

**I.      Relevant Background.**

This is an asbestos action pending against 11 defendants,[2] alleging various state-law tort claims and a wrongful death cause of action based on the alleged exposure of plaintiff's decedent, Rueben Morgan, to asbestos-containing products at various times and locations. Morgan was diagnosed with malignant mesothelioma (a disease commonly linked to asbestos exposure) in or about February 2011. (Doc. 199, at Exh. A.) He died on or about November 5, 2012, at the age of 79. (Doc. 206, at Exh. A.)

---

[1] Mount Vernon requested oral argument on its Motion. The Local Rules authorize such requests, but also provide that "the court may in its discretion rule on any motion without oral argument." LR 7.3. After careful review of the parties' briefs and exhibits, the undersigned finds that oral argument is unlikely to be beneficial in resolving the issues raised on summary judgment. Accordingly, the request for oral argument is **denied**.

[2] Initially, there were numerous other named defendants; however, the ranks of defendants have dwindled as a result of settlements and voluntary dismissals. All 11 remaining defendants have pending, ripe summary judgment motions that have been taken under submission.

On May 4, 2011, less than three months after his diagnosis, Morgan initiated this litigation against 42 named defendants (not including Mount Vernon). Morgan's pleadings alleged that he "was exposed to asbestos dust, asbestos particles, asbestos containing materials and products that were produced, manufactured, specified for use, installed, distributed, sold and/or placed into the stream of commerce by the producer and/or distributor Defendants during his employment as a machinist, engine room worker, and mechanic," as a result of which he was "diagnosed with an asbestos related disease." (Doc. 1, Exh. A-2, at 6.) On July 29, 2011, Morgan amended his Complaint to add Mount Vernon as a defendant. (Doc. 4, Exh. B, at 1.)

Record facts concerning Morgan's interactions with Mount Vernon and its products are as follows:[3] Morgan was employed as a multi-craft maintenance mechanic at a paper company called MacMillan Bloedel from 1972 through 1974. (Morgan Dep. I, at 86.)[4] This facility where Morgan worked produced a brown liner board used in cardboard boxes. (*Id.* at 88.) In his capacity as a mechanic, Morgan's job duties were to maintain the paper machine and related equipment. (*Id.* at 86.) MacMillan Bloedel's paper machine utilized so-called "dryer felts," which Morgan characterized as an asbestos-containing product. (*Id.* at 87; Morgan Dep. III, at 186-87; Morgan Dep. IV, at 242.) In paper mill operations, a dryer felt "takes the sheet from the press section of the paper machine and carries it through a section of heated metal rolls or drums, and it dries – it dries the sheet." (Morgan Dep. III, at 182.) Mount Vernon was one of several

---

[3] The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Thus, plaintiff's evidence is taken as true and all justifiable inferences are drawn in his favor. Federal courts cannot weigh credibility at the summary judgment stage. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices."). Thus, the Court will "make no credibility determinations or choose between conflicting testimony, but instead accept Plaintiff's version of the facts drawing all justifiable inferences in Plaintiff's favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

[4] Morgan's deposition was taken multiple times in this case, including discovery depositions taken on August 16, 2011 and August 25, 2011, and trial depositions taken on September 2 and 8, 2011. For purposes of this Order, citations to Morgan's August 16 deposition will take the form "Morgan Dep. I," while citations to the August 25 deposition will take the form "Morgan Dep. II," those to the September 2 deposition will take the form "Morgan Dep. III," and those to the September 8 deposition will take the form "Morgan Dep. IV."

suppliers of dryer felts used at MacMillan Bloedel during the 1972-74 period. (Morgan Dep. I, at 87-88, 195-96.) Although he was not involved in the purchase or installation of dryer felts at MacMillan Bloedel, Morgan knew that some of the dryer felts were manufactured by Mount Vernon because "the boxes that they come in … was nice white pine boxes. … And so they had their names on them good and bold." (Morgan Dep. III, at 184.) There was at least one other supplier of dryer felts (Albany) used at MacMillan Bloedel during Morgan's employment. (*Id.* at 183-84, 193-94; Morgan Dep. I, at 87-88.) Morgan testified that Albany and Mount Vernon dryer felts were substantially similar in their usage and appearance. (Morgan Dep. III, at 187.)

Morgan separated from his employment at MacMillan Bloedel in 1974 or 1975. (Morgan Dep. I, at 86, 197; Morgan Dep. III, at 189.) From 1978 through 1992, he worked at the Alabama River Pulp paper mill; however, Morgan testified that the Alabama River Pulp facility did not use dryer felts. (Morgan Dep. I, at 197-98.)[5] Even under plaintiff's version of the facts, Morgan had, at most, a single instance of purported exposure to Mount Vernon dryer felts after 1974-75. In particular, sometime in the early 1980s, Morgan went back to the MacMillan Bloedel facility "to get the dimensions and pattern to make a belt grinding attachment for Alabama River Pulp's roll grinder." (Morgan Dep. III, at 192.) Morgan did not go to the dryer section of the MacMillan Bloedel paper machine, but from his location in the roll grinding area, he could feel a draft from the dryer section, such that he would have been exposed to any dust emanating from that area. (*Id.* at 192-93.) Morgan spent no more than "a couple of days or so" at MacMillan Bloedel on this assignment. (Morgan Dep. IV, at 246.)

The critical question for purposes of the subject summary judgment motion is whether Mount Vernon dryer felts were in use at MacMillan Bloedel in the early 1980s when Morgan briefly visited the facility on his belt grinder assignment. Morgan acknowledged that during his

---

[5] Morgan also indicated that the only time he ever worked at a facility that had dryer felts was his employment at MacMillan Bloedel. (Morgan Dep. I, at 105-06.) Morgan's testimony was clear that the only time he remembered ever seeing or being around Mount Vernon dryer felts was at MacMillan Bloedel. (Morgan Dep. IV, at 122.) He also explained that Alabama River Pulp "didn't have dryer rolls and felts" but instead utilized a process through which the sheet was air-dried on rollers. (Morgan Dep. III, at 183.) Certainly, no genuine issue of material fact has been presented that the Alabama River Pulp plant where Morgan worked from 1978 through 1992 used any Mount Vernon product that contained asbestos, or that Morgan was ever exposed to Mount Vernon asbestos products at that location.

return visit to MacMillan Bloedel, he was not even on the same floor of the paper mill as the dryer section where dryer felts were used. (Morgan Dep. III, at 107-08, 189-90; Morgan Dep. IV, at 243.) Thus, he never saw any dryer felts at MacMillan Bloedel in the 1980s. Moreover, when asked point-blank whether he knew what kind of dryer felts were in the MacMillan Bloedel mill when he came back, Morgan answered, "No." (Morgan Dep. IV, at 122.) Later in the deposition, Morgan testified that he did not believe that MacMillan Bloedel had modified its suppliers of dryer felts between 1974 (when his employment at the plant terminated) and his one- or two-day visit to the plant in the 1980s. (*Id.* at 245.) As Morgan explained, "[I]f you've got something working, you'd stay with that. … [F]rom that standpoint if you had a product that's – that's working, doing you a good job, I don't see where you'd change it." (*Id.* at 244.) So Morgan did not have any reason to believe that MacMillan Bloedel had discontinued use of Mount Vernon dryer felts between the time of his departure from the company in 1974 and his brief foray back into the plant in the early 1980s. But he did not know. Morgan's aforementioned testimony is the only record evidence on this point.

## II. Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual

determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

**III. Analysis.**

The central legal issue animating Mount Vernon's Rule 56 Motion is whether Morgan's claims against it are time-barred by the applicable Alabama limitations period. *See* Ala. Code § 6-2-38(*l*) ("All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years.").[6]

### *A. Alabama Law Governing Accrual of Causes of Action in Toxic Tort Cases.*

Historically, Alabama applied a "last exposure rule" governing commencement of the limitations period for claims alleging personal injuries resulting from exposure to a harmful substance, regardless of when those injuries were manifested. *See Garrett v. Raytheon Co.*, 368 So.2d 516, 521 (Ala. 1979) ("[W]e hold that the statute of limitations … began to run when plaintiff was last exposed to radiation and plaintiff's ignorance of the tort or injury, there being no fraudulent concealment, does not postpone the running of the statute until the tort or injury is discovered.").

---

[6] Morgan's death on November 25, 2012 and his personal representative's prompt amendment of the pleadings to add a wrongful death claim within the § 6-2-38 period do not alter the timeliness analysis. To the contrary, Alabama law is clear that if Morgan's personal injury claims were untimely filed, then his personal representative cannot maintain a viable wrongful death cause of action arising from those personal injuries. *See* Ala. Code § 6-5-410(a) ("A personal representative may commence an action … for the wrongful act, omission, or negligence … whereby the death of the testator or intestate was caused, ***provided the testator or intestate could have commenced an action for the wrongful act, omission, or negligence if it had not caused death***.") (emphasis added). Stated differently, if Morgan's personal injury claims against Mount Vernon for exposure to asbestos are time-barred, then so are the wrongful death claims relating to those injuries. *See, e.g., Henderson v. MeadWestvaco Corp.*, 23 So.3d 625, 630 (Ala. 2009) (affirming dismissal of asbestos-related wrongful death claim as time-barred under § 6-5-410(a), where decedent's personal injury claims for asbestos exposure accrued in 1972, such that at the time of his death, decedent could not have commenced an action for defendant's wrongful act, omission or negligence if it had not caused death); *In re Asbestos Products Liability Litigation (No. VI)*, 2011 WL 3273296, *3 (E.D. Pa. Apr. 15, 2011) (similar). Simply put, Alabama law leaves no doubt that "if a *decedent's* cause of action is time-barred at his or her death, then the decedent's personal representative cannot bring a wrongful death action." *Henderson*, 23 So.3d at 630 (citations omitted). As such, the crucial issue in the timeliness analysis is whether Morgan's personal injury claims related to asbestos exposure are timely. If they are not, then the later-filed wrongful death claim necessarily fails pursuant to § 6-5-410(a).

Shortly after *Garrett* was decided, the Alabama legislature stepped in to modify the accrual rule for asbestos actions, enacting the following provision: "A civil action for any injury … resulting from exposure to asbestos, including asbestos-containing products, shall be deemed to accrue on the first date the injured party, through reasonable diligence, should have reason to discover the injury giving rise to such civil action." Ala. Code § 6-2-30(b). This "discovery rule" for accrual of personal injury claims in asbestos cases took effect on May 19, 1980. The following year, the Alabama Supreme Court examined the retroactivity of § 6-2-30(b), and held that if, before the effective date of that provision, "one year had elapsed between the date of plaintiff's exposure and the date on which plaintiff's action was commenced, then that claim is nevertheless barred by the statute of limitations." *Tyson v. Johns-Manville Sales Corp.*, 399 So.2d 263, 267 (Ala. 1981). Subject to that important caveat, the *Tyson* Court expressly upheld § 6-2-30(b)'s establishment of "a discovery rule for the accrual of asbestos injury actions in Alabama." *Id.* at 272.

In the three decades since *Tyson* was decided, Alabama courts have consistently hewed to the principle that if a plaintiff's last exposure to a defendant's asbestos-containing product predated May 19, 1979, then the resulting personal injury claims were time-barred before § 6-2-30(b) was ever enacted and cannot be revived by operation of that statute. *See, e.g., Henderson v. MeadWestvaco Corp.*, 23 So.3d 625, 630 (Ala. 2009) (following *Tyson*'s determination that asbestos claims are time-barred if, as of May 19, 1980, one year had elapsed between the date of exposure and date of commencement of suit); *Johnson v. Garlock, Inc.*, 682 So.2d 25, 28 (Ala. 1996) (reaffirming principle that "§ 6-2-30 cannot apply retroactively to actions already barred by the statute of limitations as interpreted and applied in *Garrett*").[7]

---

[7] This bright-line rule has been repeatedly acknowledged by MDL courts applying Alabama law in asbestos cases. *See, e.g., Holland v. Armstrong Int'l, Inc.*, 2012 WL 7761487, *1 n.1 (E.D. Pa. Nov. 30, 2012) ("[T]he applicable Alabama statute of limitations bars claims arising from asbestos exposure occurring prior to May 19, 1979. Therefore, these claims are[] barred."); *Legg v. Armstrong Int'l, Inc.*, 2012 WL 7761488, *1 n.1 (E.D. Pa. Nov. 30, 2012) (same); *In re Asbestos*, 2011 WL 3273296, at *3 ("Based on the tenets of *Henderson* and *Tyson*, Mr. Corley's claim of personal injury resulting from asbestos against the moving defendants … would have accrued in 1973, on the date of his last exposure to asbestos in the U.S. Navy. Based on the one-year statute of limitations applicable to personal injury claims in effect at the time of accrual …, his claim was barred in 1974.").

The net result, then, is that Alabama has different rules for accrual of personal injury actions relating to asbestos exposure, depending on whether the last exposure occurred prior to May 19, 1979 (in which case the *Garrett* "last exposure rule" governs) or whether the last exposure occurred thereafter (in which case the § 6-2-30(b) "discovery rule" applies).[8] *See In re Asbestos Products Liability Litigation (No. VI)*, 2011 WL 3240827, *2 (E.D. Pa. July 29, 2011) ("Under Alabama law, all claims for pre–1979 exposure to asbestos must be filed within one year of the last date of exposure. For any exposure to asbestos after May 17, 1980, the claim accrues upon discovery of an asbestos-related disease.").

The Court now applies these well-settled principles of Alabama law to record facts concerning Morgan's exposure to asbestos-containing products manufactured by Mount Vernon.

### B. *Plaintiff's Claims Relating to Pre-1979 Exposure to Mount Vernon Products are Time-Barred on Their Face.*

Plaintiff has offered substantial evidence that Morgan was exposed to asbestos-containing dryer felts manufactured by Mount Vernon from 1972 to 1974, when he was employed at the MacMillan Bloedel facility. The problem is that, as the foregoing discussion demonstrates, any claims relating to Morgan's exposure to Mount Vernon's asbestos-containing products during that time period are time-barred by straightforward application of black-letter Alabama law, as set forth in *Tyson* and its progeny. *See, e.g., Henderson*, 23 So.3d at 630 ("Tony Henderson's claim of personal injury resulting from exposure to asbestos would have accrued in 1972, on the date of his last exposure to asbestos at CAPCO. Based on the one-year statute of limitations applicable to personal injury claims at the time …, his claim was time-barred in 1973.").

---

[8] In 2008, the Alabama Supreme Court overruled *Garrett* and jettisoned the last-exposure rule in all toxic substance exposure cases (§ 6-2-30(b) having been confined on its face to the asbestos context), in favor of a discovery rule under which "a cause of action accrues only when there has occurred a *manifest*, present injury." *Griffin v. Unocal Corp.*, 990 So.2d 291, 293 (Ala. 2008) (citation omitted). Nonetheless, the *Griffin* Court declined to give its holding broad retroactive effect, declaring instead that "the new accrual rule of toxic-substance-exposure cases will be applied prospectively, except in this case, where it will apply retroactively." *Id.*; *see also Jerkins v. Lincoln Elec. Co.*, 103 So.3d 1, 5 (Ala. 2011) (explaining that *Griffin*'s holding "would apply prospectively only, that is, only to those persons whose last exposure to a toxic substance, and first manifest injury resulting from that exposure, occurred within the two-year period before this Court released its opinion in *Griffin*"). The non-retroactivity of the *Griffin* rule means that it has no application to Morgan's claims for pre-1979 exposure, which accrued under the old *Garrett* rule decades before *Griffin* was decided.

Under Alabama law, Morgan's claims of personal injury resulting from exposure to Mount Vernon-manufactured asbestos during his employment at MacMillan Bloedel would have accrued in 1974, when he was last exposed to Mount Vernon products there. Based on the one-year statute of limitations applicable at the time, Morgan's claims for these 1972-74 exposures would have become time-barred in 1975, some 36 years before he sued Mount Vernon. By operation of *Tyson*, those time-barred claims were not revived, revitalized or resuscitated by the Alabama legislature's subsequent enactment of § 6-2-30(b). Plaintiff has offered no persuasive argument or authority that might allow his claims for 1972-74 exposures at MacMillan Bloedel to be deemed timely under Alabama law; therefore, Mount Vernon's Motion for Summary Judgment will be **granted** insofar as it relates to those pre-1979 events.[9]

### C. Plaintiff Has No Evidence of Post-1979 Exposure to Mount Vernon Products from which a Rational Finder of Fact Might Infer Causation / Liability.

"Under Alabama law, when a plaintiff shows post-1979 exposure to asbestos, his or her action does not 'accrue' until the individual knew or should have known of an asbestos-related disease." *In re Asbestos*, 2011 WL 3240827, at *3. To avail himself of this more lenient discovery rule, the plaintiff must satisfy the condition precedent of showing post-1979 exposure to the defendant's products containing asbestos.[10] Plaintiff has not done so. There is no

---

[9] To be sure, plaintiff has filed a separate memorandum of law advocating that "[t]he Alabama Supreme Court should revisit the holding in *Griffin*" and "call[ing] for a re-examination of *Griffin* and the ruling authorizing prospective-only application" of the discovery rule for accrual of toxic tort claims. (Doc. 321, at 18, 21.) Of course, federal courts applying Alabama law must adhere to the clear pronouncements of the Alabama Supreme Court, and do not have the luxury of "revisiting" those holdings or interpreting Alabama law in a manner that deviates from them. *See, e.g., Pietri v. Florida Dep't of Corrections*, 641 F.3d 1276, 1284 (11th Cir. 2011) ("A state supreme court's interpretation of its law is binding on federal courts."); *World Harvest Church, Inc. v. Guideone Mut. Ins. Co.*, 586 F.3d 950, 957 (11th Cir. 2009) ("When we address issues of state law, like the ones in this case, we are bound by the decisions of the state supreme court."). The unbroken line of Alabama Supreme Court decisions running from *Tyson* to *Johnson* to *Griffin* to *Henderson* to *Jerkins* leaves no doubt that, under Alabama law, the last exposure rule continues to govern accrual of personal injury claims for asbestos exposures predating May 19, 1979; therefore, this Court must follow that rule.

[10] This proof requirement may be satisfied by circumstantial evidence. *See, e.g., Turner v. Azalea Box Co.*, 508 So.2d 253, 254 (Ala. 1987) (affirming principle that "circumstantial evidence may be used to prove identity" of the manufacturer of a defective product).

evidence that Mount Vernon-manufactured dryer felts (or other Mount Vernon asbestos products) were in use at the Alabama River Pulp mill where Morgan worked from 1978 through 1992. Instead, plaintiff relies heavily on the single occasion in the early 1980s when Morgan returned to the MacMillan Bloedel facility for a couple of days on assignment for Alabama River Pulp. But Morgan admitted that he did not see any dryer felts during that visit, and indeed was on a different floor of the paper mill from the dryer section. Morgan also conceded that he did not know what brand or brands of dryer felts were in use at that time, instead offering what he acknowledged was a guess that MacMillan Bloedel had continued using the same suppliers for its dryer felts during the intervening decade (approximately) since Morgan had last worked there. Morgan's testimony on this point is fairly summarized by his reasoning, "if it ain't broke, don't fix it." (Morgan Dep. IV, at 244.) But if Morgan was not still employed at MacMillan Bloedel (he was not), and if he had not been employed there in many years (he had not), then how would he have any reason to know whether MacMillan Bloedel perceived the dryer felts used in its sheet-drying process as "broke" or not? He would not. Morgan had no information as to whether McMillan Bloedel was or was not satisfied with the performance of Mount Vernon's dryer felts in the post-1974 period. He had no information as to whether that company had continued to use Mount Vernon's dryer felts after 1974. He was simply speculating, with no rational foundation in facts personally known to him.

The infirmity with plaintiff's reliance on such testimony to oppose Mount Vernon's Motion for Summary Judgment and identify genuine issues of material fact for trial is glaring. "Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted); *see also Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("A 'mere scintilla' of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment."). Simply put, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citation omitted). This record, taken as a whole, could not lead a rational trier of fact to find that Morgan was ever exposed to Mount Vernon asbestos-containing products after May 19, 1979. In other words, no reasonable jury could conclude from this evidence that Morgan's illness and death were caused by asbestos exposure that (i) was

-9-

attributable to Mount Vernon and (ii) occurred after the effective date of the discovery rule of accrual fashioned by § 6-2-30(b).[11] Accordingly, Mount Vernon is entitled to summary judgment on grounds that the record lacks sufficient evidence of product identification / causation within the applicable limitations period. *See Lee v. Celotex Corp.*, 764 F.2d 1489, 1491 (11th Cir. 1985) (defendant entitled to summary judgment where "[t]he allegation that plaintiff was exposed to defendant's asbestos-containing product is not supported by reasonable inferences arising from the undisputed facts, but is based on speculation and conjecture that renders them mere guesses or possibilities").

### IV. Conclusion.

For all of the foregoing reasons, the Court finds that there are no genuine issues of material fact, and that movant is entitled to judgment as a matter of law. Defendant Mount Vernon Mills' Motion for Summary Judgment (doc. 276) is **granted**, and plaintiff's claims against that defendant are **dismissed with prejudice**. The Clerk of Court is directed to **terminate** Mount Vernon Mills as a party defendant.

DONE and ORDERED this 30th day of August, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[11] To be sure, plaintiff may well have evidence that Morgan was exposed to asbestos-containing products manufactured by other defendants after May 19, 1979. But applicable law imposes on plaintiff the burden of proving exposure to each particular defendant's products, not just proving exposure to asbestos in general. *See, e.g., Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir. 1990) ("the issue is whether a reasonable jury could conclude in this case by a preponderance of the evidence presented, that Mr. Hoffman was exposed to Armstrong's asbestos products, and that the exposure was a proximate cause of his injury"); *Lee v. Celotex Corp.*, 764 F.2d 1489, 1490 (11th Cir. 1985) ("The major factual issue at the summary judgment stage in asbestos litigation is whether plaintiff was exposed to the products of the defendant."); *Blackston v. Shook and Fletcher Insulation Co.*, 764 F.2d 1480, 1483 (11th Cir. 1985) ("Reasons behind the requirement that plaintiffs prove exposure to a particular defendant's products in order to establish proximate cause are well-stated in cases refusing to impose market-share or industry-wide liability upon asbestos manufacturers.").