IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RONALD MELVIN MORGAN, ) <br> as Personal Representative for the Estate ) <br> of Rueben Morgan, ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BILL VANN COMPANY, INC., *et al.*, ) <br> ) <br>     Defendants. ) | CIVIL ACTION 11-0535-WS-B |

**ORDER**

This matter comes before the Court on the Motion for Summary Judgment (doc. 273) filed by defendants Crown Cork & Seal Company, Inc., and Crown Holdings, Inc. The Motion has been briefed and is ripe for disposition.

**I.    Relevant Background.**

This is an asbestos action pending against 11 defendants,[1] alleging various state-law tort claims and a wrongful death cause of action based on the alleged exposure of plaintiff's decedent, Rueben Morgan, to asbestos-containing products at various times and locations. Morgan was diagnosed with malignant mesothelioma (a disease commonly linked to asbestos exposure) in or about February 2011. (Doc. 199, at Exh. A.) He died on or about November 5, 2012, at the age of 79. (Doc. 206, at Exh. A.)

On May 4, 2011, less than three months after his diagnosis, Morgan initiated this litigation against 42 named defendants (including Crown Cork & Seal and Crown Holdings). Morgan's pleadings alleged that he "was exposed to asbestos dust, asbestos particles, asbestos

---

[1]    Initially, there were numerous other named defendants; however, the ranks of defendants have dwindled as a result of settlements and voluntary dismissals. All 11 remaining defendants (with Crown Cork and Crown Holdings counted as a single defendant because they appear identically situated herein and have jointly moved for Rule 56 relief on identical grounds) have pending, ripe summary judgment motions that have been taken under submission.

containing materials and products that were produced, manufactured, specified for use, installed, distributed, sold and/or placed into the stream of commerce by the producer and/or distributor Defendants during his employment as a machinist, engine room worker, and mechanic," as a result of which he was "diagnosed with an asbestos related disease." (Doc. 1, Exh. A-2, at 6.) On July 29, 2011, Morgan amended his Complaint to name certain additional defendants. (Doc. 4, Exh. B, at 1.)

Plaintiff's claims against Crown Cork & Seal Company, Inc., and Crown Holdings, Inc. (collectively, the "Crown Defendants") proceed from the theory that these entities are successors-in-interest to a company called Mundet Cork Corporation ("Mundet"), and that Morgan was exposed to asbestos-containing products manufactured by Mundet. (*See* doc. 1, Exh. A-2, at 8 ¶¶ 20-21.) For purposes of summary judgment, the Crown Defendants do not dispute that they are successors-in-interest to Mundet, and they do not litigate at this time the question of whether Alabama law would impute successor liability to them. Accordingly, the Court assumes (without deciding) for purposes of this Order that (i) the Crown Defendants are successors-in-interest to Mundet, and (ii) Alabama law would authorize successor liability for the Crown Defendants if plaintiff has brought timely claims against them for exposure to Mundet's asbestos-containing products.

Record facts concerning Morgan's interactions with Mundet products are as follows:[2] Morgan was in the United States Navy from 1950 to 1954, during which time he worked as a machinist aboard three different vessels. (Morgan Dep. I, at 35-36.)[3] In the course of his Navy

---

[2] The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Thus, plaintiff's evidence is taken as true and all justifiable inferences are drawn in his favor. Federal courts cannot weigh credibly at the summary judgment stage. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices."). Thus, the Court will "make no credibility determinations or choose between conflicting testimony, but instead accept Plaintiff's version of the facts drawing all justifiable inferences in Plaintiff's favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

[3] Morgan's deposition was taken multiple times in this case, including discovery depositions taken on August 16, 2011 and August 25, 2011, and trial depositions taken on September 2 and 8, 2011. For purposes of this Order, citations to Morgan's August 16 deposition will take the form "Morgan Dep. I," while citations to the August 25 deposition will (Continued)

service, Morgan worked in the vessels' boiler rooms (which he described as having steam lines covered with asbestos insulation) or engine rooms (which he described as having turbines and steam lines covered with asbestos insulation). (*Id.* at 37, 42.) According to Morgan, this asbestos insulation would yield dusty conditions in both the boiler room and the engine room. (*Id.* at 49.) Morgan indicated that there were times when the asbestos insulation would be torn off the piping, causing considerable dust to be created. (Morgan Dep. III, at 99.) Also, Morgan identified some of the asbestos material covering the pipes as "formed asbestos pipe coverings" manufactured by Mundet, and testified that it "really makes dust when you break and tear it off." (*Id.* at 99-100.) This Mundet "form pipe covering" is "asbestos pipe that's cut in half. And then it'd fit right over your … piping. And you'd tie it down with a wire or some kind of metal strap. And then you'd put your sealant and woven asbestos material over it to finish it." (*Id.* at 196.)[4]

Mundet was not the only manufacturer of this form pipe covering that Morgan observed and worked with on Navy ships. In that regard, Morgan acknowledged that he had encountered form pipe covering from other manufacturers, such as Kaylo and Johns Manville. (Morgan Dep. IV, at 190-91, 193; Morgan Dep. III, at 99.) Morgan also conceded that once the form pipe covering had been removed from its packaging, he could not discern one company's product from another (*i.e.*, Morgan knew of no means of distinguishing Mundet pipe covering from that of other manufacturers). (Morgan Dep. IV, at 191-92.) There were no markings or writings on the product itself that would have identified its manufacturer. (*Id.* at 192.) Also, Morgan did not recall having ever seen Mundet pipe covering in its original packaging or any kind of container, sack or package that displayed the name Mundet. (*Id.* at 189, 194-95.) The physical description

---

take the form "Morgan Dep. II," those to the September 2 deposition will take the form "Morgan Dep. III," and those to the September 8 deposition will take the form "Morgan Dep. IV."

[4] Record evidence shows that the Mundet form pipe covering would release asbestos dust not only when it was cut and torn out, but even "just touching it … would cause dust. … [I]t would come off on your hands … kind of like a chalk." (*Id.* at 197.) "[I]f you just touched it, it would crumble and be dusty." (*Id.* at 190.) Morgan had occasion to touch the form pipe covering in the course of his duties, such as repairing lines or fixing or reinstalling broken insulation segments, resulting in the release of dust and debris from the Mundet product. (*Id.* at 197-98.)

that Morgan used for Mundet form pipe covering was, he admitted, equally applicable to all pipe covering that he had ever seen. (*Id.* at 190.)

From 1978 through 1992, Morgan worked at the Alabama River Pulp paper mill. (Morgan Dep. I, at 95-96.) He was present during the mill's construction in the late 1970s, and was working there when steam pipe insulation products containing asbestos were installed and applied. (*Id.* at 102.) Not surprisingly, Morgan testified that "there was a lot of pipe covering done in ARP." (Morgan Dep. III, at 198.) He indicated that it "looked the same" as Mundet form pipe covering. (*Id.* at 198-99.) That said, Morgan qualified his testimony by acknowledging that he did not know "which brand name" of pipe covering was actually used at Alabama River Pulp. (*Id.* at 198.)[5]

Unambiguous record testimony confirms that Morgan did not associate Mundet with any products other than form pipe covering and that he did not claim to have been exposed to any asbestos-containing Mundet product other than pipe covering. (Morgan Dep. IV, at 171.) Thus, plaintiff's claims against the Crown Defendants necessarily stand or fall on plaintiff's ability to make a showing that Morgan was exposed to asbestos from Mundet form pipe covering within the relevant limitations period.

## II. Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule

---

[5] Morgan later reaffirmed in his deposition that he did not know whether Mundet pipe covering had been used at Alabama River Pulp, or whether he had ever been exposed to Mundet products after 1978, as follows:

"Q: You also testified that you cannot identify the manufacturer or any name brands of any pipe covering that was at Alabama River Pulp; correct?
"A: Correct.
"Q: You stand by that?
"A: Yes.
"Q: Do you … have any personal knowledge of being exposed to any Mundet product after 1978?
   \*   \*   \*
"A: Not that I can remember, no."

(Morgan Dep. IV, at 195 (omitting objection as to form of last question).)

-4-

56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

**III.    Analysis.**

The Crown Defendants' Motion for Summary Judgment proceeds from the premise that plaintiff lacks evidence that Morgan has any timely claims of exposure to Mundet's asbestos-containing products to support liability under Alabama law. In analyzing this question, the Court considers the following categories of evidence in turn: (i) evidence of Morgan's exposure to Mundet form pipe coverings during his employment in the Navy and Coast Guard (spanning the time frame from 1950 through 1964); and (ii) evidence of Morgan's exposure to Mundet form pipe coverings at the Alabama River Pulp plant (spanning the time frame from 1978 through 1992). These are the only Mundet exposures alleged by plaintiff in his summary judgment filing.

   *A.    Morgan's Exposure to Mundet Products from 1950 through 1964.*

The parties' briefs devote considerable attention to evidence that Morgan encountered and worked directly with asbestos-containing Mundet insulation in the boiler rooms and engine rooms of vessels on which he served as a member of the armed forces during the 1950s and early 1960s. Plaintiff documents in some detail the condition of the product, the way it would create dust when broken or torn off the piping, and the way it would come off on Morgan's hands like

chalk when he worked around it. To the extent that plaintiff would predicate the Crown Defendants' liability on these exposures, however, his claims suffer from an insuperable legal defect. Under well-established, unambiguous Alabama law, any claims against the Crown Defendants for exposures to Mundet asbestos during the 1950-1964 time frame are time-barred by the applicable Alabama limitations period. *See* Ala. Code § 6-2-38(*l*) ("All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years.").[6]

Historically, Alabama applied a "last exposure rule" governing commencement of the limitations period for claims alleging personal injuries resulting from exposure to a harmful substance, regardless of when those injuries were manifested. *See Garrett v. Raytheon Co.*, 368 So.2d 516, 521 (Ala. 1979) ("[W]e hold that the statute of limitations … began to run when plaintiff was last exposed to radiation and plaintiff's ignorance of the tort or injury, there being no fraudulent concealment, does not postpone the running of the statute until the tort or injury is discovered.").

---

[6] Morgan's death on November 25, 2012 and his personal representative's prompt amendment of the pleadings to add a wrongful death claim within the § 6-2-38 period do not alter the timeliness analysis. To the contrary, Alabama law is clear that if Morgan's personal injury claims were untimely filed, then his personal representative cannot maintain a viable wrongful death cause of action arising from those personal injuries. *See* Ala. Code § 6-5-410(a) ("A personal representative may commence an action … for the wrongful act, omission, or negligence … whereby the death of the testator or intestate was caused, ***provided the testator or intestate could have commenced an action for the wrongful act, omission, or negligence if it had not caused death***.") (emphasis added). Stated differently, if Morgan's personal injury claims against the Crown Defendants for exposure to asbestos are time-barred, then so are the wrongful death claims relating to those injuries. *See, e.g., Henderson v. MeadWestvaco Corp.*, 23 So.3d 625, 630 (Ala. 2009) (affirming dismissal of asbestos-related wrongful death claim as time-barred under § 6-5-410(a), where decedent's personal injury claims for asbestos exposure accrued in 1972, such that at the time of his death, decedent could not have commenced an action for defendant's wrongful act, omission or negligence if it had not caused death); *In re Asbestos Products Liability Litigation (No. VI)*, 2011 WL 3273296, *3 (E.D. Pa. Apr. 15, 2011) (similar). Simply put, Alabama law leaves no doubt that "if a *decedent's* cause of action is time-barred at his or her death, then the decedent's personal representative cannot bring a wrongful death action." *Henderson*, 23 So.3d at 630 (citations omitted). As such, the crucial issue in the timeliness analysis is whether Morgan's personal injury claims related to asbestos exposure are timely. If they are not, then the later-filed wrongful death claim necessarily fails pursuant to § 6-5-410(a).

Shortly after *Garrett* was decided, the Alabama legislature stepped in to modify the judge-made accrual rule in the asbestos context, enacting the following provision: "A civil action for any injury … resulting from exposure to asbestos, including asbestos-containing products, shall be deemed to accrue on the first date the injured party, through reasonable diligence, should have reason to discover the injury giving rise to such civil action." Ala. Code § 6-2-30(b). This "discovery rule" for accrual of personal injury claims in asbestos cases took effect on May 19, 1980. The following year, the Alabama Supreme Court examined the retroactivity of § 6-2-30(b), and held that if, before the effective date of that provision, "one year had elapsed between the date of plaintiff's exposure and the date on which plaintiff's action was commenced, then that claim is nevertheless barred by the statute of limitations." *Tyson v. Johns-Manville Sales Corp.*, 399 So.2d 263, 267 (Ala. 1981). Subject to that important caveat, the *Tyson* Court expressly upheld § 6-2-30(b)'s establishment of "a discovery rule for the accrual of asbestos injury actions in Alabama." *Id.* at 272.

In the three decades since *Tyson* was decided, Alabama courts have consistently hewed to the principle that if a plaintiff's last exposure to a defendant's asbestos-containing product predated May 19, 1979, then the resulting personal injury claims were time-barred before § 6-2-30(b) was ever enacted and cannot be revived by operation of that statute. *See, e.g., Henderson v. MeadWestvaco Corp.*, 23 So.3d 625, 630 (Ala. 2009) (following *Tyson*'s determination that asbestos claims are time-barred if, as of May 19, 1980, one year had elapsed between the date of exposure and date of commencement of suit); *Johnson v. Garlock, Inc.*, 682 So.2d 25, 28 (Ala. 1996) (reaffirming principle that "§ 6-2-30 cannot apply retroactively to actions already barred by the statute of limitations as interpreted and applied in *Garrett*").[7]

---

[7] This bright-line rule has been repeatedly acknowledged by MDL courts applying Alabama law in asbestos cases. *See, e.g., Holland v. Armstrong Int'l, Inc.*, 2012 WL 7761487, *1 n.1 (E.D. Pa. Nov. 30, 2012) ("[T]he applicable Alabama statute of limitations bars claims arising from asbestos exposure occurring prior to May 19, 1979. Therefore, these claims are[] barred."); *Legg v. Armstrong Int'l, Inc.*, 2012 WL 7761488, *1 n.1 (E.D. Pa. Nov. 30, 2012) (same); *In re Asbestos*, 2011 WL 3273296, at *3 ("Based on the tenets of *Henderson* and *Tyson*, Mr. Corley's claim of personal injury resulting from asbestos against the moving defendants … would have accrued in 1973, on the date of his last exposure to asbestos in the U.S. Navy. Based on the one-year statute of limitations applicable to personal injury claims in effect at the time of accrual …, his claim was barred in 1974.").

The net result, then, is that Alabama has different rules for accrual of personal injury actions relating to asbestos exposure, depending on whether the last exposure occurred prior to May 19, 1979 (in which case the *Garrett* "last exposure rule" governs) or whether the last exposure occurred thereafter (in which case the § 6-2-30(b) "discovery rule" applies).[8] *See In re Asbestos Products Liability Litigation (No. VI)*, 2011 WL 3240827, *2 (E.D. Pa. July 29, 2011) ("Under Alabama law, all claims for pre–1979 exposure to asbestos must be filed within one year of the last date of exposure. For any exposure to asbestos after May 17, 1980, the claim accrues upon discovery of an asbestos-related disease.").

As the foregoing discussion demonstrates, any claims relating to Morgan's exposure to Mundet's asbestos-containing products during the 1950 - 1964 time period are time-barred by straightforward application of black-letter Alabama law, as set forth in *Tyson* and its progeny. *See, e.g., Henderson*, 23 So.3d at 630 ("Tony Henderson's claim of personal injury resulting from exposure to asbestos would have accrued in 1972, on the date of his last exposure to asbestos at CAPCO. Based on the one-year statute of limitations applicable to personal injury claims at the time …, his claim was time-barred in 1973.").

Under Alabama law, Morgan's claims of personal injury resulting from exposure to Mundet's asbestos-containing form pipe covering during his employment in the U.S. Navy would have accrued in 1954, when he was last exposed to Mundet products there. Likewise, any claims of personal injury concerning exposure to Mundet pipe covering during his service in the Coast Guard would have accrued in 1964. Based on the one-year statute of limitations applicable at the time, Morgan's claims for these exposures would have become time-barred in

---

[8] In 2008, the Alabama Supreme Court overruled *Garrett* and jettisoned the last-exposure rule in all toxic substance exposure cases (§ 6-2-30(b) having been confined on its face to the asbestos context), in favor of a discovery rule under which "a cause of action accrues only when there has occurred a *manifest*, present injury." *Griffin v. Unocal Corp.*, 990 So.2d 291, 293 (Ala. 2008) (citation omitted). Nonetheless, the *Griffin* Court declined to give its holding broad retroactive effect, declaring instead that "the new accrual rule of toxic-substance-exposure cases will be applied prospectively, except in this case, where it will apply retroactively." *Id.*; *see also Jerkins v. Lincoln Elec. Co.*, 103 So.3d 1, 5 (Ala. 2011) (explaining that *Griffin*'s holding "would apply prospectively only, that is, only to those persons whose last exposure to a toxic substance, and first manifest injury resulting from that exposure, occurred within the two-year period before this Court released its opinion in *Griffin*"). The non-retroactivity of the *Griffin* rule means that it has no application to Morgan's claims for pre-1979 exposure, which accrued under the old *Garrett* rule decades before *Griffin* was decided.

1955 and 1965, respectively, several decades before he sued the Crown Defendants. By operation of the *Tyson* line of Alabama Supreme Court decisions, those time-barred claims were not revived, revitalized or resuscitated by the Alabama legislature's subsequent enactment of § 6-2-30(b). Plaintiff has offered no persuasive argument or authority that might allow these claims for pre-1979 exposure to asbestos-containing products manufactured by Mundet to be deemed timely under Alabama law; therefore, the Crown Defendants' Motion for Summary Judgment will be **granted** insofar as it relates to those pre-1979 events and exposures during Morgan's military service in the Navy and Coast Guard.[9]

### B. *Morgan's Exposure to Mundet Asbestos at Alabama River Pulp.*

"Under Alabama law, when a plaintiff shows post-1979 exposure to asbestos, his or her action does not 'accrue' until the individual knew or should have known of an asbestos-related disease." *In re Asbestos*, 2011 WL 3240827, at *3. To avail himself of this more lenient discovery rule, the plaintiff must satisfy the condition precedent of showing post-1979 exposure to the defendant's products containing asbestos.[10] Plaintiff has not done so. There is no evidence that form pipe covering manufactured by Mundet (or any other Mundet asbestos

---

[9] To be sure, plaintiff's response brief urges the Court to apply *Griffin* retroactively (even though the Alabama Supreme Court has steadfastly declined to do so). Plaintiff also filed a separate memorandum of law advocating that "[t]he Alabama Supreme Court should revisit the holding in *Griffin*" and "call[ing] for a re-examination of *Griffin* and the ruling authorizing prospective-only application" of the discovery rule for accrual of toxic tort claims. (Doc. 321, at 18, 21.) Of course, federal courts applying Alabama law must adhere to the clear pronouncements of the Alabama Supreme Court, and do not have the luxury of "revisiting" those holdings or interpreting Alabama law in a manner that deviates from them. *See, e.g., Pietri v. Florida Dep't of Corrections*, 641 F.3d 1276, 1284 (11th Cir. 2011) ("A state supreme court's interpretation of its law is binding on federal courts."); *World Harvest Church, Inc. v. Guideone Mut. Ins. Co.*, 586 F.3d 950, 957 (11th Cir. 2009) ("When we address issues of state law, like the ones in this case, we are bound by the decisions of the state supreme court."). The unbroken line of Alabama Supreme Court decisions running from *Tyson* to *Johnson* to *Griffin* to *Henderson* to *Jerkins* leaves no doubt that, under Alabama law, the last exposure rule continues to govern accrual of personal injury claims for asbestos exposures predating May 19, 1979; therefore, this Court must follow that rule.

[10] This proof requirement may be satisfied by circumstantial evidence. *See, e.g., Turner v. Azalea Box Co.*, 508 So.2d 253, 254 (Ala. 1987) (affirming principle that "circumstantial evidence may be used to prove identity" of the manufacturer of a defective product).

products) were in use at the Alabama River Pulp mill where Morgan worked from 1978 through 1992.

In an effort to provide such evidence and overcome the Crown Defendants' Rule 56 Motion, plaintiff points to Morgan's testimony that pipe covering at Alabama River Pulp "looked like Mundet" and was used in the same manner as Mundet's product. (Morgan Dep. III, at 198-99.) The trouble with this line of proof is that Morgan also admitted that all asbestos pipe covering looked the same, that there were several other manufacturers of asbestos pipe covering, that he did not remember which brand or brands were in use at Alabama River Pulp, that he could not identify the manufacturer or brand name of any pipe covering at Alabama River Pulp, and that he did not have personal knowledge of being exposed to any Mundet product after 1978. In short, Morgan's testimony is that Alabama River Pulp used asbestos pipe covering, but it could have been manufactured by Mundet or Kaylo or Johns-Manville or somebody else. Morgan simply did not know. And Morgan's testimony is all plaintiff offers on this product identification/causation question.

That is not good enough. Under applicable law, much more is required to show liability in an asbestos case than the mere possibility that a defendant's products may have been in use in the plaintiff's workspace. *See, e.g., Sheffield v. Owens-Corning Fiberglass Corp.*, 595 So.2d 443, 451 (Ala. 1992) (in asbestos case, "the parties bearing the burden of proof on the issue of causation must, at a minimum, demonstrate that an asbestos product manufactured by [the defendant] was aboard a ship on which each plaintiff served at the times relevant to that service").[11] In *Sheffield*, for example, the Alabama Supreme Court affirmed the grant of

---

[11] *See also Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir. 1990) ("the issue is whether a reasonable jury could conclude in this case by a preponderance of the evidence presented, that Mr. Hoffman was exposed to Armstrong's asbestos products, and that the exposure was a proximate cause of his injury"); *Lee v. Celotex Corp.*, 764 F.2d 1489, 1490 (11th Cir. 1985) ("[A]s a threshold to pursuing the lawsuit against a particular defendant, the plaintiff must produce sufficient evidence to support a finding that plaintiff was directly exposed to that defendant's asbestos-containing products."); *Blackston v. Shook and Fletcher Insulation Co.*, 764 F.2d 1480, 1483 (11th Cir. 1985) ("Reasons behind the requirement that plaintiffs prove exposure to a particular defendant's products in order to establish proximate cause are well-stated in cases refusing to impose market-share or industry-wide liability upon asbestos manufacturers."). This principle has also been applied more generally by Alabama courts in products liability cases where there is no evidence as to which of various manufacturers actually produced the allegedly defective product. *See Turner*, 508 So.2d at 254 ("[T]here were three, and possibly four, sources (Continued)

summary judgment to the manufacturer of Kaylo (coincidentally, another brand of asbestos form pipe covering), when the plaintiff's evidence created "nothing more than a 'mere possibility'" that Kaylo was [present in plaintiff's workplace], and, consequently, that it was a cause-in-fact of the alleged injuries." *Id.* at 451. Plaintiff's evidence equally supports the conclusion that the asbestos-containing pipe covering at Alabama River Pulp was manufactured by Mundet, or Kaylo, or Johns-Manville, or some other company. Plaintiff's evidence provides no factual basis for a finder of fact to sort through or select among these various possibilities; thus, on this record, the only way a jury could find that Mundet supplied the pipe covering to which Morgan was exposed would be via speculation, conjecture or guesswork.

Of course, "[s]peculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted); *see also Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("A 'mere scintilla' of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment."). Simply put, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citation omitted). This record, taken as a whole, could not lead a rational trier of fact to find that Morgan was ever exposed to Mundet asbestos-containing products after May 19, 1979. In other words, no reasonable jury could conclude from this evidence that Morgan's illness and death were caused by asbestos exposure that (i) was attributable to Mundet and (ii) occurred after the effective date of the discovery rule of accrual fashioned by § 6-2-30(b).[12] Accordingly, the Crown Defendants are entitled to summary judgment on grounds that the record lacks sufficient evidence of product identification

---

from which the wooden pallet in question could have come. … [T]o use this evidence to support Turner's contention that Azalea Box supplied the pallet in question to the exclusion of other sources is to engage in speculation and conjecture.").

[12] To be sure, plaintiff may well have evidence that Morgan was exposed to asbestos-containing products manufactured by other defendants after May 19, 1979. As discussed *supra*, however, applicable law imposes on plaintiff the burden of proving exposure to each particular defendant's products, not just proving exposure to asbestos in general.

/ causation within the applicable limitations period. *See Lee v. Celotex Corp.*, 764 F.2d 1489, 1491 (11th Cir. 1985) (defendant entitled to summary judgment where "[t]he allegation that plaintiff was exposed to defendant's asbestos-containing product is not supported by reasonable inferences arising from the undisputed facts, but is based on speculation and conjecture that renders them mere guesses or possibilities").

**IV.     Conclusion.**

For all of the foregoing reasons, the Court finds that there are no genuine issues of material fact, and that movant is entitled to judgment as a matter of law. The Motion for Summary Judgment (doc. 273) filed by defendants Crown Cork & Seal Company, Inc. and Crown Holdings, Inc. is **granted**, and plaintiff's claims against those defendants are **dismissed with prejudice**. The Clerk of Court is directed to **terminate** Crown Cork & Seal and Crown Holdings as parties defendant.

DONE and ORDERED this 30th day of August, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE