IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RONALD MELVIN MORGAN, as Personal Representative for the Estate of Rueben Morgan, )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BILL VANN COMPANY, INC., *et al.*, )<br>)<br>Defendants. ) | CIVIL ACTION 11-0535-WS-B |

## ORDER

This matter comes before the Court on defendant John Crane, Inc.'s Motion for Summary Judgment (doc. 271). The Motion has been briefed and is ripe for disposition.[1]

**I.     Relevant Background.**

This is an asbestos action pending against 11 defendants,[2] alleging various state-law tort claims and a wrongful death cause of action based on the alleged exposure of plaintiff's decedent, Rueben Morgan, to asbestos-containing products at various times and locations. Morgan was diagnosed with malignant mesothelioma (a disease commonly linked to asbestos exposure) in or about February 2011. (Doc. 199, at Exh. A.) He died on or about November 5, 2012, at the age of 79. (Doc. 206, at Exh. A.)

---

[1] John Crane requested oral argument on its Motion. The Local Rules authorize such requests, but also provide that "the court may in its discretion rule on any motion without oral argument." LR 7.3. After careful review of the parties' briefs and exhibits, the undersigned finds that oral argument is unlikely to be beneficial in resolving the issues raised on summary judgment. Accordingly, the request for oral argument is **denied**.

[2] Initially, there were numerous other named defendants; however, the ranks of defendants have dwindled as a result of settlements and voluntary dismissals. All 11 remaining defendants have pending, ripe summary judgment motions that have been taken under submission.

On May 4, 2011, less than three months after his diagnosis, Morgan initiated this litigation against 42 named defendants (including John Crane). Morgan's pleadings alleged that he "was exposed to asbestos dust, asbestos particles, asbestos containing materials and products that were produced, manufactured, specified for use, installed, distributed, sold and/or placed into the stream of commerce by the producer and/or distributor Defendants during his employment as a machinist, engine room worker, and mechanic," as a result of which he was "diagnosed with an asbestos related disease." (Doc. 1, Exh. A-2, at 6.) On July 29, 2011, Morgan amended his Complaint to name certain additional defendants. (Doc. 4, Exh. B, at 1.)

Record facts concerning Morgan's interactions with John Crane, Inc. ("John Crane") products are as follows:[3] Morgan was employed as a machinist by the U.S. Coast Guard during the period of 1959 to 1964. (Morgan Dep. I, at 64-65, 72; doc. 271-2, Exh. B, at 2.)[4] Morgan's Coast Guard service included substantial periods of time when he was stationed on vessels called the *Mendota* and the *Mistletoe*. (Morgan Dep. I, at 65-67, 73.) Morgan worked in the vessels' engine rooms, where his duties included working with asbestos-containing packing and gaskets as he maintained various valves and pumps. (*Id.* at 68-70.) During this period of time that Morgan worked in the Coast Guard, he encountered a John Crane product called "John Crane Super-Seal," which he described as "a popular packing from the Navy" and "a good asbestos packet." (Morgan Dep. III, at 67.) Morgan used this John Crane asbestos packing on the

---

[3] The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Plaintiff's evidence is taken as true and all justifiable inferences are drawn in his favor. Federal courts cannot weigh credibility at the summary judgment stage. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices."). Thus, the Court will "make no credibility determinations or choose between conflicting testimony, but instead accept Plaintiff's version of the facts drawing all justifiable inferences in Plaintiff's favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

[4] Morgan's deposition was taken multiple times in this case, including discovery depositions taken on August 16, 2011 and August 25, 2011, and trial depositions taken on September 2 and 8, 2011. For purposes of this Order, citations to Morgan's August 16 deposition will take the form "Morgan Dep. I," while citations to the August 25 deposition will take the form "Morgan Dep. II," those to the September 2 deposition will take the form "Morgan Dep. III," and those to the September 8 deposition will take the form "Morgan Dep. IV."

following occasions: during his Coast Guard assignments on the *Mendota* and the *Mistletoe* until 1964; when he worked at a civilian shipyard in Norfolk, Virginia from 1965 through 1967; and when he worked at the Cleveland machine shop in Cleveland, Tennessee from 1974 through 1978. (*Id.* at 76-77; Morgan Dep. I, at 78, 93-95; doc. 271-2, Exh. B at 2-3.)

From 1978 through 1992, Morgan worked at the Alabama River Pulp paper mill. (Morgan Dep. I, at 95-96.) For approximately his first year at Alabama River Pulp, Morgan worked as a machinist. (Morgan Dep. IV, at 123-24.) On August 1, 1979, he was promoted to the position of foreman of the paper mill's machine shop, after which he no longer did "hands-on" maintenance work, but closely supervised others. (*Id.* at 124.) Morgan also set up and supervised the pump shop at Alabama River Pulp. (Morgan Dep. I, at 99; Morgan Dep. III, at 74.)[5] Morgan saw John Crane packing being used at Alabama River Pulp several times per month from 1978 through 1992. (Morgan Dep. III, at 77-78.) Indeed, during his employment at Alabama River Pulp, Morgan worked around John Crane packing "no less than once or twice a month … the whole time that [he] was working." (*Id.* at 74.) Morgan testified that Alabama River Pulp pump shop employees "were still using this John Crane Super-Seal packing when [he] left in '92." (*Id.* at 74-75.)

According to Morgan, the John Crane packing was "braided asbestos with wire in it. … [A]ll it was was asbestos and … something to hold it together. … It was a good, good packing. It would last good, work good." (Morgan Dep. III, at 69.) Substantial summary judgment evidence corroborates Morgan's testimony that the John Crane packing contained asbestos, at least until John Crane discontinued use of that substance in the manufacturing process in 1985.[6]

---

[5] Notwithstanding Morgan's supervisory responsibilities in the machine shop and pump shop, he was not involved in ordering or purchasing gaskets and packing for the Alabama River Pulp mill. (Morgan Dep. I, at 100; Morgan Dep. IV, at 126.)

[6] John Crane has generally described its business as being that it "manufactures engineered sealing products, some which contained asbestos but which encapsulated the fibers in lubricants, binders and adhesives so as to prevent their release in normal use and installation." (Doc. 315, Exh. F, at 1.) The record also includes a John Crane representative's testimony that the company's "Super Seal" products "were made with a braided asbestos jacket." (Doc. 315, Exh. G, at 8214.) That same John Crane representative further testified that John Crane stopped using asbestos in the manufacture of Super Seal packing material in July 1985. (Doc. 315, Exh. H, at 6289.)

Plaintiff's evidence is that Morgan knew that the asbestos packing material in question was made by John Crane because it was packaged in a distinctive large tin can or box. (*Id.*; Morgan Dep. IV, at 127-28.) John Crane packing "was stocked in the pump shop" at Alabama River Pulp, and the mill used those products through the time of Morgan's retirement in 1992. (Morgan Dep. IV, at 128.)

There is substantial record evidence documenting how asbestos dust was created when Alabama River Pulp machinists replaced John Crane Super-Seal packing materials on pumps and valves. When the old packing was removed, "it would brittle and … come apart in … little pieces." (Morgan Dep. III, at 70.) The old packing had to be dug out of the "stuffing box" and "it would come apart" during that process, after which the stuffing box would have to be cleaned. (*Id.* at 71.) The new packing would then have to be cut to measurements for the particular pump or valve. (*Id.*) Such removal, tearing and cutting of the asbestos packing would create "a good bit of dust because you'd have to clean up the stuffing box … and it would be quite dusty." (*Id.* at 72.) Alabama River Pulp machinists would clean the stuffing box with an air hose, broom or foxtail brush, causing the dust to go airborne and employees to breathe it in whenever they worked with the product. (*Id.*) When the John Crane asbestos packing product was replaced in this manner at Alabama River Pulp, it created dust that Morgan both saw and breathed every time his subordinates worked with the product. (*Id.* at 72, 78.)

To be clear, Morgan did not personally perform the tasks of replacing asbestos packing with John Crane Super-Seal products at Alabama River Pulp after 1979. Again, after Morgan became foreman on August 1, 1979, he ceased performing such hands-on work, but instead supervised other Alabama River Pulp workers in the machine shop and pump shop. (Morgan Dep. II, at 162-63; Morgan Dep. IV, at 124, 129.) Alabama River Pulp mechanics and millwrights whom Morgan supervised (as opposed to Morgan himself) actually performed the hands-on work of opening and repacking valves, replacing gaskets and so on. (Morgan Dep. II, at 162.) Morgan never personally installed or removed John Crane packing from any pump or valve at Alabama River Pulp. (*Id.* at 365-66.)

That said, Morgan was present when the work was being performed and he monitored the pumps and valves closely, because "whatever was being done to them, I wanted to know what it was. I wanted to know what kind of condition they were when they come in, plus, you know, see it. … [A] lot of times I put my hands on it just to feel it. And the same thing with the

machine work." (Morgan Dep. III, at 231.)[7] Also, Morgan would be present in the machine shop and pump shop at the end of each day, when the crews would clean the equipment using air hoses and sweep the accumulated dust off the floor, creating airborne dust from the day's activities (which would of course include dust from any John Crane asbestos-containing products that had been installed or removed). (*Id.* at 232.) Morgan was in sufficiently close proximity to the workers performing the installation, removal and clean-up tasks that, as he put it, "I've got to breathe about as much dust and dirt as [the hands-on workers] did." (Morgan Dep. II, at 165.)

Morgan testified that the last time he saw or used a John Crane product was in 1992 when he retired from Alabama River Pulp. (Morgan Dep. III, at 67.)

## II. Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual

---

[7] Elsewhere, Morgan elaborated that in the machine shop, "I was there every day and seen what was done and particularly in the tearing down and making sure it's cleaned up right when it went back together." (Morgan Dep. II, at 163.) Similarly, in the pump shop, when the work was being done, Morgan testified, "I got these eyeballs down there and I run these fingers around things" in his supervisory capacity. (*Id.* at 165.) He explained as follows: "I was there when the … man would be installing it, taking the old packing out. And from time to time … every job, you know, supervising, seeing what was done." (Morgan Dep. IV, at 129.)

determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

**III.   Analysis.**

John Crane's Motion for Summary Judgment proceeds from the premise that "plaintiff has failed to meet his burden of showing that he was actually exposed to any respirable asbestos from a John Crane product after May 19, 1979, and therefore, his claims against John Crane are time-barred." (Doc. 271-1, at 5.) Reasonable inferences from the summary judgment record, taken in the light most favorable to the plaintiff, refute this argument, at least under Rule 56 scrutiny.

Contrary to movant's position, the record contains considerable evidence from which a reasonable finder of fact could conclude that Morgan was actually exposed to respirable asbestos from a John Crane product after 1979. In that regard, plaintiff's evidence shows that Morgan worked at Alabama River Pulp from 1978 to 1992, that Alabama River Pulp routinely used John Crane asbestos packing in the pump shop after 1979 and continued to utilize it until Morgan retired in 1992 (although John Crane stopped using asbestos in the product after 1985), that Morgan worked in the Alabama River Pulp pump shop supervising workers who installed and removed packing on pumps and valves, that such work produced considerable amounts of asbestos dust both during the removal / installation processes and at the end-of-day cleanup, that Morgan was in close physical proximity to his subordinates performing this work (often touching and seeing the valves and pumps while the work was being done), and that Morgan breathed in dust created by these processes, just as the machinists did. Such testimony plainly constitutes substantial evidence that Morgan was exposed to asbestos-containing products manufactured by John Crane.

In response, John Crane insists that plaintiff's showing is lacking because "Morgan testified that he could not recall a single time in which he installed or removed John Crane gaskets or packing after he went to work at ARP in 1978." (Doc. 353, at 2.) Movant's characterization of Morgan's testimony is accurate, but its legal conclusion is not. John Crane cites no authority for the proposition that exposure to a defendant's asbestos-containing products does not count for causation or liability purposes unless the plaintiff physically handled such products himself. The Court is aware of none; to the contrary, extensive authorities from many jurisdictions undercut the crabbed definition of "exposure" championed by John Crane. *See,*

*e.g., Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1481 (11th Cir. 1985) (holding that plaintiff must "show that he was exposed to defendant's asbestos-containing product by working with *or in close proximity to* the product") (emphasis added).[8] Contrary to John Crane's position, the touchstone of a causation analysis in the asbestos context is not whether the plaintiff actually touched the defendant's asbestos-containing products, but whether he was working in sufficiently close proximity to the release of asbestos dust and/or fibers from such products that it is reasonably likely he inhaled same.[9] In this case, Morgan's deposition testimony satisfies that threshold by a wide margin.

Faced with plaintiff's persuasive, well-supported "close proximity" argument, John Crane's only rejoinder is that plaintiff is relying on "nothing more than conjecture" because "Mr.

---

[8] *See also Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir. 1990) (finding genuine issue of material fact in asbestos exposure case where plaintiff's evidence was that defendant's asbestos-containing products "were in use 300 to 400 feet away from" plaintiff); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 992 (8th Cir. 1998) (to show proximate causation, plaintiff must show exposure to defendant's asbestos-containing product "in proximity to where the plaintiff actually worked"); *Tragarz v. Keene Corp.*, 980 F.2d 411, 418 (7th Cir. 1992) (plaintiff in asbestos case can make sufficient showing of exposure by testifying "that he or she worked with or in proximity to the defendant's asbestos containing products"); *Slaughter v. Southern Talc Co.*, 949 F.2d 167, 171 (5th Cir. 1991) ("A plaintiff must prove that, more probably than not, he actually breathed asbestos fibers originating in defendants' products. This proof can be made by showing that plaintiff frequently and regularly worked in proximity to defendants' products such that it is likely that plaintiffs inhaled defendants' asbestos fibers."); *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1162-63 (4th Cir. 1986) (causation in asbestos case requires "evidence of exposure to a specific product … in proximity to where the plaintiff actually worked"); *Sheffield v. Owens-Corning Fiberglass Corp.*, 595 So.2d 443, 455 (Ala. 1992) ("The tendency of asbestos dust to … creat[e] a secondary exposure hazard to bystanders … not working directly with the material, has been generally recognized.").

[9] In so concluding, the Court expresses no opinion as to the viability of the "fiber drift theory" about which plaintiff and many defendants spar in their summary judgment filings. Again, plaintiff's evidence is that Morgan worked in the same pump room where asbestos dust from John Crane products was being generated, sometimes as close as arm's length to the John Crane products in question, and that Morgan could see the dust as he breathed it in. As to John Crane, this is simply not a case in which asbestos fibers released on the other side of a large factory or paper mill are alleged to have drifted in the air across the plant to Morgan's location; rather, the John Crane asbestos dust was created in the immediate physical vicinity of where Morgan was working. *Cf. Blackston*, 764 F.2d at 1481 (rejecting notion that plaintiff can show that he "was exposed to the asbestos in a defendant's products by simply showing that he worked at a job site at a time when the defendant's asbestos-containing products were used").

Morgan testified that it was impossible to identify the brand or manufacturer of old gaskets or packing when they were removed." (Doc. 353, at 4.) Here again, John Crane ignores plaintiff's substantial evidence that John Crane asbestos-containing gaskets and packing were in use at Alabama River Pulp throughout Morgan's employment there. John Crane likewise disregards Morgan's testimony that his crews in the pump room were installing and changing out John Crane packing materials on pumps and valves several times per month, and that he knew such products were from John Crane because he recognized the packaging (*i.e.*, John Crane packing came in a "tin can about yay round and that high") and saw such John Crane products stocked at the pump shop until his retirement from Alabama River Pulp in 1992. (Morgan Dep. IV, at 127-28.) This testimony does not conflict with Morgan's testimony that the brands of old gaskets or packing could not be discerned when they were removed from pumps and valves. Even though the packing material itself was not labeled "John Crane," Morgan knew that new asbestos packing from John Crane was being installed in Alabama River Pulp pumps because he saw the tin in which it came. If John Crane asbestos was being installed on Alabama River Pulp pumps during Morgan's employment there, then common sense says that it also was being removed from such pumps when replacement became necessary. Certainly, this qualifies as circumstantial evidence that John Crane asbestos-containing packing was in fact being used at Alabama River Pulp well past 1979, so as to create a genuine issue of material fact.[10]

This same evidence and reasoning defeats John Crane's limitations argument. Under Alabama law, there are different rules for accrual of personal injury actions relating to asbestos exposure, depending on whether the last exposure occurred prior to May 19, 1979 or thereafter. *See In re Asbestos Products Liability Litigation (No. VI)*, 2011 WL 3240827, *2 (E.D. Pa. July 29, 2011) ("Under Alabama law, all claims for pre–1979 exposure to asbestos must be filed within one year of the last date of exposure. For any exposure to asbestos after May 17, 1980, the claim accrues upon discovery of an asbestos-related disease."). Here, as addressed *supra*, plaintiff has come forward with substantial evidence that he was exposed to airborne asbestos dust emanating from John Crane products well into the 1980s. For that reason, his claims against

---

[10] Under Alabama law, proof of causation in products liability cases may take the form of circumstantial evidence. *See, e.g., Turner v. Azalea Box Co.*, 508 So.2d 253, 254 (Ala. 1987) (affirming principle that "circumstantial evidence may be used to prove identity" of the manufacturer of a defective product).

John Crane accrued under the "discovery rule" articulated by the Alabama legislature as follows: "A civil action for any injury … resulting from exposure to asbestos, including asbestos-containing products, shall be deemed to accrue on the first date the injured party, through reasonable diligence, should have reason to discover the injury giving rise to such civil action." Ala. Code § 6-2-30(b). Plaintiff's evidence is that Morgan discovered his injury when he was diagnosed with malignant mesothelioma in February 2011. He filed suit against John Crane less than three months later, or well within the two-year limitations period created by Alabama Code § 6-2-38(*l*). Plaintiff's evidence, accepted as true, demonstrates that his claims against John Crane are not time-barred because he was exposed to asbestos-containing products from John Crane after the May 1980 effective date for Alabama's new "discovery rule," and he sued John Crane well within the statutory time period after his claim accrued.

## IV. Conclusion.

For all of the foregoing reasons, the Court finds that there are substantial genuine issues of material fact as to plaintiff's claims against defendant John Crane. Accordingly, John Crane, Inc.'s Motion for Summary Judgment (doc. 271) is **denied**.

DONE and ORDERED this 30th day of August, 2013.

    s/ WILLIAM H. STEELE
    CHIEF UNITED STATES DISTRICT JUDGE