IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| RONALD MELVIN MORGAN, ) | |
| as Personal Representative for the Estate ) | |
| of Rueben Morgan, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 11-0535-WS-B |
| ) | |
| BILL VANN COMPANY, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

This matter comes before the Court on the Motion for Summary Judgment (doc. 269) filed by defendant Honeywell International Inc. The Motion has been briefed and is ripe for disposition.[1]

**I.      Relevant Background.**

This is an asbestos action pending against 11 defendants,[2] alleging various state-law tort claims and a wrongful death cause of action based on the alleged exposure of plaintiff's decedent, Rueben Morgan, to asbestos-containing products at various times and locations. Morgan was diagnosed with malignant mesothelioma (a disease commonly linked to asbestos exposure) in or about February 2011. (Doc. 199, at Exh. A.) He died on or about November 5, 2012, at the age of 79. (Doc. 206, at Exh. A.)

---

[1]      Honeywell requested oral argument on its Motion. The Local Rules authorize such requests, but also provide that "the court may in its discretion rule on any motion without oral argument." LR 7.3. After careful review of the parties' briefs and exhibits, the undersigned finds that oral argument is unlikely to be beneficial in resolving the issues raised on summary judgment. Accordingly, the request for oral argument is **denied**.

[2]      Initially, there were numerous other named defendants; however, the ranks of defendants have dwindled as a result of settlements and voluntary dismissals. All 11 remaining defendants have pending, ripe summary judgment motions that have been taken under submission.

On May 4, 2011, less than three months after his diagnosis, Morgan initiated this litigation against 42 named defendants (including Honeywell International Inc.). Morgan's pleadings alleged that he "was exposed to asbestos dust, asbestos particles, asbestos containing materials and products that were produced, manufactured, specified for use, installed, distributed, sold and/or placed into the stream of commerce by the producer and/or distributor Defendants during his employment as a machinist, engine room worker, and mechanic," as a result of which he was "diagnosed with an asbestos related disease." (Doc. 1, Exh. A-2, at 6.) On July 29, 2011, Morgan amended his Complaint to name certain additional defendants. (Doc. 4, Exh. B, at 1.)

Plaintiff's claims against Honeywell International Inc. ("Honeywell") proceed from the theory that Honeywell is the "successor in interest to Allied Chemical Inc., f/k/a Bendix Corporation," and that Morgan was exposed to asbestos-containing products manufactured by Bendix. (*See* doc. 1, Exh. A-2, at 8 ¶ 34.) For purposes of summary judgment, Honeywell does not dispute that it is a successor-in-interest to Bendix, nor does it litigate at this time the question of whether successor liability may be imputed to it under Alabama law. Accordingly, the Court assumes (without deciding) for purposes of this Order that (i) Honeywell is a successor-in-interest to Bendix, and (ii) Alabama law would authorize successor liability for Honeywell if plaintiff has brought timely claims against it for exposure to Bendix's asbestos-containing products.

Record facts concerning Morgan's interactions with Bendix products are as follows:[3] Morgan worked part-time at a service station called Homer's Tire & Supply Company in Cleveland, Tennessee from 1956 to 1958. (Morgan Dep. I, at 57; doc. 269, Exh. A, at 2.)[4] That

---

[3] The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Plaintiff's evidence is taken as true and all justifiable inferences are drawn in his favor. Federal courts cannot weigh credibility at the summary judgment stage. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices."). Thus, the Court will "make no credibility determinations or choose between conflicting testimony, but instead accept Plaintiff's version of the facts drawing all justifiable inferences in Plaintiff's favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

[4] Morgan's deposition was taken multiple times in this case, including discovery depositions taken on August 16, 2011 and August 25, 2011, and trial depositions taken on (Continued)

business performed minor automotive repairs, tune-ups, and so on for its customers. (Morgan Dep. I, at 58.) During his employment at Homer's, Morgan did "a good many brake relining jobs," and specifically recalled installing Bendix drum brakes. (*Id.* at 58-59.) According to Morgan, Bendix had a plant in Cleveland, Tennessee that manufactured brake shoes. (*Id.*)[5] Morgan believed that the Bendix product contained asbestos because "it was on the package that it was asbestos. And if not, then the people I worked around had told me that's … what it was." (Morgan Dep. III, at 208.)

      The record in the light most favorable to plaintiff reflects that the installation of drum brakes created dust in multiple ways. First, Morgan testified that when the drum was removed, asbestos dust from the brake lining that had accumulated in that area would be blown out with an air hose. (Morgan Dep. I, at 59-60.) Second, before new brake shoes were installed, Morgan would place them on a Bendix machine to cut the shoes and create an angle or bevel, which would release dust into the air that he would then breathe because he was "right there in front of it." (Morgan Dep. III, at 205-07.)

      After he left Homer's in 1958, Morgan never again held a job that involved automotive brake maintenance, repair or replacement. (Morgan Dep. I, at 61.) That said, Morgan regularly performed brake service on his family's vehicles for roughly 30 years, up until approximately two years before his August 2011 deposition. (*Id.* at 114-16; Morgan Dep. III, at 207.) Morgan testified that he did not "even look at the brand name anymore" when he purchased new brakes, but instead looked for "the best brake at the cheapest price." (Morgan Dep. I, at 115-16.) In that regard, he agreed with defense counsel that "[i]t might be Bendix, it might be somebody else." (*Id.* at 116.) Other testimony from Morgan strongly corroborates this sentiment. When asked

---

September 2 and 8, 2011. For purposes of this Order, citations to Morgan's August 16 deposition will take the form "Morgan Dep. I," while citations to the August 25 deposition will take the form "Morgan Dep. II," those to the September 2 deposition will take the form "Morgan Dep. III," and those to the September 8 deposition will take the form "Morgan Dep. IV."

      [5]      The existence of that nearby Bendix plant is why Morgan recalled that the brakes were Bendix products. Indeed, he testified that he knew Homer's Tire & Supply Company had used Bendix brake shoes and linings during his employment because "that was one of the local jobs. … They had a plant there that … made those shoes and linings." (Morgan Dep. III, at 202-03.)

when he had last handled a Bendix brake product, Morgan responded, "To know that it was Bendix, probably – probably in '58 when I left Cleveland.  And what I've done since, I don't – I don't remember the brand name."  (Morgan Dep. III, at 203.)  And when asked whether he remembered "any specific brake products by brand or manufacturer's name up into the '70s or '80s," Morgan testified, "Not really."  (Morgan Dep. IV, at 130.)

Plaintiff does not identify any other Bendix or Honeywell products containing asbestos to which Morgan was exposed and which form a basis of his claims against Honeywell in this action.  Accordingly, Honeywell's summary judgment motion must be evaluated solely on the strength of plaintiff's evidence concerning Bendix brake products.  What this means is that plaintiff's claims against Honeywell necessarily stand or fall on plaintiff's ability to show that Morgan was exposed to asbestos from Bendix brake shoes and/or linings within the relevant limitations period.

## II. Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed.R.Civ.P.  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact.  *Id.*  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment."  *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted).  "Summary judgment is justified only for those cases devoid of any need for factual determinations."  *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

**III.     Analysis.**

Honeywell's Motion for Summary Judgment proceeds from the premise that "Plaintiff has failed to meet his burden of showing that he was actually exposed to any respirable asbestos from any Bendix product, much less that he was exposed to asbestos from a Bendix product after May 19, 1979." (Doc. 269-1, at 2.)  In analyzing the Motion, the Court considers the following categories of evidence in turn:  (i) evidence of Morgan's exposure to Bendix brake shoes and linings during his employment at Homer's Tire & Supply Company (spanning the time frame from 1956 through 1958); and (ii) evidence of Morgan's exposure to Bendix brake shoes and linings while performing brake jobs on personal and family vehicles until as recently as 2009.  These are the only Bendix exposures identified by plaintiff in his summary judgment filing.

   **A.     *Morgan's Exposure to Bendix Products from 1956 through 1958.***

The parties' briefs devote substantial attention to evidence that Morgan encountered and worked directly with asbestos-containing Bendix brake shoes and linings while working at a service station in Cleveland, Tennessee during the late 1950s.  In that regard, the record documents Morgan's identification of Bendix products, the reasons why Morgan recalls them to have been manufactured by Bendix, and Morgan's exposure to asbestos dust from said products while performing brake jobs on vehicles during his employment at Homer's Tire & Supply Company from 1956 through 1958.  Insofar as plaintiff would predicate Honeywell's liability on these exposures, however, his claims suffer from an insuperable legal defect.  Under well-established, unambiguous Alabama law, any claims against Honeywell for exposures to Bendix asbestos during the 1956-1958 time frame are barred by the applicable Alabama limitations provisions.  *See* Ala. Code § 6-2-38(*l*) ("All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years.").[6]

---

[6]     Morgan's death on November 25, 2012 and his personal representative's prompt amendment of the pleadings to add a wrongful death claim within the § 6-2-38 period do not alter the timeliness analysis.  To the contrary, Alabama law is clear that if Morgan's personal injury claims were untimely filed, then his personal representative cannot maintain a viable wrongful death cause of action arising from those personal injuries.  *See* Ala. Code § 6-5-410(a) ("A personal representative may commence an action … for the wrongful act, omission, or negligence … whereby the death of the testator or intestate was caused, ***provided the testator or intestate could have commenced an action for the wrongful act, omission, or negligence if it***
(Continued)

Historically, Alabama applied a "last exposure rule" governing commencement of the limitations period for claims alleging personal injuries resulting from exposure to a harmful substance, regardless of when those injuries were manifested. *See Garrett v. Raytheon Co.*, 368 So.2d 516, 521 (Ala. 1979) ("[W]e hold that the statute of limitations … began to run when plaintiff was last exposed to radiation and plaintiff's ignorance of the tort or injury, there being no fraudulent concealment, does not postpone the running of the statute until the tort or injury is discovered.").

Shortly after *Garrett* was decided, the Alabama legislature stepped in to modify the judge-made accrual rule in the asbestos context, enacting the following provision: "A civil action for any injury … resulting from exposure to asbestos, including asbestos-containing products, shall be deemed to accrue on the first date the injured party, through reasonable diligence, should have reason to discover the injury giving rise to such civil action." Ala. Code § 6-2-30(b). This "discovery rule" for accrual of personal injury claims in asbestos cases took effect on May 19, 1980. The following year, the Alabama Supreme Court examined the retroactivity of § 6-2-30(b), and held that if, before the effective date of that provision, "one year had elapsed between the date of plaintiff's exposure and the date on which plaintiff's action was commenced, then that claim is nevertheless barred by the statute of limitations." *Tyson v. Johns-Manville Sales Corp.*, 399 So.2d 263, 267 (Ala. 1981). Subject to that important caveat, the

---

***had not caused death***.") (emphasis added). Stated differently, if Morgan's personal injury claims against Honeywell for exposure to asbestos are time-barred, then so are the wrongful death claims relating to those injuries. *See, e.g., Henderson v. MeadWestvaco Corp.*, 23 So.3d 625, 630 (Ala. 2009) (affirming dismissal of asbestos-related wrongful death claim as time-barred under § 6-5-410(a), where decedent's personal injury claims for asbestos exposure accrued in 1972, such that at the time of his death, decedent could not have commenced an action for defendant's wrongful act, omission or negligence if it had not caused death); *In re Asbestos Products Liability Litigation (No. VI)*, 2011 WL 3273296, *3 (E.D. Pa. Apr. 15, 2011) (similar). Simply put, Alabama law leaves no doubt that "if a *decedent's* cause of action is time-barred at his or her death, then the decedent's personal representative cannot bring a wrongful death action." *Henderson*, 23 So.3d at 630 (citations omitted). As such, the crucial issue in the timeliness analysis is whether Morgan's personal injury claims related to asbestos exposure are timely. If they are not, then the later-filed wrongful death claim necessarily fails pursuant to § 6-5-410(a).

*Tyson* Court expressly upheld § 6-2-30(b)'s establishment of "a discovery rule for the accrual of asbestos injury actions in Alabama." *Id.* at 272.

In the three decades since *Tyson* was decided, Alabama courts have consistently hewed to the principle that if a plaintiff's last exposure to a defendant's asbestos-containing product predated May 19, 1979, then the resulting personal injury claims were time-barred before § 6-2-30(b) was ever enacted and cannot be revived by operation of that statute. *See, e.g., Henderson v. MeadWestvaco Corp.*, 23 So.3d 625, 630 (Ala. 2009) (following *Tyson*'s determination that asbestos claims are time-barred if, as of May 19, 1980, one year had elapsed between the date of exposure and date of commencement of suit); *Johnson v. Garlock, Inc.*, 682 So.2d 25, 28 (Ala. 1996) (reaffirming principle that "§ 6-2-30 cannot apply retroactively to actions already barred by the statute of limitations as interpreted and applied in *Garrett*").[7]

The net result, then, is that Alabama has different rules for accrual of personal injury actions relating to asbestos exposure, depending on whether the last exposure occurred prior to May 19, 1979 (in which case the *Garrett* "last exposure rule" governs) or whether the last exposure occurred thereafter (in which case the § 6-2-30(b) "discovery rule" applies).[8] *See In re*

---

[7] This bright-line rule has been repeatedly acknowledged by MDL courts applying Alabama law in asbestos cases. *See, e.g., Holland v. Armstrong Int'l, Inc.*, 2012 WL 7761487, *1 n.1 (E.D. Pa. Nov. 30, 2012) ("[T]he applicable Alabama statute of limitations bars claims arising from asbestos exposure occurring prior to May 19, 1979. Therefore, these claims are[] barred."); *Legg v. Armstrong Int'l, Inc.*, 2012 WL 7761488, *1 n.1 (E.D. Pa. Nov. 30, 2012) (same); *In re Asbestos*, 2011 WL 3273296, at *3 ("Based on the tenets of *Henderson* and *Tyson*, Mr. Corley's claim of personal injury resulting from asbestos against the moving defendants … would have accrued in 1973, on the date of his last exposure to asbestos in the U.S. Navy. Based on the one-year statute of limitations applicable to personal injury claims in effect at the time of accrual …, his claim was barred in 1974.").

[8] In 2008, the Alabama Supreme Court overruled *Garrett* and jettisoned the last-exposure rule in all toxic substance exposure cases (§ 6-2-30(b) having been confined on its face to the asbestos context), in favor of a discovery rule under which "a cause of action accrues only when there has occurred a *manifest*, present injury." *Griffin v. Unocal Corp.*, 990 So.2d 291, 293 (Ala. 2008) (citation omitted). Nonetheless, the *Griffin* Court declined to give its holding broad retroactive effect, declaring instead that "the new accrual rule of toxic-substance-exposure cases will be applied prospectively, except in this case, where it will apply retroactively." *Id.*; *see also Jerkins v. Lincoln Elec. Co.*, 103 So.3d 1, 5 (Ala. 2011) (explaining that *Griffin*'s holding "would apply prospectively only, that is, only to those persons whose last exposure to a toxic substance, and first manifest injury resulting from that exposure, occurred within the two-year period before this Court released its opinion in *Griffin*"). The non-retroactivity of the
(Continued)

*Asbestos Products Liability Litigation (No. VI)*, 2011 WL 3240827, *2 (E.D. Pa. July 29, 2011) ("Under Alabama law, all claims for pre–1979 exposure to asbestos must be filed within one year of the last date of exposure. For any exposure to asbestos after May 17, 1980, the claim accrues upon discovery of an asbestos-related disease.").

As the foregoing discussion demonstrates, any claims relating to Morgan's exposure to Bendix's asbestos-containing products during his employment at Homer's Tire & Supply Company are time-barred by straightforward application of black-letter Alabama law, as set forth in *Tyson* and its progeny. *See, e.g., Henderson*, 23 So.3d at 630 ("Tony Henderson's claim of personal injury resulting from exposure to asbestos would have accrued in 1972, on the date of his last exposure to asbestos at CAPCO. Based on the one-year statute of limitations applicable to personal injury claims at the time …, his claim was time-barred in 1973.").

Under Alabama law, Morgan's claims of personal injury resulting from exposure to Bendix's asbestos-containing brake products during his employment at Homer's would have accrued in 1958, when he was last employed at Homer's and was last exposed to Bendix products there. Based on the one-year statute of limitations applicable at the time, Morgan's claims for these exposures would have become time-barred in 1959, more than five decades before he sued Honeywell. By operation of the *Tyson* line of Alabama Supreme Court decisions, those time-barred claims were not revived, revitalized or resuscitated by the Alabama legislature's subsequent enactment of § 6-2-30(b). Plaintiff has offered no persuasive argument or authority that might allow these claims for pre-1979 exposure to asbestos-containing products manufactured by Bendix to be deemed timely under Alabama law; therefore, Honeywell's Motion for Summary Judgment will be **granted** insofar as it relates to those pre-1979 events and exposures during Morgan's employment at Homer's Tire & Supply Company.[9]

---

*Griffin* rule means that it has no application to Morgan's claims for pre-1979 exposure, which accrued under the old *Garrett* rule decades before *Griffin* was decided.

[9] To be sure, plaintiff's response brief urges the Court to apply *Griffin* retroactively (even though the Alabama Supreme Court has steadfastly declined to do so). Plaintiff also filed a separate memorandum of law advocating that "[t]he Alabama Supreme Court should revisit the holding in *Griffin*" and "call[ing] for a re-examination of *Griffin* and the ruling authorizing prospective-only application" of the discovery rule for accrual of toxic tort claims. (Doc. 321, at 18, 21.) Of course, federal courts applying Alabama law must adhere to the clear (Continued)

### B. Morgan's Exposure to Bendix Asbestos while Working on Personal Vehicles.

"Under Alabama law, when a plaintiff shows post-1979 exposure to asbestos, his or her action does not 'accrue' until the individual knew or should have known of an asbestos-related disease." *In re Asbestos*, 2011 WL 3240827, at *3. To avail himself of this more lenient discovery rule, the plaintiff must satisfy the condition precedent of showing post-1979 exposure to the defendant's products containing asbestos.[10] Plaintiff has not done so. There is no evidence that Morgan worked with, handled or was in close proximity to asbestos-containing Bendix brake shoes or linings (or any other Bendix or Honeywell asbestos products) at any time after his 1958 separation from Homer's Tire & Supply Company.

In an effort to provide such evidence and overcome Honeywell's Rule 56 Motion, plaintiff argues that "[a] dispute exists as to whether Mr. Morgan offered testimony that he removed or installed Bendix brakes after 1978." (Doc. 310, at 5.) To bolster this contention,

---

pronouncements of the Alabama Supreme Court, and do not have the luxury of "revisiting" those holdings or interpreting Alabama law in a manner that deviates from them. *See, e.g., Pietri v. Florida Dep't of Corrections*, 641 F.3d 1276, 1284 (11th Cir. 2011) ("A state supreme court's interpretation of its law is binding on federal courts."); *World Harvest Church, Inc. v. Guideone Mut. Ins. Co.*, 586 F.3d 950, 957 (11th Cir. 2009) ("When we address issues of state law, like the ones in this case, we are bound by the decisions of the state supreme court."). The unbroken line of Alabama Supreme Court decisions running from *Tyson* to *Johnson* to *Griffin* to *Henderson* to *Jerkins* leaves no doubt that, under Alabama law, the last exposure rule continues to govern accrual of personal injury claims for asbestos exposures predating May 19, 1979; therefore, this Court must follow that rule. Nor does plaintiff materially advance his position by citing Alabama authority for the proposition that an asbestos plaintiff "is entitled to recover all damages which proximately flowed from his injury if his action is brought within the statutory period of limitations." *Cazalas v. Johns-Manville Sales Corp.*, 435 So.2d 55, 57 (Ala. 1983). The question presented on summary judgment is not whether plaintiff is entitled to damages for asbestos exposures pre-dating May 1979, but is instead whether "his action is brought within the statutory period of limitations" at all; therefore, *Cazalas* is inapposite. Without a post-1979 exposure to Bendix asbestos-containing products, plaintiff's claims against this defendant necessarily fail on timeliness grounds. What the measure of damages would be if plaintiff did have any timely claims against Honeywell is beyond the scope of the summary judgment analysis.

[10] This proof requirement may be satisfied by circumstantial evidence. *See, e.g., Turner v. Azalea Box Co.*, 508 So.2d 253, 254 (Ala. 1987) (affirming principle that "circumstantial evidence may be used to prove identity" of the manufacturer of a defective product).

plaintiff characterizes the record as establishing that "Mr. Morgan worked with and in close proximity to Bendix brakes … and that this occurred roughly once a year for nearly Mr. Morgan's entire grown life – necessarily including after May 19, 1979." (*Id.* at 15.) Plaintiff's argument takes unwarranted and unreasonable liberties with the summary judgment record by assuming (with no evidentiary foundation) that the brake products Morgan used after 1979 were made by Bendix. In fact, Morgan admitted that he did not "even look at the brand name" when he purchased new brakes; agreed that the brakes he bought "might be Bendix" or "might be somebody else;" testified that the last time he handled a brake product he knew to be manufactured by Bendix was "probably in '58 when I left Cleveland" and that he did not "remember the brand name" of any brake products he had used since then; and reaffirmed that he could "[n]ot really" remember by brand or manufacturer's name any brake products he had used into the 1970s and 1980s. In short, Morgan's testimony is that he handled and installed brake products for personal vehicles on approximately an annual basis during the last 30 years of his life, but that those brake products could have been manufactured by Bendix or by somebody else. Morgan simply did not know. And Morgan's testimony is all plaintiff offers on this product identification/causation question.

That is not good enough. Under applicable law, much more is required to show liability in an asbestos case than the mere possibility that a defendant's products may have been in use in close proximity to the plaintiff. *See, e.g., Sheffield v. Owens-Corning Fiberglass Corp.*, 595 So.2d 443, 451 (Ala. 1992) (in asbestos case, "the parties bearing the burden of proof on the issue of causation must, at a minimum, demonstrate that an asbestos product manufactured by [the defendant] was aboard a ship on which each plaintiff served at the times relevant to that service").[11] In *Sheffield*, for example, the Alabama Supreme Court affirmed the grant of

---

[11] *See also Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir. 1990) ("the issue is whether a reasonable jury could conclude in this case by a preponderance of the evidence presented, that Mr. Hoffman was exposed to Armstrong's asbestos products, and that the exposure was a proximate cause of his injury"); *Lee v. Celotex Corp.*, 764 F.2d 1489, 1490 (11th Cir. 1985) ("[A]s a threshold to pursuing the lawsuit against a particular defendant, the plaintiff must produce sufficient evidence to support a finding that plaintiff was directly exposed to that defendant's asbestos-containing products."); *Blackston v. Shook and Fletcher Insulation Co.*, 764 F.2d 1480, 1483 (11th Cir. 1985) ("Reasons behind the requirement that plaintiffs prove exposure to a particular defendant's products in order to establish proximate cause are well-stated in cases refusing to impose market-share or industry-wide liability upon asbestos manufacturers."). This (Continued)

summary judgment to the manufacturer of Kaylo (a brand of asbestos form pipe covering), when the plaintiff's evidence created "nothing more than a 'mere possibility' that Kaylo was [present in plaintiff's workplace], and, consequently, that it was a cause-in-fact of the alleged injuries." *Id.* at 451. Similarly, plaintiff's evidence is that the brake shoes and brake linings Morgan purchased and installed while performing brake jobs on personal and family vehicles from the 1970s to the 2000s may have been manufactured by Bendix, or may have been manufactured by some other company. Plaintiff's evidence provides no factual basis for a finder of fact to sort through or select among the various possibilities; thus, on this record, the only way a jury could find that Morgan worked with Bendix brake products after May 1979 would be via speculation, conjecture or guesswork.

Of course, "[s]peculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted); *see also Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("A 'mere scintilla' of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment."). Simply put, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citation omitted). This record, taken as a whole, could not lead a rational trier of fact to find that Morgan was ever exposed to Bendix asbestos-containing products after May 19, 1979. In other words, no reasonable jury could conclude from this evidence that Morgan's illness and death were caused by asbestos exposure that (i) was attributable to Bendix and (ii) occurred after the effective date of the discovery rule of accrual fashioned by § 6-2-30(b).[12] Accordingly, Honeywell is entitled to summary judgment

---

principle has also been applied more generally by Alabama courts in products liability cases where there is no evidence as to which of various manufacturers actually produced the allegedly defective product. *See Turner*, 508 So.2d at 254 ("[T]here were three, and possibly four, sources from which the wooden pallet in question could have come. … [T]o use this evidence to support Turner's contention that Azalea Box supplied the pallet in question to the exclusion of other sources is to engage in speculation and conjecture.").

[12] To be sure, plaintiff may well have evidence that Morgan was exposed to asbestos-containing products manufactured by other defendants after May 19, 1979. As (Continued)

on grounds that the record lacks sufficient evidence of product identification / causation within the applicable limitations period. *See Lee v. Celotex Corp.*, 764 F.2d 1489, 1491 (11th Cir. 1985) (defendant entitled to summary judgment where "[t]he allegation that plaintiff was exposed to defendant's asbestos-containing product is not supported by reasonable inferences arising from the undisputed facts, but is based on speculation and conjecture that renders them mere guesses or possibilities").

## IV.   Conclusion.

For all of the foregoing reasons, the Court finds that there are no genuine issues of material fact, and that movant is entitled to judgment as a matter of law. Defendant Honeywell International Inc.'s Motion for Summary Judgment (doc. 269) is **granted**, and plaintiff's claims against that defendant are **dismissed with prejudice**. The Clerk of Court is directed to **terminate** Honeywell as a party defendant.

DONE and ORDERED this 30th day of August, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

discussed *supra*, however, applicable law imposes on plaintiff the burden of proving exposure to each particular defendant's products, not just proving exposure to asbestos in general.