IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

RONALD MELVIN MORGAN,                )
as Personal Representative for the Estate )
of Rueben Morgan,                    )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )        CIVIL ACTION 11-0535-WS-B
                                     )
BILL VANN COMPANY, INC., *et al.*,   )
                                     )
        Defendants.                  )

# ORDER

This matter comes before the Court on defendant Flowserve Corporation's Motion for Summary Judgment (doc. 272). The Motion has been briefed and is ripe for disposition.[1]

**I.     Relevant Background.**

This is an asbestos action pending against 11 defendants,[2] alleging various state-law tort claims and a wrongful death cause of action based on the alleged exposure of plaintiff's decedent, Rueben Morgan, to asbestos-containing products at various times and locations. Morgan was diagnosed with malignant mesothelioma (a disease commonly linked to asbestos exposure) in or about February 2011. (Doc. 199, at Exh. A.) He died on or about November 5, 2012, at the age of 79. (Doc. 206, at Exh. A.)

On May 4, 2011, less than three months after his diagnosis, Morgan initiated this litigation against 42 named defendants (including Flowserve). Morgan's pleadings alleged that

---

[1] Flowserve Corporation was formerly known as The Duriron Company, Inc. For the sake of consistency and clarity, that entity will be referred to herein as "Flowserve," regardless of what the company's actual name may have been at a particular time.

[2] Initially, there were numerous other named defendants; however, the ranks of defendants have dwindled as a result of settlements and voluntary dismissals. All 11 remaining defendants have pending, ripe summary judgment motions that have been taken under submission.

he "was exposed to asbestos dust, asbestos particles, asbestos containing materials and products that were produced, manufactured, specified for use, installed, distributed, sold and/or placed into the stream of commerce by the producer and/or distributor Defendants during his employment as a machinist, engine room worker, and mechanic," as a result of which he was "diagnosed with an asbestos related disease." (Doc. 1, Exh. A-2, at 6.) On July 29, 2011, Morgan amended his Complaint to name certain additional defendants. (Doc. 4, Exh. B, at 1.)

Record facts concerning Morgan's interactions with Flowserve products are as follows:[3] From 1978 through 1992, Morgan worked at the Alabama River Pulp paper mill. (Morgan Dep. I, at 95-96.)[4] Initially, Morgan helped with construction of the mill, including installation of pumps and boiler couplings. (*Id.* at 97.) For approximately his first year at Alabama River Pulp, Morgan worked as a machinist. (Morgan Dep. IV, at 123-24.) On August 1, 1979, he was promoted to the position of foreman of the paper mill's machine shop, after which he no longer did "hands-on" maintenance work, but closely supervised others. (*Id.* at 124.) Morgan also set up and supervised the pump shop at Alabama River Pulp. (Morgan Dep. I, at 99; Morgan Dep. III, at 74.) In his supervisory role, Morgan was present in the machine and pump shops "every day and seen what was done and particularly in the tearing down and making sure it's cleaned up right when it went back together." (Morgan Dep. II, at 163.) Although he did not perform hands-on work on the pumps, Morgan testified, "I got these eyeballs down there and I run these

---

[3] The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Plaintiff's evidence is taken as true and all justifiable inferences are drawn in his favor. Federal courts cannot weigh credibility at the summary judgment stage. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices."). Thus, the Court will "make no credibility determinations or choose between conflicting testimony, but instead accept Plaintiff's version of the facts drawing all justifiable inferences in Plaintiff's favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

[4] Morgan's deposition was taken multiple times in this case, including discovery depositions taken on August 16, 2011 and August 25, 2011, and trial depositions taken on September 2 and 8, 2011. For purposes of this Order, citations to Morgan's August 16 deposition will take the form "Morgan Dep. I," while citations to the August 25 deposition will take the form "Morgan Dep. II," those to the September 2 deposition will take the form "Morgan Dep. III," and those to the September 8 deposition will take the form "Morgan Dep. IV."

fingers around things and then when it was being cleaned up, I've got to breathe about as much dust and dirt as [the hands-on workers] did." (*Id.* at 165.)[5]

Morgan testified that the Alabama River Pulp facility had a chemical prep area that contained Durco pumps, and that Morgan and his crew worked on those Durco pumps infrequently. (Morgan Dep. III, at 180-81.)[6] "Durco" is shorthand for "Duriron Company," the

---

[5] Morgan reinforced these points by testifying that he "looked in to every job that was being … performed. And all the pumps, … whatever was being done to them, I wanted to know what it was. I wanted to know what kind of condition they were when they come in, plus, you know, see it. … I wanted to see it for myself. And a lot of times I put my hands on it just to feel it. And the same thing with the machine work. I went by every job to see … what was going on." (Morgan Dep. III, at 231.) As for the daily clean-up process in Alabama River Pulp's machine and pump shops, Morgan explained that at the end of each day, the crew would "air hose things off, and then sweep it up," including "dirt and dust and what asbestos was there in the dirt and dust." (*Id.* at 232.)

[6] Flowserve asks the Court to strike as inadmissible all of Morgan's deposition testimony concerning Durco pumps and valves because it followed from leading questions to which defense counsel objected. The Federal Rules of Civil Procedure provide that, on summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Rule 56(c)(2), Fed.R.Civ.P. But there is no absolute prohibition on leading questions on direct examination. The applicable evidentiary rule is that "[l]eading questions should not be used on direct examination except as necessary to develop the witness's testimony." Rule 611(c), Fed.R.Evid. Use of leading questions on direct examination may be permitted in the trial court's discretion. *See, e.g., United States v. Kuehne*, 547 F.3d 667, 692 (6th Cir. 2008) (affirming use of leading questions on direct examination "to direct a witness' attention to a particular individual or date, or to clarify testimony"); *Sanders v. New York City Human Resources Admin.*, 361 F.3d 749, 757 (2nd Cir. 2004) (opining that Rule 611(c)'s language "expressing a preference for non-leading questions is only precatory and, that generally trial judges are afforded a large degree of discretion in overseeing the examination of witnesses"); *Stine v. Marathon Oil Co.*, 976 F.2d 254, 267 (5th Cir. 1992) (finding no error in district court allowing parties to use leading questions "to speed the examination of witnesses"); *United States v. Pugh*, 2010 WL 5141262, *6 (6th Cir. Dec. 14, 2010) (leading questions are permissible to focus the witness and avoid having "to go around the mulberry bush"). Under the circumstances (and particularly the multiplicity of named defendants in this lawsuit), it was entirely reasonable and appropriate for plaintiff's counsel to ask Morgan a series of questions about Flowserve, beginning with the query: "And also in your lawsuit, you named a company called Durco. And do you recall the name Durco?" (Morgan Dep. III, at 180-81.) This question (and others like it) did not equate to counsel testifying for the witness, putting words or ideas in his mouth, or otherwise abusively employing leading questions on direct examination; rather, the questions merely served to focus Morgan on the particular defendant (already named in the Complaint) about which his lawyer was asking, without wasting time "going around the mulberry bush" with a sequence of open-ended questions until Morgan
(Continued)

former name of Flowserve, so Durco pumps were manufactured by Flowserve. Morgan identified certain pumps at Alabama River Pulp as "Durco pumps" because they featured metal plates bearing the name "Durco." (Morgan Dep. IV, at 58.) Morgan did not personally perform maintenance and repairs on Durco pumps; however, he would be present in the pump shop when workers would "tear them down … and do whatever was needed … to rebuild them … and put them back where they could go back in service." (*Id.* at 62.)[7] As configured by Alabama River Pulp, Durco pumps had asbestos-containing packing, and at least some of them had asbestos-containing gaskets, as well. (*Id.* at 63, 74.) The process of changing out packing or gaskets on those Durco pumps would generate asbestos dust in the pump shop, to which Morgan was exposed because these activities would occur in his presence and under his close, direct supervision. (*Id.* at 63-64; Morgan Dep. III, at 70-72, 78.)[8] Morgan recalled seeing Durco pumps in the pump shop for maintenance work "[p]robably twice a year." (Morgan Dep. IV, at 64.) The last time that Morgan was around a Durco pump was in 1992, when he retired from Alabama River Pulp. (*Id.* at 81-82.)

Significantly, the record in the light most favorable to plaintiff confirms that Durco pumps were not made of asbestos and did not have exterior asbestos. (Morgan Dep. IV, at 63.) Alabama River Pulp did, however, use asbestos-containing interior packing in the pump shaft of those Durco pumps. (*Id.*)[9] Although certain pumps at Alabama River Pulp were converted over

---

guessed which defendant his lawyer was wanting to discuss. As such, Flowserve's objections to the cited excerpts of Morgan's deposition testimony on grounds of leading questions are **overruled**.

[7] Specifically with respect to Durco pumps, Morgan testified, "I'd have it in my hands and looked at it when the … pump man would tear it apart." (*Id.* at 57.)

[8] In response to a line of questioning concerning Durco pumps, Morgan explained that the exposure to asbestos dust came from the process of removing old packing, to-wit: "And so if you're getting the old out, that's where your dust comes in … and my thing was to make sure that the stuffing box is cleaned up good before going back with new packing to get the right result from packing. So there's – there's your dust." (Morgan Dep. IV, at 69.)

[9] When asked whether the pumps themselves contained asbestos, Morgan responded, "No." (Morgan Dep. II, at 350.) When asked whether the asbestos dust he encountered during the maintenance and repair of pumps at Alabama River Pulp was from the
(Continued)

time to use mechanical seals rather than asbestos sealing components, Morgan testified that Durco pumps "had stuffing boxes and packing," at least "for a while" after he began working there in 1978. (*Id.* at 64-65.) From time to time, Alabama River Pulp employees replaced that interior packing with packing material manufactured and supplied by third parties (many of which are or were also defendants in this litigation). It was that replacement process that, plaintiff argues, caused Morgan to be exposed to asbestos dust attributable to Flowserve. Plaintiff also testified that (i) he had no evidence that the pump manufacturer supplied replacement packing for Durco pumps; (ii) the replacement packing would be whatever brand the storeroom happened to have in stock; and (iii) Morgan had no information as to how often the packing had been changed on a particular pump before it came before him. (*Id.* at 70-71.) The same is generally true of gaskets for Durco pumps at Alabama River Pulp. (*Id.* at 74-79.) Morgan did not know whether new Durco pumps were shipped to Alabama River Pulp with flange gaskets pre-installed because "the system was put together when [he] got there." (*Id.* at 80-81.) And the record reflects that, generally speaking, "when you pull an old gasket out of a line or if you pull an old packing out of a valve or a pump, there's no way you can tell who made it." (Ronald Melvin Morgan Dep., at 339-40.)

With respect to Durco valves, there is limited evidence that such valves were in use at Alabama River Pulp during the period of Morgan's employment. (Morgan Dep. IV, at 82-90.) Morgan was unable to identify any exposures he might have had to asbestos-containing products from Durco valves, except in the vaguest of terms. (*Id.* at 87-91.) Plaintiff's opposition to Flowserve's Motion for Summary Judgment is couched exclusively in terms of evidence concerning Durco pumps; therefore, it does not appear that plaintiff is claiming (and certainly he has identified no evidence supporting) that Flowserve liability may be predicated on Morgan's exposure to asbestos-containing products involved with Durco valves. For that reason, the analysis herein will center on Durco pump evidence. That said, the Court is aware of no reason (and plaintiff has identified none) why the result would be different in the Durco valve context than in the Durco pump context.

---

packing or the pump itself, Morgan responded, "Well, it would have to be from the packing, you know." (*Id.* at 351.)

## II. Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

## III. Analysis.

Although Flowserve's Motion for Summary Judgment raises a number of legal and factual arguments, the Court need only examine one, to-wit: Flowserve's invocation of the so-called "bare metal defense." The factual premise of this argument is that "there is no evidence that Mr. Morgan worked with or even around an asbestos-containing product manufactured, sold, or otherwise placed into the steam [*sic*] of commerce by Flowserve, just metal pumps and valves." (Doc. 272-1, at 13.) The legal premise of this argument is that a manufacturer of "bare metal" is not liable for other manufacturers' asbestos-containing components used in connection with that bare metal.

### A. *Is the Bare Metal Defense Cognizable Under Alabama Law?*

Many jurisdictions have embraced some form of this bare metal defense in the asbestos context. *See, e.g., Lindstrom v. A-C Product Liability Trust*, 424 F.3d 488, 495 (6th Cir. 2005) (affirming grant of summary judgment for manufacturer of valves that used asbestos packing

-6-

materials and gaskets, where defendant did not provide replacement packing or gaskets, such that "any asbestos that [defendant] may have been exposed to in connection with a Henry Vogt product would be attributable to some other manufacturer," and "Henry Vogt cannot be held responsible for material 'attached or connected' to its product"); *Faddish v. Buffalo Pumps*, 881 F. Supp.2d 1361, 1372 (S.D. Fla. 2012) ("A number of state courts … have concluded that a defendant manufacturer is not liable for a third party's asbestos-containing products when the defendant is not within the 'chain of distribution' of the asbestos product. … Predicting that the Florida Supreme Court would follow this trend, this court likewise concludes that the defendant 'bare metal' suppliers cannot be liable for a third party's asbestos containing products under the facts presented in this case."); *Conner v. Alfa Laval, Inc.*, 842 Supp.2d 791, 801 (E.D. Pa. 2012) (collecting cases and holding that "under maritime law, a manufacturer is not liable for harm caused by, and owes no duty to warn of the hazards inherent in, asbestos products that the manufacturer did not manufacture or distribute," such that defendants who made products that used asbestos insulation, gaskets and packing could not be held liable when they did not manufacture or distribute the asbestos products themselves); *Surre v. Foster Wheeler LLC*, 831 F. Supp.2d 797, 801-02 (S.D.N.Y. 2011) (granting summary judgment to manufacturer of boilers in asbestos case, where "Crane did not manufacture or place into the stream of commerce the asbestos to which Surre was exposed," "there is no evidence that Pacific boilers required asbestos insulation to function," and "there is no evidence that Crane played any role in choosing the type of insulation Surre applied"); *O'Neil v. Crane Co.*, 266 P.3d 987, 996-97 (Cal. 2012) (rejecting claim that pump manufacturers were liable for asbestos packing and gaskets used by customer where "it is undisputed that O'Neil was exposed to *no* asbestos from a product made by the defendants," "there was no evidence that defendants' products *required* asbestos-containing gaskets or packing in order to function," and "[t]he defective product in this setting was the asbestos insulation, not the pumps and valves to which it was applied after defendants' manufacture and delivery"); *Braaten v. Saberhagen Holdings*, 198 P.3d 493, 502 (Wash. 2008) ("Because we have held … that there is no duty to warn of the dangers of other manufacturers' asbestos products, we also conclude that there was no duty to warn with respect to replacement packing and gaskets. … [T]hese manufacturers should not be held liable for harm caused by asbestos-containing material included in their products postmanufacture.").

The parties agree that the substantive law of Alabama governs here. Alabama appellate courts have not unequivocally resolved the question of whether the bare metal defense is available in asbestos cases under state law. *See Holland v. Armstrong Int'l, Inc.*, 2012 WL 7761422, *1 n.1 (E.D. Pa. Nov. 28, 2012) ("The Court has reviewed the caselaw cited by the parties and has determined that Alabama law on this issue is not settled.").[10] Accordingly, this Court is tasked with predicting how the Alabama Supreme Court would decide the issue. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Duckworth*, 648 F.3d 1216, 1224 (11th Cir. 2011) ("Where, as here, we find no [state] Supreme Court decision directly on point, we must anticipate how the [state] Supreme Court would decide this case."); *Clark v. Riley*, 595 F.3d 1258, 1264 (11th Cir. 2010) ("In rendering a decision based on state substantive law, a federal court must decide the case the way it appears the state's highest court would.") (citations and internal quotation marks omitted).

Fortunately, Alabama case law does provide helpful guidance to inform such a prediction. In particular, the Alabama Supreme Court has held "that a distributor or manufacturer of a nondefective component is not liable for defects in a product that it did not manufacture, sell, or otherwise place in the stream of commerce." *Sanders v. Ingram Equipment, Inc.*, 531 So.2d 879, 880 (Ala. 1988); *see also Brest v. Chrysler Corp.*, 939 F. Supp. 843, 848 (M.D. Ala. 1996) ("Under *Sanders*, it is well established in Alabama that a manufacturer can only be held liable for defects in the products that it manufactured, sold, or

---

[10] That said, Flowserve has provided the Court with an on-point unpublished opinion from the Circuit Court of Mobile County, Alabama, styled *Robert Patrick, et al. v. Ametek, Inc., et al.* (Doc. 272, Exh. G). The *Patrick* decision, authored by Circuit Judge Joseph S. Johnston, applies Alabama law to the same circumstances presented here (*i.e.*, whether Flowserve, as a manufacturer of bare-metal pumps, may be held liable for asbestos-containing components made and supplied by third parties). Judge Johnston found that, under Alabama law, "a manufacturer of a non-defective product cannot be held liable for a defective product subsequently associated with that product which it did not manufacture or supply." (*Id.* at 6.) He adopted the legal principle articulated in other jurisdictions that "[s]ince this defendant did not manufacture or market the asbestos-containing material nor did it have control over the type of materials selected, it was not liable." (*Id.* at 8.) The *Patrick* order concluded that "[b]ecause the Plaintiffs have failed to meet the threshold requirement of showing … that the Plaintiff worked with an asbestos-containing product manufactured, sold, distributed or otherwise placed in the stream of commerce by FLOWSERVE, Plaintiffs have failed to establish the requisite causal nexus between such products and Mr. Patrick's injury." (*Id.* at 9.)

otherwise placed in the stream of commerce."). Moreover, the Eleventh Circuit interpreted Alabama law in analogous circumstances in *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465 (11th Cir. 1993). In that case, the plaintiff's decedent was killed while mounting a Goodyear tire on a multi-piece rim for which the tire had been specifically designed. The plaintiff's evidence was that a defect in the rim (which was manufactured by a third party), not the tire, caused the accident. Relying on *Sanders* for the proposition that the manufacturer of a non-defective component cannot be held liable for injuries caused by a product that it did not manufacture, sell, or otherwise place in the stream of commerce, the Eleventh Circuit concluded that "Goodyear would have no duty to give a warning concerning a mismatched or defective rim manufactured by [someone else]." *Id.* at 472. On the strength of *Sanders* and *Reynolds*, Flowserve urges this Court to find that Alabama courts would follow the "majority rule" as set forth in *Conner*, *O'Neil* and the other authorities cited *supra*.

Plaintiff counters that Alabama law would impose a duty to warn on Flowserve in this context. As an initial matter, plaintiff does not and cannot challenge the well-settled principle that, under Alabama products-liability law, "a defect in the product must be affirmatively shown" by the plaintiff. *Tanksley v. ProSoft Automation, Inc.*, 982 So.2d 1046, 1051 (Ala. 2007) (citations omitted). In an attempt to shoulder this burden as to Flowserve pumps (which, by themselves, are bare metal products as to which third-party packing and gaskets are added by the end user), plaintiff suggests that Alabama River Pulp's use of dangerous asbestos-containing packing and gaskets on those pumps was a foreseeable modification or alteration of the product which does not relieve Flowserve of responsibility for the resulting defect (*i.e.*, components that released respirable asbestos dust when replaced). *See generally Sears, Roebuck and Co. v. Harris*, 630 So.2d 1018, 1027 (Ala. 1993) (explaining that "the mere fact that a product has been altered or modified does not necessarily relieve the manufacturer or seller of liability" and that a manufacturer remains liable "if the alteration or modification was reasonably foreseeable" to it). Plaintiff's theory, then, is that Alabama River Pulp's use of asbestos-containing packing and gasket materials was a foreseeable modification to Flowserve pumps, for which Flowserve owed a duty to warn under Alabama law, and that this Court therefore should not apply the "bare metal defense" doctrine.

There is an obvious tension between the *Sanders* tenet that a manufacturer is not liable for defects in a product that it did not place in the stream of commerce, on the one hand, and the

-9-

*Sears* ruling that a manufacturer is liable for alterations to its product that are reasonably foreseeable. If the alteration giving rise to liability under *Sears* is the addition of a component part that the defendant manufacturer did not place in the stream of commerce (and for which *Sanders* would preclude liability), then does the *Sanders* rule or the *Sears* rule control? Fortunately, the Alabama Supreme Court answered this question in *Hannah v. Gregg, Bland & Berry, Inc.*, 840 So.2d 839 (Ala. 2002). In *Hannah*, the plaintiff's decedent was killed in a workplace accident involving machines whose electrical controls included control panels provided by Westinghouse. The plant operator modified the Westinghouse control panels by adding additional buttons. Plaintiff's theory was that the accident's cause was a worker pressing the wrong button on the Westinghouse control panel. When plaintiff sued under the AEMLD, Westinghouse argued that it was entitled to summary judgment under *Sanders* because the defects in the industrial machines were unrelated to the control panel it supplied. The *Hannah* Court rejected this argument, reasoning that (i) plaintiff's theory was that the Westinghouse controls themselves were defective because they omitted safety devices, and (ii) "*Sanders* is inapplicable when the plaintiff seeks to recover based upon the theory that the product supplied by the defendant is itself defective." *Id.* at 855. So *Hannah* teaches that if a manufacturer is sued for defects in its own product (rather than for defects in some third party's component part used with that product), then *Sanders* does not preclude liability under Alabama law.

Considering all of the foregoing authorities in the aggregate, the Court concludes that (i) the prevailing majority rule in other jurisdictions is to recognize the "bare metal defense" (under which a pump manufacturer such as Flowserve cannot be liable for a third party's asbestos materials used with its products, where the pump manufacturer was not in the chain of distribution of such asbestos-containing materials); (ii) the trend in other jurisdictions favors adoption of that defense for sound and even compelling policy reasons;[11] (iii) that defense is a

---

[11] As one court explained, "Where, as here, the defendant manufacturer did not incorporate the defective component into its finished product and did not place the defective component into the stream of commerce, the rationale for imposing liability is no longer present. The manufacturer has not had an opportunity to test, evaluate, and inspect the component; it has derived no benefit from its sale; and it has not represented to the public that the component part is its own." *O'Neil*, 266 P.3d at 998-99 (citations omitted); *see also Faddish*, 881 F. Supp.2d at 1373-74 (justification for products liability is "to encourage manufacturer accountability and to insure that the costs of injuries resulting from defective products are borne by the manufacturers (Continued)

logical outgrowth and application of Alabama law as summarized in *Sanders*, *Hannah*, *Reynolds* and *Brest*; and (iv) at least one trial court in Alabama has expressly adopted the defense and concluded that a pump defendant has no liability under Alabama law for third-party asbestos-containing gaskets and packing. In light of this survey of applicable law, the undersigned is of the opinion that the Alabama Supreme Court would adopt the bare metal defense as a modest extension and application of the rule in *Sanders*, subject to the *Hannah* caveat that the defense is inapplicable if the defendant is being sued for defects in its own product. Neither plaintiff nor defendant identifies serious grounds for disagreement with this assessment of how the Alabama Supreme Court would resolve the issue; therefore, the Court's analysis of Flowserve's Rule 56 Motion will proceed in accordance with that forecast.

### B.     *Application of Bare Metal Defense to Record Facts.*

To recapitulate the relevant summary judgment evidence, Flowserve manufactured Durco pumps "that required fluid sealing component parts, such as gaskets, packing and/or mechanical seals, for proper function and operation." (Doc. 312-7, at 3.) Some of those packings and gaskets were made with asbestos. (*Id.*) Brand-new Durco pumps "contained third-party manufactured sealing devices pre-installed at Duriron facilities." (*Id.*) The Alabama River Pulp plant where Morgan worked commenced operations in 1978 and utilized a number of Durco pumps, which would have been shipped to the plant with Duriron-installed packing and gaskets (if they needed gaskets at all). Periodically, Alabama River Pulp would replace its Durco pumps' packing and gaskets with replacement components that contained asbestos, and were manufactured and supplied by third parties. Plaintiff has no evidence that Flowserve supplied or had any involvement whatsoever with the production, selection, ordering, or shipment of

---

that put such products on the market rather tha[n] by the injured persons who are powerless to defend themselves," but those interests are inapplicable for a defendant "who had no control over the type of insulation the [end user] would choose and derived no revenue from sale of asbestos-containing products used" at that facility) (citations and internal quotation marks omitted); *Conner*, 842 F. Supp.2d at 800-01 (observing that "products-liability theories rely on the principle that a party in the chain of distribution of a harm-causing product should be liable because that party is in the best position to absorb the costs of liability into the cost of production," but that "this policy weighs against holding manufacturers liable for harm caused by asbestos products they did not manufacture or distribute because those manufacturers cannot account for the costs of liability created by the third parties' products").

replacement packing and gaskets at Alabama River Pulp. Plaintiff seeks to hold Flowserve liable in this action because the process of replacing packing and gaskets on Durco pumps at Alabama River Pulp produced asbestos dust, which Morgan breathed because he worked as foreman in the pump room in close proximity to the workers actually performing these tasks. Plaintiff's theory is that the dust from these packings and gaskets substantially caused or contributed to Morgan's contraction of malignant mesothelioma.

At the outset, plaintiff endeavors to shoehorn this case within the *Hannah* caveat to *Sanders*, insisting that the *Hannah* situation (in which a plaintiff sought to recover on a theory that the defendant's product is itself defective) "is precisely the situation at hand in the present case." (Doc. 312, at 26.) Obviously, no asbestos dust or fibers emanated from Durco pumps themselves; rather, as Morgan testified, any dust encountered during the process of replacing packing for such pumps "would have to be from the packing," not from the pump. (Morgan Dep. II, at 351.) Nonetheless, plaintiff posits that Flowserve's liability in this case derives "in part from the defective design of its pumps that required the use of asbestos-containing component parts." (Doc. 312, at 26.) But plaintiff has identified no record evidence – and the Court has found none – that the Durco pumps in use at Alabama River Pulp "required the use of asbestos-containing component parts." There is no evidence, for example, that these pumps would not function properly if their packing was not made of asbestos. Morgan conceded that during this period of time, "some packing contained asbestos and some didn't." (Morgan Dep. IV, at 71.) The record is devoid of evidence from which a reasonable fact finder could conclude that the Durco pumps in use at Alabama River Pulp were designed to <u>require</u> asbestos packing, to the exclusion of other kinds of packing materials. Of course, speculation and conjecture are not valid grounds for denying summary judgment relief.[12] Thus, to the extent that plaintiff seeks to hold Flowserve liable on a defective design theory, that theory cannot withstand Rule 56

---

[12] "Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted); *see also Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("A 'mere scintilla' of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment."). Simply put, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citation omitted).

scrutiny because the record lacks evidence from which a jury could conclude that the Durco pumps in use at Alabama River Pulp during the relevant time period were defectively designed to "require" use of asbestos-containing packing. Mere compatibility of Durco pumps with asbestos-containing products is not a design defect. *See O'Neil*, 266 P.3d at 298-99 ("[N]o evidence showed that the design of defendants' products required the use of asbestos components, and their mere compatibility for use with such components is not enough to render them defective.").

There being no record basis for a defective design claim against Flowserve and plaintiff not having delineated any other ground for her claim that the Durco pumps themselves were defective, the claims against Flowserve lie outside the *Hannah* caveat (*i.e.*, that a manufacturer may be held liable, notwithstanding *Sanders*, when the plaintiff pursues claims that the defendant's product is itself defective). Plaintiff seeks to hold Flowserve liable not because Durco pumps were defective, but because Alabama River Pulp installed asbestos packing in those pumps. The packing, not the pump, was the defect. But Alabama River Pulp neither manufactured said packing nor placed it in the stream of commerce. The clear thrust of the bare metal defense is that a manufacturer cannot be held liable for asbestos-containing products used in conjunction with its bare metal pumps, absent evidence that the manufacturer was part of the chain of distribution for those products. Accordingly, to the extent that plaintiff would predicate liability on a theory that Flowserve "fail[ed] to warn of the dangers presented by these component parts" despite knowledge that some packing supplied with its pumps "would foreseeably be replaced by comparable asbestos-containing components" (doc. 312, at 26), those claims fail as a matter of law. Under the bare metal defense, Flowserve is not liable for harm caused by, and owed no duty to warn Morgan or anyone else concerning the hazards of, asbestos-containing packing and gaskets that users of Durco pumps might install, where Flowserve did not manufacture, sell or distribute such asbestos-containing components.[13]

---

[13] *See Lindstrom*, 424 F.3d at 497 (asbestos defendant "cannot be held responsible for asbestos-containing material that … was incorporated into its product post-manufacture"); *Faddish*, 881 F. Supp.2d at 1371 ("a manufacturer's duty to warn, whether premised in negligence or strict liability theory, generally does not extend to hazards arising exclusively from *other* manufacturer's products, regardless of the foreseeability of the combined use and attendant risk"); *Surre*, 831 F. Supp.2d at 801-02 (boiler manufacturer owed no duty to warn, as a matter of law, where defendant did not manufacture or place into stream of commerce the asbestos to
(Continued)

Under a generous reading of plaintiff's summary judgment brief, plaintiff seeks to forestall this result on two grounds. First, plaintiff appears to contend that the bare metal defense does not exonerate Flowserve because the Durco pumps at Alabama River Pulp were newly purchased and were shipped with original equipment manufacturer ("OEM") parts, including packing and gaskets. In other words, plaintiff's position is that Durco pumps already had asbestos-containing packing and gaskets in them when Flowserve shipped them to Alabama River Pulp. If that statement were accurate, then it would imply that Flowserve placed those asbestos-containing components in the stream of commerce and may be held liable (notwithstanding the bare metal defense) for any exposures to asbestos dust that Morgan suffered from those OEM components (as opposed to replacement components, for which Flowserve would not have been in the chain of distribution and cannot be liable under the bare metal defense). There is record evidence supporting some aspects of this contention.[14] The trouble with this argument is that plaintiff has presented no evidence that those original OEM parts

---

which plaintiff was exposed, there was no evidence that boilers required asbestos insulation to function, and record did not show that defendant played role in end user's decision to utilize asbestos insulation); *O'Neil*, 266 P.3d at 998 ("[N]o case law … supports the idea that a manufacturer, after selling a completed product to a purchaser, remains under a duty to warn the purchaser of potentially defective additional pieces of equipment that the purchaser may or may not use to complement the product bought from the manufacturer.") (citation omitted); *Braaten*, 198 P.2d at 385 ("a manufacturer is not liable for failure to warn of the danger of exposure to asbestos in insulation applied to its products if it did not manufacture the insulation and was not in the chain of distribution of the insulation," and "[i]t makes no difference whether the manufacturer knew its products would be used in conjunction with asbestos insulation").

[14] Indeed, plaintiff cites testimony that Morgan "started that mill up. All the pumps at the startup were new, purchased from whichever pump manufacturer …. At that point, they were the first ones to repair the pumps in the shop." (Ronald Melvin Morgan Dep., at 92.) Also, Flowserve acknowledged that its new pumps "contained third-party manufactured sealing devices preinstalled at Duriron facilities." (Doc. 312-7, at 3.) These facts raise a reasonable inference that when Durco pumps were shipped to Alabama River Pulp at the time of the plant's start-up in 1978, they contained packing manufactured by third parties and installed by Flowserve. If Morgan was exposed to asbestos dust from the OEM packing, then the bare metal defense would not preclude plaintiff's claims against Flowserve relating to those exposures, which would concern asbestos products that Flowserve had distributed with its new pumps.

-14-

contained asbestos,[15] and nothing more than speculation that Morgan was present during the asbestos dust-creating event when those original components were replaced at Alabama River Pulp.[16] In that regard, the record is clear that Morgan did not become a foreman supervising pump repairs until August 1, 1979; that he could not discern the brand of packing removed from pumps (or whether it was the original packing included by the manufacturer); and that he had no knowledge of a particular pump's maintenance history or how many times its packing had been changed previously. (Morgan Dep. IV, at 66, 70-71.) There is, accordingly, no factual basis that might support a reasonable conclusion that Morgan was exposed to asbestos releases from the removal and replacement of OEM packing and gasket materials supplied with Durco pumps.[17]

Second, plaintiff attempts to formulate a basis for holding Flowserve liable on the theory that it recommended replacement parts for Durco pumps in a manual used by Alabama River

---

[15] Contrary to plaintiff's allegation, the record shows that Flowserve "never manufactured, supplied or recommended the use of asbestos flange gasket material in connection with any of Duriron (or other) products." (Doc. 312-7, at 3.) And Morgan testified that he had no knowledge of Flowserve supplying any original flange gaskets at all on Durco pumps. (Morgan Dep., at 80-81.) As for the OEM packing materials, the record is silent as to whether they were made with asbestos or not.

[16] The record shows that Morgan spent his first year at Alabama River Pulp as a machinist, but that he never did hands-on work with Durco pumps. Plaintiff's exposure evidence focuses exclusively on his role as foreman of the pump shop, a job he assumed after a year at the mill. If the packing and gaskets on Durco pumps were replaced during that first year, then, there is no evidentiary basis for concluding that Morgan would have been exposed to them or that he would have been in close proximity to them. After all, he did not do hands-on work on Durco pumps, and he would not have been supervising others doing such work. So the timing of when those OEM packing materials were replaced is potentially critical. The record is completely silent on this question.

[17] Even if such evidence did exist, plaintiff might run headlong into a limitations problem with regard to asbestos exposures from the OEM packing. Recall that Morgan began working at Alabama River Pulp in 1978. If his exposures to asbestos released from OEM packing and gaskets from Durco pumps happened earlier than May 19, 1979, plaintiff's claims relating to such exposures would be time-barred under well-settled Alabama law. *See, e.g., Holland v. Armstrong Int'l, Inc.*, 2012 WL 7761487, *1 n.1 (E.D. Pa. Nov. 30, 2012) ("[T]he applicable Alabama statute of limitations bars claims arising from asbestos exposure occurring prior to May 19, 1979. Therefore, these claims are[] barred."). Plaintiff identifies no facts that might support a finding that the packing and gaskets on Durco pumps at Alabama River Pulp were first replaced <u>after</u> May 19, 1979.

Pulp employees. The idea is that Flowserve "specif[ied] particular gaskets and packing for use" (doc. 312, at 28), and is therefore culpable for any asbestos exposure to Morgan arising from such specifications. Setting aside the legal merit of that contention, the facts simply do not support it. The only evidence cited by plaintiff for such a proposition is general testimony that "every manufacturer has the recommended spare parts in their OEM manuals that the store room would generate their list of in-stock inventory that they would have." (Ronald Melvin Morgan Dep., at 101.) Plaintiff identifies no evidence whatsoever that (i) Flowserve provided such a manual to Alabama River Pulp in connection with Durco pumps; (ii) if so, what types of replacement packing and gaskets were recommended therein; (iii) whether those recommended replacement components did or did not contain asbestos; and (iv) whether Alabama River Pulp adhered to those recommendations in ordering and stocking replacement packing and gaskets for Durco pumps during the relevant time period. Without such a factual predicate, plaintiff's theory that Flowserve is liable because its recommendations caused Alabama River Pulp to use asbestos-containing replacement packing in conjunction with Durco pumps amounts to mere conjecture that cannot defeat Flowserve's Rule 56 motion.

### IV. Conclusion.

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citation omitted). This record, taken as a whole, could not lead a rational trier of fact to find that Morgan was ever exposed to asbestos from a product that Flowserve manufactured, sold, distributed, or otherwise placed in the stream of commerce. Morgan worked around and in close proximity to pumps manufactured by Flowserve. Those pumps were bare metal. Plaintiff has adduced no evidence that they were defective. They did not emit asbestos dust or fibers. To be sure, installed in or with those pumps were packing and (perhaps) gaskets that potentially contained asbestos and produced dust to which Morgan was exposed in his capacity as pump shop foreman after August 1979. The pumps' mere compatibility for use with asbestos-containing components is not a design defect. Moreover, aside from OEM components to which Morgan appears never to have been exposed, Flowserve was not involved in the chain of distribution for those packing and gasket materials, all of which were manufactured and sold by third parties. Under *Sanders* and other Alabama authority, as well as the reasonable prediction that the Alabama Supreme Court would adopt the majority rule

and extend *Sanders* principles to embrace the so-called "bare metal defense," the Court concludes that Flowserve owed no duty to warn under Alabama law for asbestos exposures from packing and gaskets that Flowserve did not manufacture, sell, distribute or otherwise place in the stream of commerce.  Absent a causal nexus between Flowserve's products (*i.e.*, the Durco pumps) and Morgan's injuries and death, plaintiff's claims against this defendant fail, as a matter of law.  Plaintiff offers nothing more than conjecture and speculation to create such a nexus.  That is not enough.

For all of the foregoing reasons, the Court finds that there are no genuine issues of material fact, and that movant is entitled to judgment as a matter of law.  Defendant Flowserve Corporation's Motion for Summary Judgment (doc. 272) is **granted**, and plaintiff's claims against that defendant are **dismissed with prejudice**.  The Clerk of Court is directed to **terminate** Flowserve as a party defendant.

DONE and ORDERED this 30th day of August, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE