IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

RONALD MELVIN MORGAN, )
as Personal Representative for the Estate )
of Rueben Morgan, )
 )
    Plaintiff, )
 )
v. ) CIVIL ACTION 11-0535-WS-B
 )
BILL VANN COMPANY, INC., *et al.*, )
 )
    Defendants. )

## ORDER

This matter comes before the Court on defendant The Gorman-Rupp Company's Motion for Summary Judgment (doc. 275). The Motion has been briefed and is ripe for disposition.[1]

**I. Relevant Background.**

This is an asbestos action pending against 11 defendants,[2] alleging various state-law tort claims and a wrongful death cause of action based on the alleged exposure of plaintiff's decedent, Rueben Morgan, to asbestos-containing products at various times and locations. Morgan was diagnosed with malignant mesothelioma (a disease commonly linked to asbestos exposure) in or about February 2011. (Doc. 199, at Exh. A.) He died on or about November 5, 2012, at the age of 79. (Doc. 206, at Exh. A.)

---

[1] Gorman-Rupp requested oral argument on its Motion. The Local Rules authorize such requests, but also provide that "the court may in its discretion rule on any motion without oral argument." LR 7.3. After careful review of the parties' briefs and exhibits, the undersigned finds that oral argument is unlikely to be beneficial in resolving the issues raised on summary judgment. Accordingly, the request for oral argument is **denied**.

[2] Initially, there were numerous other named defendants; however, the ranks of defendants have dwindled as a result of settlements and voluntary dismissals. All 11 remaining defendants have pending, ripe summary judgment motions that have been taken under submission.

On May 4, 2011, less than three months after his diagnosis, Morgan initiated this litigation against 42 named defendants (including Gorman-Rupp). Morgan's pleadings alleged that he "was exposed to asbestos dust, asbestos particles, asbestos containing materials and products that were produced, manufactured, specified for use, installed, distributed, sold and/or placed into the stream of commerce by the producer and/or distributor Defendants during his employment as a machinist, engine room worker, and mechanic," as a result of which he was "diagnosed with an asbestos related disease." (Doc. 1, Exh. A-2, at 6.) On July 29, 2011, Morgan amended his Complaint to name certain additional defendants. (Doc. 4, Exh. B, at 1.)

Record facts concerning Morgan's interactions with Gorman-Rupp products are as follows:[3] From 1978 through 1992, Morgan worked at the Alabama River Pulp paper mill. (Morgan Dep. I, at 95-96.)[4] Initially, Morgan helped with construction of the mill, including installation of pumps and boiler couplings. (*Id.* at 97.) For approximately his first year at Alabama River Pulp, Morgan worked as a machinist. (Morgan Dep. IV, at 123-24.) On August 1, 1979, he was promoted to the position of foreman of the mill's machine shop, after which he no longer did "hands-on" maintenance work, but closely supervised others. (*Id.* at 124.) Morgan also set up and supervised the pump shop at Alabama River Pulp. (Morgan Dep. I, at 99; Morgan Dep. III, at 74.) In this supervisory role, Morgan was present in the machine and pump shops "every day and seen what was done and particularly in the tearing down and making sure

---

[3] The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Plaintiff's evidence is taken as true and all justifiable inferences are drawn in his favor. Federal courts cannot weigh credibility at the summary judgment stage. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices."). Thus, the Court will "make no credibility determinations or choose between conflicting testimony, but instead accept Plaintiff's version of the facts drawing all justifiable inferences in Plaintiff's favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

[4] Morgan's deposition was taken multiple times in this case, including discovery depositions taken on August 16, 2011 and August 25, 2011, and trial depositions taken on September 2 and 8, 2011. For purposes of this Order, citations to Morgan's August 16 deposition will take the form "Morgan Dep. I," while citations to the August 25 deposition will take the form "Morgan Dep. II," those to the September 2 deposition will take the form "Morgan Dep. III," and those to the September 8 deposition will take the form "Morgan Dep. IV."

it's cleaned up right when it went back together." (Morgan Dep. II, at 163.) Although he did not perform hands-on work on the pumps, Morgan testified, "I got these eyeballs down there and I run these fingers around things and then when it was being cleaned up, I've got to breathe about as much dust and dirt as [the hands-on workers] did." (*Id.* at 165.)[5]

Morgan recalled there being one Gorman-Rupp pump at the Alabama River Pulp facility. (Morgan Dep. I, at 98; Morgan Dep. IV, at 119.) Morgan did not remember any other pumps manufactured by Gorman-Rupp at that site. (Morgan Dep. II, at 364.) This singular Gorman-Rupp pump "had to do with the effluent or sewage, and it was a positive displacement pump." (Morgan Dep. I, at 98-99.) The function of this pump was "taking solids … out of the sewers," which was a "rough service" that resulted in the equipment requiring attention in the pump shop "pretty often." (Morgan Dep. IV, at 175.) During the time that Morgan was supervising the pump shop, he was present in a supervisory capacity when that pump's rotating element was overhauled on multiple occasions. (Morgan Dep. I, at 99.) The Gorman-Rupp pump had asbestos packing material and gaskets. (*Id.*; Morgan Dep. IV, at 175.)[6]

More specifically, the Gorman-Rupp pump utilized sheet asbestos for gaskets and "braided asbestos packing for packing and stuffing box … around the shaft of the pump." (Morgan Dep. IV, at 176.) The process of changing out the asbestos packing and gaskets, which had to be done periodically in the pump shop, created dust. (*Id.* at 171-73.) In the case of the Gorman-Rupp pump, the amount of asbestos dust generated was "a lot" because that machine

---

[5] Morgan reinforced these points by testifying that he "looked in to every job that was being … performed. And all the pumps, … whatever was being done to them, I wanted to know what it was. I wanted to know what kind of condition they were when they come in, plus, you know, see it. … I wanted to see it for myself. And a lot of times I put my hands on it just to feel it. And the same thing with the machine work. I went by every job to see … what was going on." (Morgan Dep. III, at 231.) As for the daily clean-up process in Alabama River Pulp's machine and pump shops, Morgan explained that at the end of each day, the crew would "air hose things off, and then sweep it up," including "dirt and dust and what asbestos was there in the dirt and dust." (*Id.* at 232.)

[6] In that regard, Gorman-Rupp indicated in written discovery responses in other mesothelioma litigation that it is "in the business of the design and manufacture of pumps and pumping systems. Some pumps incorporated asbestos gaskets and/or packing, which were purchased from vendors. The particular Gorman-Rupp pumps with asbestos-containing packing and/or gaskets were offered until the mid-1980s." (Doc. 314-7, at 2.)

was a "good size pump." (*Id.* at 176.) Because of his supervisory position in the pump shop and diligent approach to his duties, Morgan was exposed to and breathed in that dust each time the Gorman-Rupp pump was brought in for service, which was no more than once every 90 days from 1978 to 1992. (*Id.* at 176-77.) To the best of Morgan's recollection, the packing and gaskets that Alabama River Pulp used with the Gorman-Rupp pump were manufactured by another company, A.W. Chesterton; however, Morgan testified that he did not know which distributors or supply houses provided the gaskets and packing used at the Alabama River Pulp mill. (Morgan Dep. I, at 99-100.) Morgan acknowledged that he had no evidence that the pump manufacturer supplied replacement packing. (Morgan Dep. IV, at 70.)

Significantly, the record in the light most favorable to plaintiff confirms that the Gorman-Rupp pump at the Alabama River Pulp facility was not made of asbestos and did not have exterior asbestos.[7] According to Morgan, the Gorman-Rupp pump was made of cast iron, with stainless steel internals. (Morgan Dep. IV, at 120.) Morgan professed to know nothing about who installed that pump, nor did he possess information about the pump's original components. (*Id.* at 121.) Morgan's son, Ronald Melvin Morgan, likewise testified that he did not know when Morgan or the pump shop might have repaired or worked on the Gorman-Rupp pump. (Ronald Melvin Morgan Dep., at 338-39.) Nor did Morgan's son know whether his father was present on the first occasion when Alabama River Pulp employees replaced the packing and gaskets on the Gorman-Rupp pump. (*Id.* at 104-05.) The record reflects that, generally speaking, "when you pull an old gasket out of a line or if you pull an old packing out of a valve or a pump, there's no way you can tell who made it." (*Id.* at 339-40.)

## II. Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact

---

[7] As a general proposition, when asked whether the actual pumps at Alabama River Pulp contained asbestos, Morgan responded, "No." (Morgan Dep. II, at 350.) When asked whether the asbestos dust he encountered during the maintenance and repair of pumps at Alabama River Pulp was from the packing or the pump itself, Morgan responded, "Well, it would have to be from the packing, you know." (*Id.* at 351.)

that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

### III. Analysis.

Although Gorman-Rupp's Motion for Summary Judgment raises a number of legal and factual arguments, the Court need only examine one, to-wit: movant's invocation of the so-called "bare metal defense." The factual premise of this argument is that "[t]here is no substantial evidence that the Plaintiff was exposed to any asbestos-containing product manufactured or distributed by Defendant The Gorman-Rupp Company" (doc. 275, at 1), because the only Gorman-Rupp product to which Morgan was exposed was a cast iron pump. In other words, defendant's position is that plaintiff cannot show that Morgan "worked with or in direct proximity to any original asbestos-containing component in this pump." (Doc. 347, at 7.) The legal premise of this argument is that a manufacturer of "bare metal" is not liable for other manufacturers' asbestos-containing components used in connection with that bare metal.[8]

---

[8] Although Gorman-Rupp's initial Rule 56 Motion and brief alluded to this premise in general terms, movant did not specifically invoke or develop the bare metal defense until its reply brief. (*Compare* doc. 275 *with* doc. 347.) Ordinarily, that sequence of events would disqualify the bare metal defense from consideration at this time, because ordinarily federal courts do not consider arguments presented for the first time in reply briefs. *See, e.g., Windham v. City of Fairhope*, 2013 WL 1679355, *8 n.13 (S.D. Ala. Apr. 16, 2013) ("federal courts generally do not consider new, previously available arguments unveiled in reply briefs"); *Gross-Jones v. Mercy Medical*, 874 F. Supp.2d 1319, 1330 n.8 (S.D. Ala. 2012) ("District courts, (Continued)

### A. Is the Bare Metal Defense Cognizable Under Alabama Law?

Many jurisdictions have embraced some form of this bare metal defense in the asbestos context. *See, e.g., Lindstrom v. A-C Product Liability Trust*, 424 F.3d 488, 495 (6th Cir. 2005) (affirming grant of summary judgment for manufacturer of valves that used asbestos packing materials and gaskets, where defendant did not provide replacement packing or gaskets, such that "any asbestos that [defendant] may have been exposed to in connection with a Henry Vogt product would be attributable to some other manufacturer," and "Henry Vogt cannot be held responsible for material 'attached or connected' to its product"); *Faddish v. Buffalo Pumps*, 881 F. Supp.2d 1361, 1372 (S.D. Fla. 2012) ("A number of state courts … have concluded that a defendant manufacturer is not liable for a third party's asbestos-containing products when the defendant is not within the 'chain of distribution' of the asbestos product. … Predicting that the Florida Supreme Court would follow this trend, this court likewise concludes that the defendant 'bare metal' suppliers cannot be liable for a third party's asbestos containing products under the facts presented in this case."); *Conner v. Alfa Laval, Inc.*, 842 Supp.2d 791, 801 (E.D. Pa. 2012) (collecting cases and holding that "under maritime law, a manufacturer is not liable for harm caused by, and owes no duty to warn of the hazards inherent in, asbestos products that the manufacturer did not manufacture or distribute," such that defendants who made products that used asbestos insulation, gaskets and packing could not be held liable when they did not manufacture or distribute the asbestos products themselves); *Surre v. Foster Wheeler LLC*, 831 F. Supp.2d 797, 801-02 (S.D.N.Y. 2011) (granting summary judgment to manufacturer of boilers in asbestos case, where "Crane did not manufacture or place into the stream of commerce the

---

including this one, ordinarily do not consider arguments raised for the first time on reply."). In this case, however, the Court will consider Gorman-Rupp's "bare metal" argument because several co-defendant pump manufacturers raised precisely the same arguments in their principal briefs (and Gorman-Rupp alluded to it), such that plaintiff was on notice that this issue was in play for all pump manufacturer defendants. Moreover, the record does not reveal that Gorman-Rupp is materially differently situated than any other pump manufacturer from a factual or legal standpoint with regard to application of this defense. And plaintiff could have asked for leave to file a sur-reply to address Gorman Rupp's iteration of the bare metal defense, or moved to strike it as untimely presented, but elected to do neither. Under the circumstances, the Court is satisfied that plaintiff has been heard fully on the bare metal defense invoked by Gorman-Rupp, even though movant failed to develop the argument until its reply.

asbestos to which Surre was exposed," "there is no evidence that Pacific boilers required asbestos insulation to function," and "there is no evidence that Crane played any role in choosing the type of insulation Surre applied"); *O'Neil v. Crane Co.*, 266 P.3d 987, 996-97 (Cal. 2012) (rejecting claim that pump manufacturers were liable for asbestos packing and gaskets used by customer where "it is undisputed that O'Neil was exposed to *no* asbestos from a product made by the defendants," "there was no evidence that defendants' products *required* asbestos-containing gaskets or packing in order to function," and "[t]he defective product in this setting was the asbestos insulation, not the pumps and valves to which it was applied after defendants' manufacture and delivery"); *Braaten v. Saberhagen Holdings*, 198 P.3d 493, 502 (Wash. 2008) ("Because we have held … that there is no duty to warn of the dangers of other manufacturers' asbestos products, we also conclude that there was no duty to warn with respect to replacement packing and gaskets. … [T]hese manufacturers should not be held liable for harm caused by asbestos-containing material included in their products postmanufacture.").

The parties agree that the substantive law of Alabama governs here. Alabama appellate courts have not unequivocally resolved the question of whether the bare metal defense is available in asbestos cases under state law. *See Holland v. Armstrong Int'l, Inc.*, 2012 WL 7761422, *1 n.1 (E.D. Pa. Nov. 28, 2012) ("The Court has reviewed the caselaw cited by the parties and has determined that Alabama law on this issue is not settled.").[9] Accordingly, this Court is tasked with predicting how the Alabama Supreme Court would decide the issue. *See,*

---

[9] That said, Gorman-Rupp has cited an on-point unpublished opinion from the Circuit Court of Mobile County, Alabama, styled *Robert Patrick, et al. v. Ametek, Inc., et al.* and dated April 19, 2011. (Doc. 272, Exh. G.) The *Patrick* decision, authored by Circuit Judge Joseph S. Johnston, applies Alabama law to the same circumstances presented here (*i.e.*, whether a manufacturer of bare-metal pumps may be held liable for asbestos-containing components made and supplied by third parties). Judge Johnston found that, under Alabama law, "a manufacturer of a non-defective product cannot be held liable for a defective product subsequently associated with that product which it did not manufacture or supply." (*Id.* at 6.) He adopted the legal principle articulated in other jurisdictions that "[s]ince this defendant did not manufacture or market the asbestos-containing material nor did it have control over the type of materials selected, it was not liable." (*Id.* at 8.) The *Patrick* order concluded that "[b]ecause the Plaintiffs have failed to meet the threshold requirement of showing … that the Plaintiff worked with an asbestos-containing product manufactured, sold, distributed or otherwise placed in the stream of commerce by FLOWSERVE, Plaintiffs have failed to establish the requisite causal nexus between such products and Mr. Patrick's injury." (*Id.* at 9.)

-7-

*e.g., State Farm Mut. Auto. Ins. Co. v. Duckworth*, 648 F.3d 1216, 1224 (11th Cir. 2011) ("Where, as here, we find no [state] Supreme Court decision directly on point, we must anticipate how the [state] Supreme Court would decide this case."); *Clark v. Riley*, 595 F.3d 1258, 1264 (11th Cir. 2010) ("In rendering a decision based on state substantive law, a federal court must decide the case the way it appears the state's highest court would.") (citations and internal quotation marks omitted).

Fortunately, Alabama case law does provide helpful guidance to inform such a prediction. In particular, the Alabama Supreme Court has held "that a distributor or manufacturer of a nondefective component is not liable for defects in a product that it did not manufacture, sell, or otherwise place in the stream of commerce." *Sanders v. Ingram Equipment, Inc.*, 531 So.2d 879, 880 (Ala. 1988); *see also Brest v. Chrysler Corp.*, 939 F. Supp. 843, 848 (M.D. Ala. 1996) ("Under *Sanders*, it is well established in Alabama that a manufacturer can only be held liable for defects in the products that it manufactured, sold, or otherwise placed in the stream of commerce."). Moreover, the Eleventh Circuit interpreted Alabama law in analogous circumstances in *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465 (11th Cir. 1993). In that case, the plaintiff's decedent was killed while mounting a Goodyear tire on a multi-piece rim for which the tire had been specifically designed. The plaintiff's evidence was that a defect in the rim (which was manufactured by a third party), not the tire, caused the accident. Relying on *Sanders* for the proposition that the manufacturer of a non-defective component cannot be held liable for injuries caused by a product that it did not manufacture, sell, or otherwise place in the stream of commerce, the Eleventh Circuit concluded that "Goodyear would have no duty to give a warning concerning a mismatched or defective rim manufactured by [someone else]." *Id.* at 472. *Sanders* and *Reynolds* strongly suggest that Alabama courts would follow the majority rule as set forth in *Conner*, *O'Neil* and the other authorities cited *supra*.

Plaintiff's position is that Alabama law would impose a duty to warn on Gorman-Rupp in this context. As an initial matter, plaintiff does not and cannot challenge the well-settled principle that, under Alabama products-liability law, "a defect in the product must be affirmatively shown" by the plaintiff. *Tanksley v. ProSoft Automation, Inc.*, 982 So.2d 1046, 1051 (Ala. 2007) (citations omitted). Rather, plaintiff's principal argument against the pump manufacturers is that Alabama River Pulp's use of dangerous asbestos-containing packing and

-8-

gaskets with those pumps was a foreseeable modification or alteration of the product which does not relieve the pump makers of responsibility for the resulting defect (*i.e.*, components that released respirable asbestos dust when replaced). *See generally Sears, Roebuck and Co. v. Harris*, 630 So.2d 1018, 1027 (Ala. 1993) (explaining that "the mere fact that a product has been altered or modified does not necessarily relieve the manufacturer or seller of liability" and that a manufacturer remains liable "if the alteration or modification was reasonably foreseeable" to it). Plaintiff's theory, then, is that Alabama River Pulp's use of asbestos-containing packing and gasket materials was a foreseeable modification to its pumps, for which Gorman-Rupp owed a duty to warn under Alabama law, and that this Court therefore should not apply the "bare metal defense" doctrine.

There is an obvious tension between the *Sanders* tenet that a manufacturer is not liable for defects in a product that it did not place in the stream of commerce, on the one hand, and the *Sears* ruling that a manufacturer is liable for alterations to its product that are reasonably foreseeable, on the other. If the alteration giving rise to liability under *Sears* is the addition of a component part that the defendant manufacturer did not place in the stream of commerce (and for which *Sanders* would preclude liability), then does the *Sanders* rule or the *Sears* rule control? Fortunately, the Alabama Supreme Court answered this question in *Hannah v. Gregg, Bland & Berry, Inc.*, 840 So.2d 839 (Ala. 2002). In *Hannah*, the plaintiff's decedent was killed in a workplace accident involving machines whose electrical controls included control panels provided by Westinghouse. The plant operator modified the Westinghouse control panels by adding additional buttons. Plaintiff's theory was that the accident's cause was a worker pressing the wrong button on the Westinghouse control panel. When plaintiff sued under the AEMLD, Westinghouse argued that it was entitled to summary judgment under *Sanders* because the defects in the industrial machines were unrelated to the control panel it supplied. The *Hannah* Court rejected this argument, reasoning that (i) plaintiff's theory was that the Westinghouse controls themselves were defective because they omitted safety devices, and (ii) "*Sanders* is inapplicable when the plaintiff seeks to recover based upon the theory that the product supplied by the defendant is itself defective." *Id.* at 855. So *Hannah* teaches that if a manufacturer is sued for defects in its own product (rather than for defects in some third party's component part used with that product), then *Sanders* does not preclude liability under Alabama law.

-9-

Considering all of the foregoing authorities in the aggregate, the Court concludes that (i) the prevailing majority rule in other jurisdictions is to recognize the "bare metal defense" (under which a pump manufacturer such as Gorman-Rupp cannot be liable for a third party's asbestos materials used with its products, where the pump manufacturer was not in the chain of distribution of such asbestos-containing materials); (ii) the trend in other jurisdictions favors adoption of that defense for sound and even compelling policy reasons;[10] (iii) that defense is a logical outgrowth and application of Alabama law as summarized in *Sanders*, *Hannah*, *Reynolds* and *Brest*; and (iv) at least one trial court in Alabama has expressly adopted the defense and concluded that a pump defendant has no liability under Alabama law for third-party asbestos-containing gaskets and packing. In light of this survey of applicable law, the undersigned is of the opinion that the Alabama Supreme Court would adopt the bare metal defense as a modest extension and application of the rule in *Sanders*, subject to the *Hannah* caveat that the defense is inapplicable if the defendant is being sued for defects in its own product. Neither plaintiff nor defendant identifies serious grounds for disagreement with this assessment of how the Alabama Supreme Court would resolve the issue; therefore, the Court's analysis of Gorman-Rupp's Rule 56 Motion will proceed in accordance with that forecast.

---

[10] As one court explained, "Where, as here, the defendant manufacturer did not incorporate the defective component into its finished product and did not place the defective component into the stream of commerce, the rationale for imposing liability is no longer present. The manufacturer has not had an opportunity to test, evaluate, and inspect the component; it has derived no benefit from its sale; and it has not represented to the public that the component part is its own." *O'Neil*, 266 P.3d at 998-99 (citations omitted); *see also Faddish*, 881 F. Supp.2d at 1373-74 (justification for products liability is "to encourage manufacturer accountability and to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather tha[n] by the injured persons who are powerless to defend themselves," but those interests are inapplicable for a defendant "who had no control over the type of insulation the [end user] would choose and derived no revenue from sale of asbestos-containing products used" at that facility) (citations and internal quotation marks omitted); *Conner*, 842 F. Supp.2d at 800-01 (observing that "products-liability theories rely on the principle that a party in the chain of distribution of a harm-causing product should be liable because that party is in the best position to absorb the costs of liability into the cost of production," but that "this policy weighs against holding manufacturers liable for harm caused by asbestos products they did not manufacture or distribute because those manufacturers cannot account for the costs of liability created by the third parties' products").

### B. Application of Bare Metal Defense to Record Facts.

In the light most favorable to plaintiff, the record reflects that there was a single Gorman-Rupp pump in use at the Alabama River Pulp mill throughout the period of Morgan's employment. That pump was used with replaceable asbestos packing and gasket component parts, which Gorman-Rupp did not manufacture; rather, such asbestos-containing materials were purchased from third-party vendors. There is no evidence that the Gorman-Rupp pump was shipped to Alabama River Pulp with asbestos-containing components already installed (as opposed to Alabama River Pulp obtaining those materials from a third party and installing them itself). There is no evidence that Morgan ever handled, dealt with, or was exposed to any original asbestos-containing materials that may have been shipped by Gorman-Rupp to Alabama River Pulp with the pump.[11] There is no evidence that Gorman-Rupp imposed any requirements or even recommendations for Alabama River Pulp regarding what replacement packing and gaskets should be used. There is no evidence that Gorman-Rupp supplied or distributed replacement packing and gaskets to Alabama River Pulp to use with its pump. Morgan testified that A.W. Chesterton packing and/or gaskets were used with the Gorman-Rupp pump, but he indicated that he did not know which distributor or supply house might have sent those products to Alabama River Pulp.

At the root of his claims, plaintiff seeks to hold Gorman-Rupp liable because the process of replacing packing and gaskets on the Gorman-Rupp pump at Alabama River Pulp produced asbestos dust, which Morgan breathed because he worked as foreman in the pump room in close proximity to the workers tearing out the old material. Plaintiff's theory is that the dust from these packings and gaskets substantially caused or contributed to Morgan's contraction of malignant mesothelioma. Obviously, no asbestos dust or fibers emanated from Gorman-Rupp's cast-iron pump itself; rather, by Morgan's own reckoning, any dust encountered in the process of replacing packing or gaskets would come from the packing or gaskets, not from the pump. In the absence of evidence that (i) Gorman-Rupp shipped asbestos-containing materials to Alabama River Pulp with its pump, (ii) Morgan was present when those original asbestos packing and

---

[11] On this point, Morgan's testimony was clear that he did not "know anything about who installed that Gorman-Rupp pump," nor did he "know anything about the original components with the Gorman-Rupp pump." (Morgan Dep. IV, at 121.)

gaskets were replaced, and/or (iii) Gorman-Rupp supplied replacement packing and gaskets to Alabama River Pulp for use with its pump, any asbestos dust to which Morgan was exposed in connection with the pump shop's maintenance of the Gorman-Rupp pump would not be attributable to Gorman-Rupp, but would instead be solely the result of a third party's components, for which Gorman-Rupp cannot be liable pursuant to the bare metal defense.

It would not save plaintiff's claims to argue that Gorman-Rupp defectively designed its pumps to require asbestos-containing components. After, all, the record is devoid of evidence that the Gorman-Rupp pump in use at Alabama River Pulp required asbestos-containing packing and gaskets, or that it would not function properly unless the packing and gaskets were made of asbestos, to the exclusion of other kinds of materials. Of course, speculation and conjecture are not valid grounds for denying summary judgment relief.[12] Thus, to the extent that plaintiff seeks to hold Gorman-Rupp liable on a defective design theory, that theory cannot withstand Rule 56 scrutiny. Mere compatibility of a Gorman-Rupp pump with asbestos-containing components is not a design defect. *See O'Neil*, 266 P.3d at 298-99 ("[N]o evidence showed that the design of defendants' products required the use of asbestos components, and their mere compatibility for use with such components is not enough to render them defective.").

There being no record basis for a defective design claim against Gorman-Rupp and plaintiff not having delineated any other ground for his claim that the pump itself was defective, the claims against Gorman-Rupp lie outside the *Hannah* caveat (*i.e.*, that a manufacturer may be held liable, notwithstanding *Sanders*, when the plaintiff pursues claims that the defendant's product is itself defective). Plaintiff seeks to hold Gorman-Rupp liable not because its pump was defective, but because Alabama River Pulp installed asbestos packing and gaskets in that pump. The packing and gaskets, not the pump, were the defect. But Gorman-Rupp neither manufactured said components nor placed them in the stream of commerce. The clear thrust of

---

[12] "Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted); *see also Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("A 'mere scintilla' of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment."). Simply put, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citation omitted).

the bare metal defense is that a manufacturer cannot be held liable for asbestos-containing products used in conjunction with its bare metal pumps, absent evidence that the manufacturer was part of the chain of distribution for those products. Accordingly, to the extent that plaintiff would predicate liability on a theory that Gorman-Rupp failed to warn of the dangers presented by these component parts despite knowledge that end users might foreseeably replace packing and gaskets supplied with its pumps with comparable asbestos-containing components, such claims would fail as a matter of law. Under the bare metal defense, Gorman-Rupp is not liable for harm caused by, and owed no duty to warn Morgan or anyone else concerning the hazards of, asbestos-containing packing and gaskets that users of its pumps might install, absent a showing that Gorman-Rupp manufactured, sold or distributed such asbestos-containing components.[13]

## IV. Conclusion.

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citation omitted). This record, taken as a whole, could not lead a rational trier of fact to find that Morgan was ever exposed to asbestos from a product that Gorman-Rupp manufactured, sold, distributed, or otherwise placed in the stream of commerce. Morgan worked around and in close proximity to a cast-iron pump manufactured by Gorman-Rupp. That pump was bare metal. Plaintiff has adduced no evidence that it was defective. That

---

[13] *See Lindstrom*, 424 F.3d at 497 (asbestos defendant "cannot be held responsible for asbestos-containing material that … was incorporated into its product post-manufacture"); *Faddish*, 881 F. Supp.2d at 1371 ("a manufacturer's duty to warn, whether premised in negligence or strict liability theory, generally does not extend to hazards arising exclusively from *other* manufacturer's products, regardless of the foreseeability of the combined use and attendant risk"); *Surre*, 831 F. Supp.2d at 801-02 (boiler manufacturer owed no duty to warn, as a matter of law, where defendant did not manufacture or place into stream of commerce the asbestos to which plaintiff was exposed, there was no evidence that boilers required asbestos insulation to function, and record did not show that defendant played role in end user's decision to utilize asbestos insulation); *O'Neil*, 266 P.3d at 998 ("[N]o case law … supports the idea that a manufacturer, after selling a completed product to a purchaser, remains under a duty to warn the purchaser of potentially defective additional pieces of equipment that the purchaser may or may not use to complement the product bought from the manufacturer.") (citation omitted); *Braaten*, 198 P.2d at 385 ("a manufacturer is not liable for failure to warn of the danger of exposure to asbestos in insulation applied to its products if it did not manufacture the insulation and was not in the chain of distribution of the insulation," and "[i]t makes no difference whether the manufacturer knew its products would be used in conjunction with asbestos insulation").

pump did not emit asbestos dust or fibers.  To be sure, Alabama River Pulp installed packing and gaskets in that pump that contained asbestos and produced dust to which Morgan was exposed in his capacity as pump shop foreman after August 1979.  The pump's mere compatibility for use with asbestos-containing components is not a design defect.  There is no evidence that Gorman-Rupp shipped its pump to Alabama River Pulp with pre-installed asbestos packing and gaskets.  Even if there were, the record is devoid of evidence that Morgan was ever exposed to these original packing and gaskets in the Gorman-Rupp pump.  Moreover, there is no evidence that Gorman-Rupp was involved in the chain of distribution for replacement packing and gasket materials, all of which were manufactured and sold by third parties.  Under *Sanders* and other Alabama authority, as well as the reasonable prediction that the Alabama Supreme Court would adopt the majority rule and extend *Sanders* principles to embrace the so-called "bare metal defense," the Court concludes that Gorman-Rupp owed no duty to warn under Alabama law for asbestos exposures from packing and gaskets that it did not manufacture, sell, distribute or otherwise place in the stream of commerce.  Absent a causal nexus between Gorman-Rupp's product (*i.e.*, the pump) and Morgan's injuries and death, plaintiff's claims against this defendant fail, as a matter of law.  Plaintiff offers nothing more than conjecture and speculation to create such a nexus.  That is not enough.

For all of the foregoing reasons, the Court finds that there are no genuine issues of material fact, and that movant is entitled to judgment as a matter of law.  Defendant The Gorman-Rupp Company's Motion for Summary Judgment (doc. 275) is **granted**, and plaintiff's claims against that defendant are **dismissed with prejudice**.  The Clerk of Court is directed to **terminate** Gorman-Rupp as a party defendant.

DONE and ORDERED this 30th day of August, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE