**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **RONALD MELVIN MORGAN,** | ) | |
| **as Personal Representative for the Estate** | ) | |
| **of Rueben Morgan,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 11-0535-WS-B** |
| | ) | |
| **BILL VANN COMPANY, INC.,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

This matter comes before the Court on defendant Warren Pumps, LLC's Motion for Summary Judgment (doc. 267). The Motion has been briefed and is ripe for disposition.[1]

**I.      Relevant Background.**

This is an asbestos action pending against 11 defendants,[2] alleging various state-law tort claims and a wrongful death cause of action based on the alleged exposure of plaintiff's decedent, Rueben Morgan, to asbestos-containing products at various times and locations. Morgan was diagnosed with malignant mesothelioma (a disease commonly linked to asbestos exposure) in or about February 2011. (Doc. 199, at Exh. A.) He died on or about November 5, 2012, at the age of 79. (Doc. 206, at Exh. A.)

---

[1]      Also pending is Warren's Motion for Leave to File Brief in Excess of Page Limitation (doc. 361). Pursuant to Local Rule 7.1(b), reply briefs are not to exceed 15 pages without leave of court. Movant requested a five-page enlargement to respond fully to plaintiff's 47-page brief (doc. 317). For cause shown, the Motion for Leave to File Brief in Excess of Page Limitation is **granted**, and Warren's 20-page Reply (doc. 362) is accepted in its present form.

[2]      Initially, there were numerous other named defendants; however, the ranks of defendants have dwindled as a result of settlements and voluntary dismissals. All 11 remaining defendants have pending, ripe summary judgment motions that have been taken under submission.

On May 4, 2011, less than three months after his diagnosis, Morgan initiated this litigation against 42 named defendants (including Warren). Morgan's pleadings alleged that he "was exposed to asbestos dust, asbestos particles, asbestos containing materials and products that were produced, manufactured, specified for use, installed, distributed, sold and/or placed into the stream of commerce by the producer and/or distributor Defendants during his employment as a machinist, engine room worker, and mechanic," as a result of which he was "diagnosed with an asbestos related disease." (Doc. 1, Exh. A-2, at 6.) On July 29, 2011, Morgan amended his Complaint to name certain additional defendants. (Doc. 4, Exh. B, at 1.)

The record reflects that Warren manufactures pumps, some of which include packing and gasket components. (Doc. 317-8, at 2.) Such gaskets and packing materials "were manufactured and supplied to Warren Pumps by others, and some of them contained encapsulated asbestos fibers." (*Id.*) Warren "did not design, manufacture, or process any 'asbestos products,'" but rather "is a pump manufacturer." (Doc. 317-9, at 3.) Record facts concerning Morgan's interactions with Warren's products are as follows:[3] Morgan testified that Warren pumps were present "on every vessel, Navy and Coast Guard, that [he] was on" in the 1950s and 1960s. (Morgan Dep. III, at 168.)[4] From 1968 to 1972, Morgan was employed as a shop machinist and foreman for Maxwell Construction, during which time he worked with Warren pumps, and installed new asbestos-containing gaskets and packing materials in those machines. (Morgan

---

[3]     The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Plaintiff's evidence is taken as true and all justifiable inferences are drawn in his favor. Federal courts cannot weigh credibility at the summary judgment stage. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices."). Thus, the Court will "make no credibility determinations or choose between conflicting testimony, but instead accept Plaintiff's version of the facts drawing all justifiable inferences in Plaintiff's favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

[4]     Morgan's deposition was taken multiple times in this case, including discovery depositions taken on August 16, 2011 and August 25, 2011, and trial depositions taken on September 2 and 8, 2011. For purposes of this Order, citations to Morgan's August 16 deposition will take the form "Morgan Dep. I," while citations to the August 25 deposition will take the form "Morgan Dep. II," those to the September 2 deposition will take the form "Morgan Dep. III," and those to the September 8 deposition will take the form "Morgan Dep. IV."

Dep. I, at 83-85, 207-08.) Morgan could discern which pumps were Warren's because the company name was "on the name tag or either … the letters were embossed on the housings, and probably both." (Morgan Dep. II, at 343-44.)

Upon leaving Maxwell Construction in 1972, Morgan next worked with Warren pumps during his employment at the Alabama River Pulp paper mill from 1979 to 1992. (Morgan Dep. I, at 199-200.) Initially, Morgan helped with construction of the mill, including installation of pumps and boiler couplings. (Morgan Dep. III, at 97.) For approximately his first year at Alabama River Pulp, Morgan worked as a machinist. (Morgan Dep. IV, at 123-24.) On August 1, 1979, he became foreman of the mill's machine shop, after which he no longer did "hands-on" maintenance work, but closely supervised others. (*Id.* at 124.) Morgan also set up and supervised the pump shop at Alabama River Pulp. (Morgan Dep. I, at 99; Morgan Dep. III, at 74.) In his supervisory role, Morgan was present in the machine and pump shops "every day and seen what was done and particularly in the tearing down and making sure it's cleaned up right when it went back together." (Morgan Dep. II, at 163.) Although he did not perform hands-on work on pumps, Morgan testified, "I got these eyeballs down there and I run these fingers around things and then when it was being cleaned up, I've got to breathe about as much dust and dirt as [the hands-on workers] did." (*Id.* at 165.)[5]

According to Morgan, "Warren had the greatest number of pumps in [Alabama River Pulp] than any other brand name." (Morgan Dep. IV, at 113.) He recalled installing "[b]rand new" Warren pumps at Alabama River Pulp before the mill commenced production. (Morgan Dep. I, at 98, 216-17.) Morgan admitted, however, that he "installed very few of them." (*Id.* at 221.) Warren pumps "were probably in every area of the mill." (*Id.* at 217.) Morgan and his crew were responsible for repacking and changing gaskets on Warren pumps. (*Id.* at 230.) This

---

[5] Morgan reinforced these points by testifying that he "looked in to every job that was being … performed. And all the pumps, … whatever was being done to them, I wanted to know what it was. I wanted to know what kind of condition they were when they come in, plus, you know, see it. … I wanted to see it for myself. And a lot of times I put my hands on it just to feel it. And the same thing with the machine work. I went by every job to see … what was going on." (Morgan Dep. III, at 231.) As for the daily clean-up process in Alabama River Pulp's machine and pump shops, Morgan explained that at the end of each day, the crew would "air hose things off, and then sweep it up," including "dirt and dust and what asbestos was there in the dirt and dust." (*Id.* at 232.)

process would generate asbestos dust in the pump shop, to which Morgan was exposed because these activities would occur in his presence and under his close, direct supervision. (Morgan Dep. III, at 230-31.) As Morgan put it, there "would always be a … good bit of dust in … cleaning up that stuffing box, in particular. And if your gasket is stuck on a flange, that could be a lot of dust too." (*Id.* at 172-73.)[6]

When asked whether the pumps themselves contained asbestos, Morgan responded, "No." (Morgan Dep. II, at 350.) When asked whether the asbestos dust he encountered during the maintenance and repair of pumps was from the packing or the pump itself, Morgan responded, "Well, it would have to be from the packing, you know." (*Id.* at 351.) Morgan acknowledged that it is impossible to tell whether the packing and gaskets being removed from a particular pump are original or replacement components. (Morgan Dep. IV, at 112.) When asked if he knew whether he removed the original packing from Warren pumps, Morgan responded, "No, I wouldn't know. Could have been changed a hundred times." (Morgan Dep. I, at 212.) Morgan acknowledged that packing on Warren pumps would be changed out "fairly often." (*Id.*) With regard to replacing gaskets on Warren pumps, Morgan agreed that "there's no way to tell whether they were the original gaskets," although he also testified about a particular gasket "that would come with the pump." (*Id.* at 231-32.) Morgan did not know which distributors or supply houses supplied the gaskets and packing used at Alabama River Pulp, and he was not involved in ordering or purchasing those items. (*Id.* at 100, 230-31.) As for replacement gaskets, all Morgan knew was that they "would come from a spare part that purchasing had bought from somebody." (*Id.* at 232.)

## II.  Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact

---

[6]     Elsewhere, Morgan elaborated generally on asbestos exposure issues involving Warren pumps arising from rusty stuffing boxes from the packing, which required "scrapers and air tools or electric tools or a little buffing wheel on it to clean it up. … But now that's where the dust and the asbestos comes in was cleaning up that stuffing box board and everything else, that and the gasket seats." (Morgan Dep. II, at 350-51.)

that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

## III.    Analysis.

Warren's Motion for Summary Judgment raises a number of legal challenges to plaintiff's claims. Two of these issues loom large. First, Warren asserts that, to the extent plaintiff's claims relate to alleged exposures to its asbestos-containing products that predate 1979, such claims are time-barred under Alabama law. Second, Warren invokes the so-called "bare metal defense," by arguing that "Morgan can only offer speculation and conjecture that Warren manufactured, sold, supplied or otherwise placed into the stream of commerce any asbestos-containing component to which he alleges exposure." (Doc. 267-1, at 18.) Each of these contentions will be addressed in turn.

### A.    *Morgan's Pre-1979 Exposure to Warren Products.*

The parties' briefs address in some detail evidence that Morgan encountered Warren pumps during his employment with the U.S. Navy from 1950-1954, the U.S. Coast Guard from 1959-1963, and Maxwell Construction Company from 1968-1972. To the extent that plaintiff would predicate Warren's liability on these exposures, however, his claims suffer from an insuperable legal defect. Under well-established, unambiguous Alabama law, any claims against Warren for exposure to asbestos during the period from 1950 to May 1979 are time-barred by the applicable Alabama limitations period. *See* Ala. Code § 6-2-38(*l*) ("All actions for any injury to

the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years.").[7]

Historically, Alabama applied a "last exposure rule" governing commencement of the limitations period for claims alleging personal injuries resulting from exposure to a harmful substance, regardless of when those injuries were manifested.  *See Garrett v. Raytheon Co.*, 368 So.2d 516, 521 (Ala. 1979) ("[W]e hold that the statute of limitations … began to run when plaintiff was last exposed to radiation and plaintiff's ignorance of the tort or injury, there being no fraudulent concealment, does not postpone the running of the statute until the tort or injury is discovered.").  Shortly after *Garrett* was decided, the Alabama legislature stepped in to modify the judge-made accrual rule in the asbestos context, enacting the following provision:  "A civil action for any injury … resulting from exposure to asbestos, including asbestos-containing products, shall be deemed to accrue on the first date the injured party, through reasonable diligence, should have reason to discover the injury giving rise to such civil action."  Ala. Code § 6-2-30(b).  This "discovery rule" for accrual of personal injury claims in asbestos cases took effect on May 19, 1980.  The following year, the Alabama Supreme Court examined the

_____

[7]       Morgan's death on November 25, 2012 and his personal representative's prompt amendment of the pleadings to add a wrongful death claim within the § 6-2-38 period do not alter the timeliness analysis.  To the contrary, Alabama law is clear that if Morgan's personal injury claims were untimely filed, then his personal representative cannot maintain a viable wrongful death cause of action arising from those personal injuries.  *See* Ala. Code § 6-5-410(a) ("A personal representative may commence an action … for the wrongful act, omission, or negligence … whereby the death of the testator or intestate was caused, ***provided the testator or intestate could have commenced an action for the wrongful act, omission, or negligence if it had not caused death***.") (emphasis added).  Stated differently, if Morgan's personal injury claims against Warren for pre-1979 exposure to asbestos are time-barred, then so are the wrongful death claims relating to those injuries.  *See, e.g., Henderson v. MeadWestvaco Corp.*, 23 So.3d 625, 630 (Ala. 2009) (affirming dismissal of asbestos-related wrongful death claim as time-barred under § 6-5-410(a), where decedent's personal injury claims for asbestos exposure accrued in 1972, such that at the time of his death, decedent could not have commenced an action for defendant's wrongful act, omission or negligence if it had not caused death); *In re Asbestos Products Liability Litigation (No. VI)*, 2011 WL 3273296, *3 (E.D. Pa. Apr. 15, 2011) (similar).  Simply put, Alabama law leaves no doubt that "if a *decedent's* cause of action is time-barred at his or her death, then the decedent's personal representative cannot bring a wrongful death action."  *Henderson*, 23 So.3d at 630 (citations omitted).  As such, the crucial issue in the timeliness analysis is whether Morgan's personal injury claims related to asbestos exposure are timely.  If they are not, then the later-filed wrongful death claim necessarily fails pursuant to § 6-5-410(a).

retroactivity of § 6-2-30(b), and held that if, before the effective date of that provision, "one year had elapsed between the date of plaintiff's exposure and the date on which plaintiff's action was commenced, then that claim is nevertheless barred by the statute of limitations." *Tyson v. Johns-Manville Sales Corp.*, 399 So.2d 263, 267 (Ala. 1981). Subject to that important caveat, the *Tyson* Court expressly upheld § 6-2-30(b)'s establishment of "a discovery rule for the accrual of asbestos injury actions in Alabama." *Id.* at 272.

In the three decades since *Tyson* was decided, Alabama courts have consistently hewed to the principle that if a plaintiff's last exposure to a defendant's asbestos-containing product predated May 19, 1979, then the resulting personal injury claims were time-barred before § 6-2-30(b) was ever enacted and cannot be revived by operation of that statute. *See, e.g., Henderson v. MeadWestvaco Corp.*, 23 So.3d 625, 630 (Ala. 2009) (following *Tyson*'s determination that asbestos claims are time-barred if, as of May 19, 1980, one year had elapsed between the date of exposure and date of commencement of suit); *Johnson v. Garlock, Inc.*, 682 So.2d 25, 28 (Ala. 1996) (reaffirming principle that "§ 6-2-30 cannot apply retroactively to actions already barred by the statute of limitations as interpreted and applied in *Garrett*").[8]

The net result, then, is that Alabama has different rules for accrual of personal injury actions relating to asbestos exposure, depending on whether the last exposure occurred prior to May 19, 1979 (in which case the *Garrett* "last exposure rule" governs) or whether the last exposure occurred thereafter (in which case the § 6-2-30(b) "discovery rule" applies).[9] *See In re*

---

[8]    This bright-line rule has been repeatedly acknowledged by MDL courts applying Alabama law in asbestos cases. *See, e.g., Holland v. Armstrong Int'l, Inc.*, 2012 WL 7761487, *1 n.1 (E.D. Pa. Nov. 30, 2012) ("[T]he applicable Alabama statute of limitations bars claims arising from asbestos exposure occurring prior to May 19, 1979. Therefore, these claims are[] barred."); *Legg v. Armstrong Int'l, Inc.*, 2012 WL 7761488, *1 n.1 (E.D. Pa. Nov. 30, 2012) (same); *In re Asbestos*, 2011 WL 3273296, at *3 ("Based on the tenets of *Henderson* and *Tyson*, Mr. Corley's claim of personal injury resulting from asbestos against the moving defendants … would have accrued in 1973, on the date of his last exposure to asbestos in the U.S. Navy. Based on the one-year statute of limitations applicable to personal injury claims in effect at the time of accrual …, his claim was barred in 1974.").

[9]    In 2008, the Alabama Supreme Court overruled *Garrett* and jettisoned the last-exposure rule in all toxic substance exposure cases (§ 6-2-30(b) having been confined on its face to the asbestos context), in favor of a discovery rule under which "a cause of action accrues only when there has occurred a *manifest*, present injury." *Griffin v. Unocal Corp.*, 990 So.2d 291, 293 (Ala. 2008) (citation omitted). Nonetheless, the *Griffin* Court declined to give its holding (Continued)

-7-

*Asbestos Products Liability Litigation (No. VI)*, 2011 WL 3240827, *2 (E.D. Pa. July 29, 2011)
("Under Alabama law, all claims for pre–1979 exposure to asbestos must be filed within one year of the last date of exposure. For any exposure to asbestos after May 17, 1980, the claim accrues upon discovery of an asbestos-related disease.").

As the foregoing discussion demonstrates, any claims relating to Morgan's exposure to Warren's asbestos-containing products during the 1950 – May 1979 time period are time-barred by straightforward application of black-letter Alabama law, as set forth in *Tyson* and its progeny. *See, e.g., Henderson*, 23 So.3d at 630 ("Tony Henderson's claim of personal injury resulting from exposure to asbestos would have accrued in 1972, on the date of his last exposure to asbestos at CAPCO. Based on the one-year statute of limitations applicable to personal injury claims at the time …, his claim was time-barred in 1973.").

Under Alabama law and uncontroverted record facts, Morgan's claims of personal injury resulting from exposure to Warren asbestos-containing products in the U.S. Navy would have accrued in 1954, his claims resulting from exposure in the U.S. Coast Guard would have accrued in 1963, and his claims resulting from exposure at Maxwell Construction would have accrued in 1972, when he was last exposed to such products at each of those workplaces. Based on the one-year statute of limitations applicable at the time, Morgan's claims for these exposures would have become time-barred in 1955, 1964 and 1973, respectively, several decades before he actually sued Warren. By operation of the *Tyson* line of Alabama Supreme Court decisions, those time-barred claims were not revived, revitalized or resuscitated by the Alabama legislature's subsequent enactment of § 6-2-30(b).

In response, plaintiff cites an Alabama Supreme Court decision holding that an asbestos plaintiff "is entitled to recover all damages which proximately flowed from his injury if his

---

broad retroactive effect, declaring instead that "the new accrual rule of toxic-substance-exposure cases will be applied prospectively, except in this case, where it will apply retroactively." *Id.*; *see also Jerkins v. Lincoln Elec. Co.*, 103 So.3d 1, 5 (Ala. 2011) (explaining that *Griffin*'s holding "would apply prospectively only, that is, only to those persons whose last exposure to a toxic substance, and first manifest injury resulting from that exposure, occurred within the two-year period before this Court released its opinion in *Griffin*"). The non-retroactivity of the *Griffin* rule means that it has no application to Morgan's claims for pre-1979 exposure, which accrued under the old *Garrett* rule decades before *Griffin* was decided.

action is brought within the statutory period of limitations." *Cazalas v. Johns-Manville Sales Corp.*, 435 So.2d 55, 57 (Ala. 1983). The fundamental question raised by Warren's summary judgment motion is not whether plaintiff is entitled to damages for asbestos exposures predating May 1979, but whether "his action is brought within the statutory period of limitations" at all; therefore, *Cazalas* is inapposite. Without a post-1979 exposure to Warren asbestos-containing products, plaintiff's claims against this defendant necessarily fail on timeliness grounds. What the measure of damages would be if plaintiff did have any timely claims against Warren is beyond the scope of the summary judgment analysis.

Accordingly, the Court concludes that plaintiff's claims for pre-1979 exposure to asbestos-containing products manufactured or distributed by Warren are not timely under Alabama law; therefore, Warren's Motion for Summary Judgment will be **granted** insofar as it relates to those pre-1979 events and exposures.[10] The point is straightforward: If plaintiff's evidence of Morgan's post-1979 exposure to Warren asbestos is not sufficient to raise an inference of liability, then evidence of pre-1979 exposure cannot be used to revive those otherwise-deficient claims.

### B. Morgan's Post-1979 Exposure to Warren Products.

As indicated *supra*, plaintiff's claims against Warren survive summary judgment only if the record reveals genuine issues of fact as to whether he was exposed to asbestos from that defendant's products after May 19, 1979. Warren posits that this question must be answered in

---

[10] To be sure, plaintiff's response brief urges the Court to apply *Griffin* retroactively (even though the Alabama Supreme Court has steadfastly declined to do so). Plaintiff also filed a separate memorandum of law advocating that "[t]he Alabama Supreme Court should revisit the holding in *Griffin*" and "call[ing] for a re-examination of *Griffin* and the ruling authorizing prospective-only application" of the discovery rule for accrual of toxic tort claims. (Doc. 321, at 18, 21.) Of course, federal courts applying Alabama law must adhere to the clear pronouncements of the Alabama Supreme Court, and do not have the luxury of "revisiting" those holdings or interpreting Alabama law in a manner that deviates from them. *See, e.g., Pietri v. Florida Dep't of Corrections*, 641 F.3d 1276, 1284 (11th Cir. 2011) ("A state supreme court's interpretation of its law is binding on federal courts."); *World Harvest Church, Inc. v. Guideone Mut. Ins. Co.*, 586 F.3d 950, 957 (11th Cir. 2009) ("When we address issues of state law, like the ones in this case, we are bound by the decisions of the state supreme court."). The unbroken line of Alabama Supreme Court decisions running from *Tyson* to *Johnson* to *Griffin* to *Henderson* to *Jerkins* leaves no doubt that, under Alabama law, the last exposure rule continues to govern accrual of personal injury claims for asbestos exposures predating May 19, 1979; therefore, this Court must follow that rule.

the negative because, while Morgan worked in close proximity to Warren pumps being repaired at Alabama River Pulp from 1979 to 1992, any asbestos dust created by those activities came from third-party packing and gaskets, not from Warren's pumps themselves. Plaintiff responds that Warren is legally responsible for asbestos packing and gaskets used in its pumps, no matter who manufactured or distributed those components. This disagreement is, at its core, a dispute about whether Alabama law recognizes the "bare metal defense" in products cases.

> ### 1. Is the Bare Metal Defense Cognizable Under Alabama Law?

Many jurisdictions have embraced some variant of the bare metal defense in the asbestos context. *See, e.g., Lindstrom v. A-C Product Liability Trust*, 424 F.3d 488, 495 (6th Cir. 2005) (affirming grant of summary judgment for manufacturer of valves that used asbestos packing materials and gaskets, where defendant did not provide replacement packing or gaskets, such that "any asbestos that [defendant] may have been exposed to in connection with a Henry Vogt product would be attributable to some other manufacturer," and "Henry Vogt cannot be held responsible for material 'attached or connected' to its product"); *Faddish v. Buffalo Pumps*, 881 F. Supp.2d 1361, 1372 (S.D. Fla. 2012) ("A number of state courts … have concluded that a defendant manufacturer is not liable for a third party's asbestos-containing products when the defendant is not within the 'chain of distribution' of the asbestos product. … Predicting that the Florida Supreme Court would follow this trend, this court likewise concludes that the defendant 'bare metal' suppliers cannot be liable for a third party's asbestos containing products under the facts presented in this case."); *Conner v. Alfa Laval, Inc.*, 842 Supp.2d 791, 801 (E.D. Pa. 2012) (collecting cases and holding that "under maritime law, a manufacturer is not liable for harm caused by, and owes no duty to warn of the hazards inherent in, asbestos products that the manufacturer did not manufacture or distribute," such that defendants who made products that used asbestos insulation, gaskets and packing could not be held liable when they did not manufacture or distribute the asbestos components); *Surre v. Foster Wheeler LLC*, 831 F. Supp.2d 797, 801-02 (S.D.N.Y. 2011) (granting summary judgment to manufacturer of boilers in asbestos case, where "Crane did not manufacture or place into the stream of commerce the asbestos to which Surre was exposed," "there is no evidence that Pacific boilers required asbestos insulation to function," and "there is no evidence that Crane played any role in choosing the type of insulation Surre applied"); *O'Neil v. Crane Co.*, 266 P.3d 987, 996-97 (Cal. 2012) (rejecting claim that pump manufacturers were liable for asbestos packing and gaskets used by

customer where "it is undisputed that O'Neil was exposed to *no* asbestos from a product made by the defendants," "there was no evidence that defendants' products *required* asbestos-containing gaskets or packing in order to function," and "[t]he defective product in this setting was the asbestos insulation, not the pumps and valves to which it was applied after defendants' manufacture and delivery"); *Braaten v. Saberhagen Holdings*, 198 P.3d 493, 502 (Wash. 2008) ("Because we have held … that there is no duty to warn of the dangers of other manufacturers' asbestos products, we also conclude that there was no duty to warn with respect to replacement packing and gaskets. … [T]hese manufacturers should not be held liable for harm caused by asbestos-containing material included in their products postmanufacture.").

The parties agree that the substantive law of Alabama governs here. Alabama appellate courts have not unequivocally resolved the question of whether the bare metal defense is available in asbestos cases under state law. *See Holland v. Armstrong Int'l, Inc.*, 2012 WL 7761422, *1 n.1 (E.D. Pa. Nov. 28, 2012) ("The Court has reviewed the caselaw cited by the parties and has determined that Alabama law on this issue is not settled.").[11] Accordingly, this Court is tasked with predicting how the Alabama Supreme Court would decide the issue. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Duckworth*, 648 F.3d 1216, 1224 (11th Cir. 2011) ("Where, as here, we find no [state] Supreme Court decision directly on point, we must anticipate how the [state] Supreme Court would decide this case."); *Clark v. Riley*, 595 F.3d 1258, 1264 (11th Cir. 2010) ("In rendering a decision based on state substantive law, a federal

---

[11]     That said, movant cites an on-point unpublished opinion from the Circuit Court of Mobile County, Alabama, styled *Robert Patrick, et al. v. Ametek, Inc., et al.* (Doc. 272, Exh. G). The *Patrick* decision, authored by Circuit Judge Joseph S. Johnston, applies Alabama law to circumstances analogous to those presented here (*i.e.*, whether a manufacturer of bare-metal pumps may be held liable for asbestos-containing components made and supplied by third parties). Judge Johnston found that, under Alabama law, "a manufacturer of a non-defective product cannot be held liable for a defective product subsequently associated with that product which it did not manufacture or supply." (*Id.* at 6.) He adopted the legal principle articulated in other jurisdictions that "[s]ince this defendant did not manufacture or market the asbestos-containing material nor did it have control over the type of materials selected, it was not liable." (*Id.* at 8.) The *Patrick* order concluded that "[b]ecause the Plaintiffs have failed to meet the threshold requirement of showing … that the Plaintiff worked with an asbestos-containing product manufactured, sold, distributed or otherwise placed in the stream of commerce by FLOWSERVE, Plaintiffs have failed to establish the requisite causal nexus between such products and Mr. Patrick's injury." (*Id.* at 9.)

court must decide the case the way it appears the state's highest court would.") (citations and internal quotation marks omitted).

Fortunately, Alabama case law does provide helpful guidance to inform such a prediction. In particular, the Alabama Supreme Court has held "that a distributor or manufacturer of a nondefective component is not liable for defects in a product that it did not manufacture, sell, or otherwise place in the stream of commerce." *Sanders v. Ingram Equipment, Inc.*, 531 So.2d 879, 880 (Ala. 1988); *see also Brest v. Chrysler Corp.*, 939 F. Supp. 843, 848 (M.D. Ala. 1996) ("Under *Sanders*, it is well established in Alabama that a manufacturer can only be held liable for defects in the products that it manufactured, sold, or otherwise placed in the stream of commerce."). Moreover, the Eleventh Circuit interpreted Alabama law in analogous circumstances in *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465 (11th Cir. 1993). In that case, the plaintiff's decedent was killed while mounting a Goodyear tire on a multi-piece rim for which the tire had been specifically designed. The plaintiff's evidence was that a defect in the rim (which was manufactured by a third party), not the tire, caused the accident. Relying on *Sanders* for the proposition that the manufacturer of a non-defective component cannot be held liable for injuries caused by a product that it did not manufacture, sell, or otherwise place in the stream of commerce, the Eleventh Circuit concluded that "Goodyear would have no duty to give a warning concerning a mismatched or defective rim manufactured by [someone else]." *Id.* at 472. On the strength of *Sanders* and *Reynolds*, Warren urges this Court to find that Alabama courts would follow the "majority rule" as set forth in *Conner*, *O'Neil* and the other authorities cited *supra*.

Plaintiff counters that Alabama law would impose a duty to warn on Warren in this context. As an initial matter, plaintiff does not and cannot challenge the well-settled principle that, under Alabama products-liability law, "a defect in the product must be affirmatively shown" by the plaintiff. *Tanksley v. ProSoft Automation, Inc.*, 982 So.2d 1046, 1051 (Ala. 2007) (citations omitted). In an attempt to shoulder this burden as to Warren pumps (which, by themselves, are bare metal products to which third-party packing and gaskets are added), plaintiff suggests that Alabama River Pulp's use of dangerous asbestos-containing packing and gaskets on those pumps was a foreseeable modification or alteration of the product which does not relieve Warren of responsibility for the resulting defect (*i.e.*, components that released respirable asbestos dust when replaced). *See generally Sears, Roebuck and Co. v. Harris*, 630

So.2d 1018, 1027 (Ala. 1993) (explaining that "the mere fact that a product has been altered or modified does not necessarily relieve the manufacturer or seller of liability" and that a manufacturer remains liable "if the alteration or modification was reasonably foreseeable" to it). Plaintiff's theory, then, is that Alabama River Pulp's use of asbestos-containing packing and gasket materials was a foreseeable modification to Warren pumps, for which Warren owed a duty to warn under Alabama law, and that this Court therefore should not apply the "bare metal defense" doctrine.

There is an obvious tension between the *Sanders* tenet that a manufacturer is not liable for defects in a product that it did not place in the stream of commerce, on the one hand, and the *Sears* ruling that a manufacturer is liable for alterations to its product that are reasonably foreseeable. If the alteration giving rise to liability under *Sears* is the addition of a component part that the defendant manufacturer did not place in the stream of commerce (and for which *Sanders* would preclude liability), then does the *Sanders* rule or the *Sears* rule control? Fortunately, the Alabama Supreme Court answered this question in *Hannah v. Gregg, Bland & Berry, Inc.*, 840 So.2d 839 (Ala. 2002). In *Hannah*, the plaintiff's decedent was killed in a workplace accident involving machines whose electrical controls included control panels provided by Westinghouse. The plant operator modified the Westinghouse control panels by adding additional buttons. Plaintiff's theory was that the accident's cause was a worker pressing the wrong button on the Westinghouse control panel. When plaintiff sued under the AEMLD, Westinghouse argued that it was entitled to summary judgment under *Sanders* because the defects in the industrial machines were unrelated to the control panel it supplied. The *Hannah* Court rejected this argument, reasoning that (i) plaintiff's theory was that the Westinghouse controls themselves were defective because they omitted safety devices, and (ii) "*Sanders* is inapplicable when the plaintiff seeks to recover based upon the theory that the product supplied by the defendant is itself defective." *Id.* at 855. So *Hannah* teaches that if a manufacturer is sued for defects in its own product (rather than for defects in some third party's component part used with that product), then *Sanders* does not preclude liability under Alabama law.

Considering all of the foregoing authorities in the aggregate, the Court concludes that (i) the prevailing majority rule in other jurisdictions is to recognize the "bare metal defense" (under which a pump manufacturer such as Warren cannot be liable for a third party's asbestos materials used with its products, where the pump manufacturer was not in the chain of

distribution of such asbestos-containing materials); (ii) the trend in other jurisdictions favors adoption of that defense for sound and even compelling policy reasons;[12] (iii) that defense is a logical outgrowth and application of Alabama law as summarized in *Sanders*, *Hannah*, *Reynolds* and *Brest*; and (iv) at least one trial court in Alabama has expressly adopted the defense and concluded that a pump defendant has no liability under Alabama law for third-party asbestos-containing gaskets and packing. In light of this survey of applicable law, the undersigned is of the opinion that the Alabama Supreme Court would adopt the bare metal defense as a modest extension and application of the rule in *Sanders*, subject to the *Hannah* caveat that the defense is inapplicable if the defendant is being sued for defects in its own product. Neither plaintiff nor defendant identifies serious grounds for disagreement with this assessment of how the Alabama Supreme Court would resolve the issue; therefore, the Court's analysis of Warren's Rule 56 Motion will proceed in accordance with that forecast.

## 2. Application of Bare Metal Defense to Record Facts.

To recapitulate the record evidence, Warren manufactured and sold pumps. Some of those pumps contained gasket and packing components, and some of those components had encapsulated asbestos fibers. These components were manufactured and supplied by third parties, not by Warren. The Alabama River Pulp paper mill where Morgan worked commenced

---

[12]     As one court explained, "Where, as here, the defendant manufacturer did not incorporate the defective component into its finished product and did not place the defective component into the stream of commerce, the rationale for imposing liability is no longer present. The manufacturer has not had an opportunity to test, evaluate, and inspect the component; it has derived no benefit from its sale; and it has not represented to the public that the component part is its own." *O'Neil*, 266 P.3d at 998-99 (citations omitted); *see also Faddish*, 881 F. Supp.2d at 1373-74 (justification for products liability is "to encourage manufacturer accountability and to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather tha[n] by the injured persons who are powerless to defend themselves," but those interests are inapplicable for a defendant "who had no control over the type of insulation the [end user] would choose and derived no revenue from sale of asbestos-containing products used" at that facility) (citations and internal quotation marks omitted); *Conner*, 842 F. Supp.2d at 800-01 (observing that "products-liability theories rely on the principle that a party in the chain of distribution of a harm-causing product should be liable because that party is in the best position to absorb the costs of liability into the cost of production," but that "this policy weighs against holding manufacturers liable for harm caused by asbestos products they did not manufacture or distribute because those manufacturers cannot account for the costs of liability created by the third parties' products").

operations in 1978 and utilized Warren pumps, which were purchased for that facility in brand-new condition. Periodically, Alabama River Pulp would replace its Warren pumps' packing and gaskets with replacement components that contained asbestos, and were manufactured and supplied by third parties. The record is devoid of evidence that Warren supplied or had any involvement with the production, selection, ordering, or shipment of replacement packing and gaskets used by Alabama River Pulp. Plaintiff seeks to hold Warren liable in this action because the process of replacing packing and gaskets on its pumps at Alabama River Pulp produced dust, which Morgan breathed because he worked as foreman in the machine and pump shops in close proximity to workers performing these tasks. Plaintiff's theory is that the dust from these packings and gaskets contained asbestos and substantially caused or contributed to Morgan's contraction of malignant mesothelioma.

At the outset, plaintiff endeavors to shoehorn this case within the *Hannah* caveat to *Sanders*, insisting that the *Hannah* situation (in which a plaintiff sought to recover on a theory that the defendant's product is itself defective) "is precisely the situation at hand in the present case." (Doc. 317-1, at 36.) Obviously, no asbestos dust or fibers emanated from Warren pumps because those were bare metal; rather, any dust encountered during the process of replacing packing and gaskets on those machines would be from the packing and gaskets, not from the pumps. Nonetheless, plaintiff posits that Warren's liability in this case derives "in part from the defective design of its pumps that required the use of asbestos-containing component parts." (*Id.*) But plaintiff has identified no record evidence – and the Court has found none – that the Warren pumps in use at Alabama River Pulp "required the use of asbestos-containing component parts." There is no indication, for example, that these pumps would not function properly with non-asbestos packing or gaskets.[13] Morgan conceded awareness "that packing material might

---

[13] At best, plaintiff points to an excerpt from Morgan's deposition in which plaintiff's counsel asked whether Warren pumps, "in your opinion, require the use of asbestos … insulation." (Morgan Dep. III, at 173.) Morgan answered affirmatively, indicating that the pump "just wouldn't work satisfactory" without asbestos "insulation." (*Id.*) However, the record reveals neither personal knowledge nor expertise that Morgan had concerning the efficacy of asbestos versus non-asbestos components in Warren pumps. By all appearances, he was speculating. There was no indication, for example, that he had ever operated a Warren pump with components that were not made of asbestos, much less that such a procedure caused the pump to fail. And the question as framed was about "insulation," rather than packing or gaskets (which the Court understands to be used to seal the device and prevent leakage). Morgan's son (Continued)

not have asbestos in it" and that "some gaskets might not have asbestos in it [*sic*]." (Morgan Dep. I, at 232.) And Morgan candidly admitted the he could not tell the difference just by looking at packing and gaskets whether they were made of asbestos or not. (*Id.* at 232-33.) On this record, a reasonable factfinder could not conclude that the Warren pumps in use at Alabama River Pulp were designed to <u>require</u> asbestos packing and gaskets, to the exclusion of other kinds of materials. Of course, speculation and conjecture are not valid grounds for denying summary judgment relief.[14] Thus, to the extent that plaintiff seeks to hold Warren liable on a defective design theory, that theory cannot withstand Rule 56 scrutiny. Mere compatibility of Warren pumps with asbestos-containing products is not a design defect. *See O'Neil*, 266 P.3d at 298-99 ("[N]o evidence showed that the design of defendants' products required the use of asbestos components, and their mere compatibility for use with such components is not enough to render them defective.").

There being no record basis for a defective design claim against Warren and plaintiff not having delineated any other ground for his claim that the pumps themselves were defective, the claims against Warren lie outside the *Hannah* caveat (*i.e.*, that a manufacturer may be held liable, notwithstanding *Sanders*, when the plaintiff pursues claims that the defendant's product is

---

testified that "typically, there's not" external insulation on Warren pumps in paper mills. (Ronald Melvin Morgan Dep., at 95.) Plaintiff has made no argument that Warren insulation caused Morgan's illness. Besides, plaintiff's evidence also includes uncontroverted statements that certain Warren pumps used asbestos packing and gaskets, and certain others did not. Indeed, Morgan himself admitted that some packing and gaskets are made of asbestos and others are not, and that he could not tell the difference between them just by examining the part. All of this evidence (which plaintiff presents on summary judgment) belies any notion that Warren pumps at Alabama River Pulp were inoperable unless their components were made of asbestos. Viewing the record as a whole, a rational fact finder could not conclude that Warren pumps required use of asbestos packing and gaskets in order to function.

[14]    "Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted); *see also Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("A 'mere scintilla' of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment."). Simply put, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citation omitted).

itself defective).  Plaintiff seeks to hold Warren liable not because its pumps were defective, but because Alabama River Pulp installed asbestos packing and gaskets in those pumps.  The asbestos components, not the pumps, were the defect.  But Warren neither manufactured the packing and gaskets nor placed them in the stream of commerce; indeed, Morgan's testimony is that those components "would come from a spare part that purchasing had bought from somebody."  (Morgan Dep. I, at 232.)  The clear thrust of the bare metal defense is that a manufacturer cannot be held liable for asbestos-containing products used in conjunction with its bare metal pumps, absent evidence that the manufacturer was part of the chain of distribution for those components.  Accordingly, to the extent that plaintiff would predicate liability on a theory that Warren "fail[ed] to warn of the dangers presented by these component parts" despite knowledge that the components supplied with its pumps "would foreseeably be replaced by comparable asbestos-containing components" (doc. 317-1, at 36), those claims fail as a matter of law.  Under the bare metal defense, Warren is not liable for harm caused by, and owed no duty to warn Morgan or anyone else concerning the hazards of, asbestos-containing packing and gaskets that users of its pumps might install, where Warren did not manufacture, sell or distribute such asbestos-containing components to Alabama River Pulp.[15]

Notwithstanding the foregoing, plaintiff seeks to forestall this result on two additional grounds.  First, plaintiff insists that the bare metal defense does not exonerate Warren because

---

[15]  *See Lindstrom*, 424 F.3d at 497 (asbestos defendant "cannot be held responsible for asbestos-containing material that … was incorporated into its product post-manufacture"); *Faddish*, 881 F. Supp.2d at 1371 ("a manufacturer's duty to warn, whether premised in negligence or strict liability theory, generally does not extend to hazards arising exclusively from *other* manufacturer's products, regardless of the foreseeability of the combined use and attendant risk"); *Surre*, 831 F. Supp.2d at 801-02 (boiler manufacturer owed no duty to warn, as a matter of law, where defendant did not manufacture or place into stream of commerce the asbestos to which plaintiff was exposed, there was no evidence that boilers required asbestos insulation to function, and record did not show that defendant played role in end user's decision to utilize asbestos insulation); *O'Neil*, 266 P.3d at 998 ("[N]o case law … supports the idea that a manufacturer, after selling a completed product to a purchaser, remains under a duty to warn the purchaser of potentially defective additional pieces of equipment that the purchaser may or may not use to complement the product bought from the manufacturer.") (citation omitted); *Braaten*, 198 P.2d at 385 ("a manufacturer is not liable for failure to warn of the danger of exposure to asbestos in insulation applied to its products if it did not manufacture the insulation and was not in the chain of distribution of the insulation," and "[i]t makes no difference whether the manufacturer knew its products would be used in conjunction with asbestos insulation").

"Plaintiff has produced evidence that Decedent was exposed to original gaskets from Warren pumps." (Doc. 317-1, at 38.) The theory is that Warren sent brand-new pumps to Alabama River Pulp with original equipment manufacturer ("OEM") gaskets, to which Morgan was exposed by being present when the OEM gaskets were changed out. Certainly, the bare metal defense would not preclude Warren from being liable if Morgan were exposed to asbestos dust from OEM components distributed and placed in the stream of commerce by Warren (as opposed to replacement components, for which there is zero evidence that Warren was part of the chain of distribution). There is record evidence that the mill was new when Morgan began working there.[16] Moreover, Morgan testified that brand-new Warren pumps arrived at Alabama River Pulp with a pre-installed gasket "where you'd put the impeller into the suction housing, that would come with the pump." (Morgan Dep. I, at 232.) So far, so good.

Where this argument breaks down is that plaintiff has presented nothing more than speculation that (i) those OEM internal impeller gaskets contained asbestos, (ii) the process of replacing those particular gaskets created dust,[17] and (iii) Morgan was physically present during the asbestos dust-creating event when those original components were replaced at Alabama River Pulp. Morgan candidly admitted, "Oh, no, no, I wouldn't know" when asked if he could discern whether a gasket replaced on a Warren pump was the original gasket. (Morgan Dep. I, at 231.) Certainly, Morgan never testified that he replaced (or was in close proximity while others replaced) the OEM gaskets in Warren pumps. There is, accordingly, no factual basis that might

---

[16]    Indeed, plaintiff cites testimony that when Morgan began working at Alabama River Pulp, "it was brand new. … It was original equipment that was purchased from the manufacturer and had not been rebuilt or modified outside of what was done during the manufacturing process. It was new." (Ronald Melvin Morgan Dep., at 250-51.) There was also testimony that Morgan and his crew were responsible for repairing Warren pumps at Alabama River Pulp.

[17]    Morgan testified that each Warren pump at Alabama River Pulp included "three gaskets at least," including among them "a gasket for the piping" and "a gasket for the rotating element." (Morgan Dep. I, at 231.) Plaintiff's only evidence of OEM gaskets supplied by Warren relates to the internal impeller gasket, yet the record is silent as to what, if any, dust was created when an internal impeller gasket (as opposed to the other kinds of gaskets on a Warren pump) was replaced. The Court cannot and will not assume in the absence of supporting evidence that the dust-creation phenomenon that Morgan described with respect to gaskets in general also applied specifically to those internal impeller gaskets on Warren pumps.

support a reasonable conclusion that Morgan was exposed to asbestos releases from the removal and replacement of OEM internal impeller gaskets supplied with Warren pumps.[18]

Second, plaintiff attempts to create Warren liability on the theory that it recommended replacement parts for its pumps in a manual used by Alabama River Pulp employees. The idea is that Warren "specif[ied] particular gaskets and packing for use" (doc. 317-1, at 38), and is therefore culpable for any asbestos exposure to Morgan arising from such specifications. Setting aside the legal merit of that contention, the facts simply do not support it. The only evidence cited by plaintiff for such a proposition is general testimony that "every manufacturer has the recommended spare parts in their OEM manuals that the store room would generate their list of in-stock inventory that they would have." (Ronald Melvin Morgan Dep., at 101.) Plaintiff identifies no evidence whatsoever that (i) Warren provided such a manual to Alabama River Pulp in connection with its pumps; (ii) if so, what types of replacement packing and gaskets were recommended therein; (iii) whether those recommended replacement components did or did not contain asbestos; and (iv) whether Alabama River Pulp adhered to those recommendations in ordering and stocking replacement packing and gaskets for Warren pumps during the relevant time period.[19] Without such a factual predicate, any notion that Warren is liable because its recommendations caused Alabama River Pulp to use asbestos-containing replacement packing

---

[18]     Even if such evidence did exist, plaintiff might run headlong into a limitations problem with regard to asbestos exposures from the OEM gaskets. Recall that Morgan began working at Alabama River Pulp in 1978. If his exposures to asbestos released from OEM gaskets from Warren pumps happened earlier than May 19, 1979, plaintiff's claims relating to such exposures would be time-barred under well-settled Alabama law. *See, e.g., Holland v. Armstrong Int'l, Inc.*, 2012 WL 7761487, *1 n.1 (E.D. Pa. Nov. 30, 2012) ("[T]he applicable Alabama statute of limitations bars claims arising from asbestos exposure occurring prior to May 19, 1979. Therefore, these claims are[] barred."). Plaintiff identifies no facts that might support a finding that the OEM gaskets on Warren pumps at Alabama River Pulp were first replaced after May 19, 1979.

[19]     At most, plaintiff cites testimony from Ronald Melvin Morgan that the manufacturer of replacement components for Warren pumps at Alabama River Pulp "would be OEM as far as I know, Warren." (*Id.* at 270.) But the record reveals no foundation for this testimony, or any personal knowledge that the witness might have had. Indeed, the witness's speculation and guesswork were laid bare when he explained that Warren "recommended their own spare parts. Everybody does." (*Id.* at 270-71.) Of course, plaintiff's own evidence confirms that Warren did not have "their own spare parts," and this testimony amounts to nothing more than a guess, which is entitled to no deference on summary judgment.

and gaskets in conjunction with its pumps amounts to mere conjecture that cannot defeat Warren's Rule 56 motion.

## IV.    Conclusion.

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citation omitted). Such is the case here. This record, taken as a whole, could not lead a rational trier of fact to find that Morgan was exposed to asbestos after May 19, 1979 from a product that Warren manufactured, sold, distributed, or otherwise placed in the stream of commerce. Of course, from 1979 through 1992, Morgan worked around and in close proximity to Warren pumps. But those pumps were bare metal. Plaintiff has adduced no evidence that they were defective. They did not emit asbestos dust or fibers. To be sure, those pumps were used with components that might have contained asbestos, and Morgan might have been exposed to dust from packing and gaskets when they were replaced. The pumps' mere compatibility for use with asbestos-containing components is not a design defect. Moreover, aside from OEM components as to which there is no evidence of exposure by Morgan, plaintiff has not shown that Warren was involved in the chain of distribution for those packing and gasket materials, all of which were manufactured and sold by third parties.

Under *Sanders* and other Alabama authority, as well as the reasonable prediction that the Alabama Supreme Court would adopt the majority rule and extend *Sanders* principles to embrace the so-called "bare metal defense," the Court concludes that Warren owed no duty to warn under Alabama law for asbestos exposures from packing and gaskets that Warren did not manufacture, sell, distribute or otherwise place in the stream of commerce. Absent a causal nexus between Warren's products (*i.e.*, the pumps) and Morgan's injuries and death, plaintiff's claims against this defendant fail, as a matter of law. Plaintiff offers nothing more than conjecture and speculation to create such a nexus. That is not enough.

In other words, no reasonable jury could conclude from this record that Morgan's illness and death were caused by asbestos exposure that (i) was attributable to Warren and (ii) occurred after the effective date of the discovery rule of accrual fashioned by § 6-2-30(b).[20] Accordingly,

---

[20]    To be sure, plaintiff's evidence shows that Morgan was exposed to asbestos-containing products manufactured by other entities after May 19, 1979. But applicable law (Continued)

Warren is entitled to summary judgment because the record lacks sufficient evidence of product identification / causation within the applicable limitations period.  *See Lee v. Celotex Corp.*, 764 F.2d 1489, 1491 (11th Cir. 1985) (defendant entitled to summary judgment where "[t]he allegation that plaintiff was exposed to defendant's asbestos-containing product is not supported by reasonable inferences arising from the undisputed facts, but is based on speculation and conjecture that renders them mere guesses or possibilities"); *Blackston v. Shook and Fletcher Insulation Co.*, 764 F.2d 1480, 1481 (11th Cir. 1985) (rejecting notion that plaintiff can show that he "was exposed to the asbestos in a defendant's products by simply showing that he worked at a job site at a time when the defendant's asbestos-containing products were used").

For all of the foregoing reasons, the Court finds that there are no genuine issues of material fact, and that movant is entitled to judgment as a matter of law.  Defendant Warren Pumps, LLC's Motion for Summary Judgment (doc. 267) is **granted**, and plaintiff's claims against that defendant are **dismissed with prejudice**.  The Clerk of Court is directed to **terminate** Warren Pumps as a party defendant.  Warren's Motion for Leave to File Brief in Excess of Page Limitation (doc. 361) is **granted**.

DONE and ORDERED this 30th day of August, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

imposes on plaintiff the burden of proving exposure to each particular defendant's products, not just proving exposure to asbestos in general.  *See, e.g., Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir. 1990) ("the issue is whether a reasonable jury could conclude in this case by a preponderance of the evidence presented, that Mr. Hoffman was exposed to Armstrong's asbestos products, and that the exposure was a proximate cause of his injury"); *Lee v. Celotex Corp.*, 764 F.2d 1489, 1490 (11th Cir. 1985) ("The major factual issue at the summary judgment stage in asbestos litigation is whether plaintiff was exposed to the products of the defendant."); *Blackston v. Shook and Fletcher Insulation Co.*, 764 F.2d 1480, 1483 (11th Cir. 1985) ("Reasons behind the requirement that plaintiffs prove exposure to a particular defendant's products in order to establish proximate cause are well-stated in cases refusing to impose market-share or industry-wide liability upon asbestos manufacturers.").