# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| RONALD MELVIN MORGAN, | ) | |
| as Personal Representative for the Estate | ) | |
| of Rueben Morgan, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 11-0535-WS-B |
| | ) | |
| BILL VANN COMPANY, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter comes before the Court on defendant CBS Corporation's Motion for

Summary Judgment (doc. 266). The Motion has been briefed and is ripe for disposition.[1]

---

[1]     Also pending is CBS Corporation's Motion to Strike (doc. 359), in which movant
argues that certain evidence upon which plaintiff relies is speculative, hearsay, a response to
leading questions, or violates the rule of completeness. The Motion to Strike is **denied** in its
entirety. Taking these arguments in reverse order, CBS Corporation has misapplied Rule 106,
Fed.R.Evid. Contrary to movant's position, a litigant need not submit an entire document as a
summary judgment exhibit. In fact, the Local Rules of this District Court are clear that "[i]f
discovery materials are germane to any motion or response, *only the relevant portions of the
material shall be filed*." LR 5.5(c) (emphasis added). Plaintiff complied with this requirement.
If CBS Corporation believes that some other portion of an exhibit should be included, its remedy
is to file that portion as an exhibit to its own brief, not to move to strike the part that plaintiff
filed. As for movant's request "to strike all testimony elicited in response to leading questions"
(doc. 359, ¶ 3), there is no absolute prohibition on use of such questions on direct examination.
The applicable rule is that "[l]eading questions should not be used on direct examination except
as necessary to develop the witness's testimony." Rule 611(c), Fed.R.Civ.P. Authority is legion
for the proposition that use of leading questions on direct examination may be permitted in the
trial court's discretion. This ground for the Motion to Strike is misguided. As for CBS
Corporation's hearsay and speculation objections, movant provides no explanation for why the
draconian step of striking this testimony from the record (rather than simply finding that it fails
to give rise to genuine issues of material fact on summary judgment) is an appropriate remedy.
Exhibits are not stricken (and motions to strike should not be filed in federal court) as a kneejerk
reaction whenever a litigant is unhappy with either the contents of an exhibit or the other side's
arguments drawn from that exhibit. *See, e.g., Zukowski v. Foss Maritime Co.*, 2013 WL
(Continued)

## I.    Relevant Background.

This is an asbestos action pending against 11 defendants,[2] alleging various state-law tort claims and a wrongful death cause of action based on the alleged exposure of plaintiff's decedent, Rueben Morgan, to asbestos-containing products at various times and locations. Morgan was diagnosed with malignant mesothelioma (a disease commonly linked to asbestos exposure) in or about February 2011.  (Doc. 199, at Exh. A.)  He died on or about November 5, 2012, at the age of 79.  (Doc. 206, at Exh. A.)

On May 4, 2011, less than three months after his diagnosis, Morgan initiated this litigation against 42 named defendants (including CBS Corporation).  Morgan's pleadings alleged that he "was exposed to asbestos dust, asbestos particles, asbestos containing materials and products that were produced, manufactured, specified for use, installed, distributed, sold and/or placed into the stream of commerce by the producer and/or distributor Defendants during his employment as a machinist, engine room worker, and mechanic," as a result of which he was "diagnosed with an asbestos related disease." (Doc. 1, Exh. A-2, at 6.)  On July 29, 2011, Morgan amended his Complaint to name certain additional defendants.  (Doc. 4, Exh. B, at 1.)

CBS Corporation is named as a defendant in its capacity as successor in interest to Westinghouse Electric Corporation.  For purposes of this Order and to avoid confusion, that defendant will be referenced herein as "Westinghouse."  Record facts concerning Morgan's

---

1966001, *3 (S.D. Ala. May 10, 2013) ("Motions to strike are generally disfavored as time wasters that distract the court from the merits of a party's claim.... To the extent that the parties thought their opponent's exhibits warranted a challenge, a footnote or two in an opposition or reply brief would have sufficed.") (citations omitted); *Essex Ins. Co. v. Foley*, 827 F.Supp.2d 1326, 1327 n.1 (S.D. Ala. 2011) (explaining why it is disfavored and generally inappropriate to strike arguments or other portions of filings simply because they lack merit, or "may suffer from a logical or factual defect") (citation omitted); *Exhibit Icons, LLC v. XP Companies, LLC*, 609 F.Supp.2d 1282, 1300 (S.D. Fla. 2009) ("Motions to strike, however, are generally disfavored by the court," and are a "drastic remedy to be resorted to only when required for the purposes of justice") (citations omitted).

[2]    Initially, there were numerous other named defendants; however, the ranks of defendants have dwindled as a result of settlements and voluntary dismissals.  All 11 remaining defendants have pending, ripe summary judgment motions that have been taken under submission.

interactions with Westinghouse products are as follows:[3] Morgan was assigned to the U.S. Coast Guard weather cutter *Mendota* in the late 1950s and 1960s, working as a machinist in the vessel's engine room. (Morgan Dep. I, at 65-67.)[4] The *Mendota* utilized a Westinghouse turbine generator, which supplied power to a Westinghouse electric motor that was the vessel's primary source of propulsion. (*Id.* at 151-52.) The Westinghouse turbine was equipped with block and woven insulation made of asbestos that produced dust to which Morgan was directly exposed in close proximity on an ongoing basis. (*Id.* at 169-72; Morgan Dep. III, at 118-20.)

From 1965 through 1967, Morgan was employed as a machinist at a civilian shipyard in Norfolk, Virginia. (Morgan Dep. I, at 78.) In this capacity, Morgan utilized a foul-smelling tubing material called "Micarta" to machine bushings for the hinges of doors on landing ships. (*Id.* at 181-82; Morgan Dep. III, at 114.)[5] Morgan would bore holes through this material, which created dust that he would then breathe for the duration of the one-hour project "to get the size and finish that you wanted on each piece." (Morgan Dep. III, at 115.) Morgan testified that, to the best of his knowledge, the Micarta he used at the Norfolk shipyard contained asbestos. (*Id.* at

---

[3]     The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Thus, plaintiff's evidence is taken as true and all justifiable inferences are drawn in his favor. Federal courts cannot weigh credibility at the summary judgment stage. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices."). Thus, the Court will "make no credibility determinations or choose between conflicting testimony, but instead accept Plaintiff's version of the facts drawing all justifiable inferences in Plaintiff's favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

[4]     Morgan's deposition was taken multiple times in this case, including discovery depositions taken on August 16, 2011 and August 25, 2011, and trial depositions taken on September 2 and 8, 2011. For purposes of this Order, citations to Morgan's August 16 deposition will take the form "Morgan Dep. I," while citations to the August 25 deposition will take the form "Morgan Dep. II," those to the September 2 deposition will take the form "Morgan Dep. III," and those to the September 8 deposition will take the form "Morgan Dep. IV."

[5]     Micarta has been described in the record as "[j]ust the insulating material used in electrical equipment." (Ronald Melvin Morgan Dep., at 285.) It was also characterized as a "generic term[] for insulating material." (*Id.* at 347.) Morgan identified Micarta as a plastic laminate with "[s]ome kind of fiber" in its substrate. (Morgan Dep. I, at 184-85.)

116.)  When asked why he believed that to be so, Morgan responded, "I think I was told that it did.  I don't know."  (*Id.*)

The record documents no further involvement between Morgan and Westinghouse products until the period of 1978 through 1992, when he worked at the Alabama River Pulp paper mill as a multi-craft maintenance mechanic and foreman.  (Morgan Dep. I, at 95-96.)  Morgan testified that he encountered Micarta in that job because "we machined a good bit of micarta there for bus parts and stuff, insulation."  (*Id.* at 182.)  At least once a year, the Alabama River Pulp mill would have a major shutdown that lasted weeks, during which Morgan would oversee workers machining, sawing, drilling and shaping the Micarta in accordance with the electrical superintendent's specifications.  (*Id.* at 191-92; Morgan Dep. III, at 113.)  When the Micarta was cut, shaped and manipulated in this fashion, "it was blowing all over the place, the smaller parts.  And then we got to sweep it up and clean it up from the floor or whatever."  (Morgan Dep. I, at 192.)  Morgan would breathe in the resulting dust during this process.  (Morgan Dep. III, at 113-14.)  As for the Micarta products used at Alabama River Pulp, Morgan testified, "I believe they did" contain asbestos.  (*Id.* at 117.)

Two critical, recurring factual issues in the Rule 56 briefing are whether the Micarta that Morgan encountered contained asbestos, and whether it was a Westinghouse product.  With regard to the former inquiry, Morgan was asked pointblank if he knew whether any Micarta products he had used actually contained asbestos.  His response was, "As far as knowing, no." (Morgan Dep. I, at 188.)  He also answered in the negative when asked if he could tell by looking at a piece of Micarta whether or not it contained asbestos.  (*Id.* at 188-89.)  As for the latter query, Morgan identified the Micarta as a Westinghouse product, but his testimony reveals considerable doubt on this point.  When asked, "how can you tell that what you were using was manufactured by Westinghouse as opposed to any other competitor that made a plastic laminate?" Morgan responded, "I couldn't.  They … just told me, and I think I seen the sign on it that it was micarta and the people who gave me the job said it was."  (Morgan Dep. I, at 189-90.)  Plaintiff's evidence is that Westinghouse has admitted in discovery responses in other litigation that it sold Micarta and that its Micarta "at some point in time may have contained some amount of asbestos," with the caveat that "only certain variations of these products contained asbestos during certain periods; many other variations contained no asbestos."  (Doc. 323-7, at 7-8.)

Aside from Micarta, Morgan associated Westinghouse with asbestos-containing insulation on lower voltage controls at Alabama River Pulp. (Morgan Dep. IV, at 97-101.) Morgan's testimony was clear that he was not responsible for any low-voltage electrical products housed in breaker boxes at Alabama River Pulp. (*Id.* at 102.) Nonetheless, he believed that the insulation therein contained asbestos because it was "just common sense" given the product's application to "keep from having a fire there." (*Id.* at 99.) There is no evidence that Morgan ever worked with the insulation materials in those lower voltage controls or that he was in close proximity to anyone else working with those materials. Indeed, Morgan acknowledged that he did not recall ever seeing work done on internal parts of Alabama River Pulp's electrical distribution equipment manufactured by Westinghouse. (*Id.* at 110.) As for whether Westinghouse manufactured the insulating material used in its switch gear, plaintiff's son Ronald Morgan (who also worked at Alabama River Pulp for a time) testified, "I don't know. It could be them, I don't know. It could be some other supplier." (Ronald Melvin Morgan Dep., at 164-65.)

## II. Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual

determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

**III.    Analysis.**

Westinghouse's Motion for Summary Judgment proceeds from the premise that Morgan has no timely claims of sufficient exposure to Westinghouse's asbestos-containing products to support liability under Alabama law.  In analyzing this contention, the Court considers the following categories of evidence in turn:  (i) evidence of Morgan's exposure to Westinghouse products during his employment in the Coast Guard and at the Norfolk shipyard (spanning portions of the time frame from 1959 through 1967); (ii) evidence of Morgan's exposure to Micarta at Alabama River Pulp during the period of 1978 to 1992; and (iii) evidence of Morgan's exposure to Westinghouse low-voltage equipment at Alabama River Pulp during the same time period.

**A.    *Morgan's Exposure to Westinghouse Products from 1959 through 1967.***

The parties' summary judgment briefs devote considerable attention to discussing evidence that Morgan encountered and worked directly with Westinghouse asbestos-containing products when he was in the U.S. Coast Guard serving on the cutter *Mendota* in the late 1950s and early 1960s, and when he worked as a machinist in the the Norfolk shipyard from 1965 to 1967.  Under well-established, unambiguous Alabama law, however, any claims against Westinghouse for such exposures are time-barred by the applicable Alabama limitations period.  *See* Ala. Code § 6-2-38(*l*) ("All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years.").[6]

---

[6]    Morgan's death on November 25, 2012 and his personal representative's prompt amendment of the pleadings to add a wrongful death claim within the § 6-2-38 period do not alter the timeliness analysis.  To the contrary, Alabama law is clear that if Morgan's personal injury claims were untimely filed, then his personal representative cannot maintain a viable wrongful death cause of action arising from those personal injuries.  *See* Ala. Code § 6-5-410(a) ("A personal representative may commence an action … for the wrongful act, omission, or negligence … whereby the death of the testator or intestate was caused, ***provided the testator or intestate could have commenced an action for the wrongful act, omission, or negligence if it had not caused death***.") (emphasis added).  Stated differently, if Morgan's personal injury claims against Westinghouse for exposure to asbestos are time-barred, then so are the wrongful death claims relating to those injuries.  *See, e.g., Henderson v. MeadWestvaco Corp.*, 23 So.3d
(Continued)

Historically, Alabama applied a "last exposure rule" governing commencement of the limitations period for claims alleging personal injuries resulting from exposure to a harmful substance, regardless of when those injuries were manifested. *See Garrett v. Raytheon Co.*, 368 So.2d 516, 521 (Ala. 1979) ("[W]e hold that the statute of limitations … began to run when plaintiff was last exposed to radiation and plaintiff's ignorance of the tort or injury, there being no fraudulent concealment, does not postpone the running of the statute until the tort or injury is discovered.").

Shortly after *Garrett* was decided, the Alabama legislature stepped in to modify the judge-made accrual rule in the asbestos context, enacting the following provision: "A civil action for any injury … resulting from exposure to asbestos, including asbestos-containing products, shall be deemed to accrue on the first date the injured party, through reasonable diligence, should have reason to discover the injury giving rise to such civil action." Ala. Code § 6-2-30(b). This "discovery rule" for accrual of personal injury claims in asbestos cases took effect on May 19, 1980. The following year, the Alabama Supreme Court examined the retroactivity of § 6-2-30(b), and held that if, before the effective date of that provision, "one year had elapsed between the date of plaintiff's exposure and the date on which plaintiff's action was commenced, then that claim is nevertheless barred by the statute of limitations." *Tyson v. Johns-Manville Sales Corp.*, 399 So.2d 263, 267 (Ala. 1981). Subject to that important caveat, the *Tyson* Court expressly upheld § 6-2-30(b)'s establishment of "a discovery rule for the accrual of asbestos injury actions in Alabama." *Id.* at 272.

---

625, 630 (Ala. 2009) (affirming dismissal of asbestos-related wrongful death claim as time-barred under § 6-5-410(a), where decedent's personal injury claims for asbestos exposure accrued in 1972, such that at the time of his death, decedent could not have commenced an action for defendant's wrongful act, omission or negligence if it had not caused death); *In re Asbestos Products Liability Litigation (No. VI)*, 2011 WL 3273296, *3 (E.D. Pa. Apr. 15, 2011) (similar). Simply put, Alabama law leaves no doubt that "if a *decedent's* cause of action is time-barred at his or her death, then the decedent's personal representative cannot bring a wrongful death action." *Henderson*, 23 So.3d at 630 (citations omitted). As such, the crucial issue in the timeliness analysis is whether Morgan's personal injury claims related to asbestos exposure are timely. If they are not, then the later-filed wrongful death claim necessarily fails pursuant to § 6-5-410(a).

In the three decades since *Tyson* was decided, Alabama courts have consistently hewed to the principle that if a plaintiff's last exposure to a defendant's asbestos-containing product predated May 19, 1979, then the resulting personal injury claims were time-barred before § 6-2-30(b) was ever enacted and cannot be revived by operation of that statute. *See, e.g., Henderson v. MeadWestvaco Corp.*, 23 So.3d 625, 630 (Ala. 2009) (following *Tyson*'s determination that asbestos claims are time-barred if, as of May 19, 1980, one year had elapsed between the date of exposure and date of commencement of suit); *Johnson v. Garlock, Inc.*, 682 So.2d 25, 28 (Ala. 1996) (reaffirming principle that "§ 6-2-30 cannot apply retroactively to actions already barred by the statute of limitations as interpreted and applied in *Garrett*").[7]

The net result, then, is that Alabama has different rules for accrual of personal injury actions relating to asbestos exposure, depending on whether the last exposure occurred prior to May 19, 1979 (in which case the *Garrett* "last exposure rule" governs) or whether the last exposure occurred thereafter (in which case the § 6-2-30(b) "discovery rule" applies).[8] *See In re*

---

[7]      This bright-line rule has been repeatedly acknowledged by MDL courts applying Alabama law in asbestos cases. *See, e.g., Holland v. Armstrong Int'l, Inc.*, 2012 WL 7761487, *1 n.1 (E.D. Pa. Nov. 30, 2012) ("[T]he applicable Alabama statute of limitations bars claims arising from asbestos exposure occurring prior to May 19, 1979. Therefore, these claims are[] barred."); *Legg v. Armstrong Int'l, Inc.*, 2012 WL 7761488, *1 n.1 (E.D. Pa. Nov. 30, 2012) (same); *In re Asbestos*, 2011 WL 3273296, at *3 ("Based on the tenets of *Henderson* and *Tyson*, Mr. Corley's claim of personal injury resulting from asbestos against the moving defendants … would have accrued in 1973, on the date of his last exposure to asbestos in the U.S. Navy. Based on the one-year statute of limitations applicable to personal injury claims in effect at the time of accrual …, his claim was barred in 1974.").

[8]      In 2008, the Alabama Supreme Court overruled *Garrett* and jettisoned the last-exposure rule in all toxic substance exposure cases (§ 6-2-30(b) having been confined on its face to the asbestos context), in favor of a discovery rule under which "a cause of action accrues only when there has occurred a *manifest*, present injury." *Griffin v. Unocal Corp.*, 990 So.2d 291, 293 (Ala. 2008) (citation omitted). Nonetheless, the *Griffin* Court declined to give its holding broad retroactive effect, declaring instead that "the new accrual rule of toxic-substance-exposure cases will be applied prospectively, except in this case, where it will apply retroactively." *Id.*; *see also Jerkins v. Lincoln Elec. Co.*, 103 So.3d 1, 5 (Ala. 2011) (explaining that *Griffin*'s holding "would apply prospectively only, that is, only to those persons whose last exposure to a toxic substance, and first manifest injury resulting from that exposure, occurred within the two-year period before this Court released its opinion in *Griffin*"). The non-retroactivity of the *Griffin* rule means that it has no application to Morgan's claims for pre-1979 exposure, which accrued under the old *Garrett* rule decades before *Griffin* was decided.

*Asbestos Products Liability Litigation (No. VI)*, 2011 WL 3240827, \*2 (E.D. Pa. July 29, 2011) ("Under Alabama law, all claims for pre–1979 exposure to asbestos must be filed within one year of the last date of exposure. For any exposure to asbestos after May 17, 1980, the claim accrues upon discovery of an asbestos-related disease.").

As the foregoing discussion demonstrates, any claims relating to Morgan's exposure to Westinghouse's asbestos-containing products during the 1959 - 1967 time period are time-barred by straightforward application of black-letter Alabama law, as set forth in *Tyson* and its progeny. *See, e.g., Henderson*, 23 So.3d at 630 ("Tony Henderson's claim of personal injury resulting from exposure to asbestos would have accrued in 1972, on the date of his last exposure to asbestos at CAPCO. Based on the one-year statute of limitations applicable to personal injury claims at the time …, his claim was time-barred in 1973.").

Under Alabama law, Morgan's claims of personal injury resulting from exposure to asbestos insulation on a Westinghouse turbine during his employment in the U.S. Coast Guard would have accrued in 1962, when he last served on the *Mendota*. Likewise, his claims of personal injury concerning exposure to Westinghouse asbestos products at the Norfolk shipyard would have accrued in 1967, when he was last employed there. Based on the one-year statute of limitations applicable at the time, Morgan's claims for these exposures would have become time-barred in 1963 and 1968, respectively, more than 40 years before he sued Westinghouse. By operation of the *Tyson* line of Alabama Supreme Court decisions, those time-barred claims were not revived, revitalized or resuscitated by the Alabama legislature's subsequent enactment of § 6-2-30(b). Plaintiff has offered no persuasive argument or authority that might allow these claims for pre-1979 exposure to asbestos-containing products of Westinghouse to be deemed timely under Alabama law; therefore, Westinghouse's Motion for Summary Judgment will be **granted** insofar as it relates to those pre-1979 events and exposures during Morgan's employment in the Coast Guard and at the Norfolk shipyard.[9]

---

[9]     To be sure, plaintiff's response brief urges the Court to apply *Griffin* retroactively (even though the Alabama Supreme Court has steadfastly declined to do so). Plaintiff also filed a separate memorandum of law advocating that "[t]he Alabama Supreme Court should revisit the holding in *Griffin*" and "call[ing] for a re-examination of *Griffin* and the ruling authorizing prospective-only application" of the discovery rule for accrual of toxic tort claims. (Doc. 321, at 18, 21.) Of course, federal courts applying Alabama law must adhere to the clear pronouncements of the Alabama Supreme Court, and do not have the luxury of "revisiting" those (Continued)

**B.      *Morgan's Exposure to Westinghouse Micarta at Alabama River Pulp.***

"Under Alabama law, when a plaintiff shows post-1979 exposure to asbestos, his or her

action does not 'accrue' until the individual knew or should have known of an asbestos-related

disease." *In re Asbestos*, 2011 WL 3240827, at *3. To avail himself of this more lenient

discovery rule, the plaintiff must satisfy the condition precedent of showing evidence of a post-

1979 exposure to the defendant's products containing asbestos.[10] Plaintiff attempts to meet this

requirement by identifying evidence that Morgan was present in close proximity to Alabama

River Pulp workers who machined, sawed, drilled and shaped Micarta for bus parts and

insulation during the period of 1979 to 1992. Plaintiff's evidence is that this machining process

produced a great deal of dust, and that fans in the machine shop would blow the dust

everywhere, causing Morgan to breathe it of necessity in the course of supervising the work.

The trouble with this line of argument is that plaintiff points to no record evidence

supporting a reasonable inference that the Micarta he encountered at Alabama River Pulp

---

holdings or interpreting Alabama law in a manner that deviates from them. *See, e.g., Pietri v. Florida Dep't of Corrections*, 641 F.3d 1276, 1284 (11th Cir. 2011) ("A state supreme court's interpretation of its law is binding on federal courts."); *World Harvest Church, Inc. v. Guideone Mut. Ins. Co.*, 586 F.3d 950, 957 (11th Cir. 2009) ("When we address issues of state law, like the ones in this case, we are bound by the decisions of the state supreme court."). The unbroken line of Alabama Supreme Court decisions running from *Tyson* to *Johnson* to *Griffin* to *Henderson* to *Jerkins* leaves no doubt that, under Alabama law, the last exposure rule continues to govern accrual of personal injury claims for asbestos exposures predating May 19, 1979; therefore, this Court must follow that rule. Nor does plaintiff materially advance his position by citing Alabama authority for the proposition that an asbestos plaintiff "is entitled to recover all damages which proximately flowed from his injury if his action is brought within the statutory period of limitations." *Cazalas v. Johns-Manville Sales Corp.*, 435 So.2d 55, 57 (Ala. 1983). The question presented on summary judgment is not whether plaintiff is entitled to damages for asbestos exposures pre-dating May 1979, but is instead whether "his action is brought within the statutory period of limitations" at all; therefore, *Cazalas* is inapposite. Without a post-1979 exposure to Westinghouse asbestos-containing products, plaintiff's claims against this defendant necessarily fail. What the measure of damages would be if plaintiff did have any timely claims against Westinghouse is beyond the scope of the summary judgment analysis.

[10]      This proof requirement may be satisfied by circumstantial evidence. *See, e.g., Turner v. Azalea Box Co.*, 508 So.2d 253, 254 (Ala. 1987) (affirming principle that "circumstantial evidence may be used to prove identity" of the manufacturer of a defective product).

contained asbestos. Plaintiff's summary judgment exhibits confirm Westinghouse's statements that "only certain variations of [Micarta] contained asbestos during certain periods; many other variations contained no asbestos." (Doc. 323-7, at 7.) Morgan conceded that he did not know whether the Micarta used at Alabama River Pulp contained asbestos, and that he could not discern from looking at a piece of Micarta whether it was made of asbestos. (Morgan Dep. I, at 188-89.) Morgan further acknowledged that he did not recall the grade of Micarta in use at Alabama River Pulp. (*Id.* at 184.) Ronald Melvin Morgan testified that Micarta is simply a "generic term[] for insulating material" that could be used interchangeably to describe "sheet insulating materials … used in the mill for insulating," and admitted "I don't know" when asked whether such materials contained asbestos. (Ronald Melvin Morgan Dep., at 347-48.)

To rebut this damaging evidence from Morgan, Ronald Morgan, and plaintiff's own exhibits, plaintiff explains that "Morgan believed that the micarta that he used contained asbestos because of its application and because he was told that it contained asbestos." (Doc. 323, at 20.) The former point is unconvincing because Morgan simply assumed that asbestos would be a good material for this application. (Morgan Dep. IV, at 108-09.) But that assumption lacked factual grounding because (i) for Micarta to work properly in this bus parts/insulation context, "it would have to have good electrical insulating quality," but (ii) Morgan knew nothing about the electrical insulating capability of asbestos. (Morgan Dep. I, at 185-86.) Also, Morgan admitted that he had no knowledge of what substitutes might be used for asbestos in Micarta substrates for these electrical applications. (Morgan Dep. IV, at 109-10.) So it is unreasonable for Morgan to guess that the Micarta used in the electrical insulation application contained asbestos, when asbestos by itself is a conductor rather than an insulator of electricity, and Morgan was unaware of whether asbestos substitutes might perform this task as well as or better than asbestos.

Plaintiff's latter argument (*i.e.*, that the Micarta contained asbestos because Morgan "was told that it contained asbestos") is equally unavailing. Morgan's testimony was vague, imprecise, and uncertain, to-wit: "I think I was told that it did. I don't know." (Morgan Dep. III, at 116.) The record sheds no light on who told Morgan that the Micarta contained asbestos, what factual basis or personal knowledge that person might have had for such a statement, or whether any witness who could testify to same might be available at trial. Because Morgan's testimony on this point is obviously hearsay that cannot be reduced to admissible form at trial, and because

Westinghouse has properly objected on this ground pursuant to Rule 56(c)(2), Fed.R.Civ.P., it cannot be considered on summary judgment.

Ultimately, then, the record construed in the light most favorable to plaintiff contains nothing more than speculation that the Micarta machined at Alabama River Pulp for electrical applications contained asbestos. Of course, speculation and conjecture are not valid grounds for denying summary judgment relief. After all, "[s]peculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted); *see also Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("A 'mere scintilla' of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment."). Simply put, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citation omitted). Here, the record taken as a whole would not allow a rational factfinder to conclude that the Micarta to which Morgan was exposed at Alabama River Pulp contained asbestos.[11]

For all of these reasons, plaintiff cannot rely on evidence of Morgan's Micarta exposure at Alabama River Pulp to overcome Westinghouse's Motion for Summary Judgment.

### C.    *Morgan's Exposure to Westinghouse Low Voltage Controls at Alabama River Pulp.*

In a final attempt to establish causation between Westinghouse asbestos-containing products and Morgan's injuries, plaintiff points to evidence that Westinghouse made the low voltage controls used at Alabama River Pulp. However, the defects in proof as to this theory of

---

[11]     Even if plaintiff did have evidence that the Micarta to which Morgan was exposed contained asbestos, this claim would still fail at the Rule 56 stage because of the paucity of proof that Westinghouse manufactured this particular Micarta. After all, Morgan admitted that he could not tell whether the Micarta he used was manufactured by Westinghouse or someone else. (Morgan Dep. I, at 189-90.) And Ronald Melvin Morgan explained that Micarta is simply a "generic term[] for insulating material" and that he had no knowledge "who the manufacturer was" for the "sheet insulating materials" at Alabama River Pulp that he referred to generically as Micarta. (Ronald Melvin Morgan Dep., at 347-48.) So even if the record contained evidence raising a reasonable inference that the Micarta used at Alabama River Pulp contained asbestos (which it does not), there would remain insuperable record deficiencies in plaintiff's speculation that the Micarta was manufactured by or otherwise legally attributable to Westinghouse.

liability are substantial and insurmountable on several levels. First, Morgan's sole basis for stating, "I think this material contains asbestos" was, in his words, "just common sense for … trying to keep – keep from having a fire there. Asbestos is good for that." (Morgan Dep. IV, at 98-100.) However, Morgan plainly was not testifying from personal knowledge. He never explained the basis for his counterintuitive "common sense" assumption that asbestos (which conducts electricity) would be a good product to insulate electrical controls. And Ronald Melvin Morgan's testimony on this point is no more favorable because he conceded lack of knowledge as to whether the Westinghouse gear "did or did not have asbestos as a component of the material." (Ronald Melvin Morgan Dep., at 159.) What we have, then, is nothing more than Morgan's guess that these materials contained asbestos. That is not enough to withstand Rule 56 scrutiny.

Second, even if the Westinghouse electrical distribution equipment at Alabama River Pulp did contain asbestos, Morgan's testimony was that these low voltage electrical products were not his personal responsibility, but were rather the responsibility of other crafts (*i.e.*, electricians). (Morgan Dep. IV, at 102.) So there is no evidence that Morgan ever worked on this Westinghouse gear in any manner that would have exposed him to respirable asbestos fibers.[12] Third, although electricians did work on this equipment, Morgan did not recall ever seeing work being done on internal parts of Westinghouse electrical distribution equipment at Alabama River Pulp. (*Id.* at 110.) Thus, Morgan was not even present when electricians may have done work on this equipment that might have released asbestos dust (of which there is no evidence), so he could not have been exposed to it any kind of reasonably close proximity.

---

[12]    In an effort to shore up this glaring weakness in the evidence, plaintiff relies on Ronald Melvin Morgan's testimony that Morgan "would just maybe go there [to the Westinghouse electrical gear] to take dimensions to fabricate a part, [and] give it to the electrician." (Ronald Melvin Morgan Dep., at 184-85.) Even if this testimony is not speculative (which it appears to be, given the "maybe" qualifier), it does not show exposure to asbestos dust or fibers. By Morgan's own testimony, any asbestos in that Westinghouse gear would "have to be encapsulated inside … something that would be a nonconductor of electricity" in order to function. (Morgan Dep. IV, at 101.) Plaintiff identifies no evidence that encapsulated asbestos fibers pose any risk of harm to anyone, much less that asbestos in this electrical equipment was ever out of this encapsulated state. Thus, nothing in the mere act of going to the electrical equipment and taking dimensions to fabricate a part raises any reasonable inference from which a rational finder of fact could conclude that Morgan was exposed to respirable asbestos from Westinghouse low voltage controls and electrical distribution gear at Alabama River Pulp.

In light of these multiple shortcomings of proof, plaintiff cannot overcome Westinghouse's summary judgment motion based on alleged exposure to asbestos in electrical gear at Alabama River Pulp. *See generally Sheffield v. Owens-Corning Fiberglass Corp.*, 595 So.2d 443, 457 (Ala. 1992) (affirming dismissal of plaintiffs' claims for exposure to boilers containing asbestos "rings," where "the evidence fails to show how the plaintiffs could have been exposed to airborne asbestos fibers released by the rings," "[t]here was no evidence that any of the Foster-Wheeler boilers were ever disassembled or assembled during the periods in which the plaintiffs served aboard the vessels," and "[t]here was no evidence that … plaintiffs had ever seen or handled the rings or knew of their existence").

## IV.    Conclusion.

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citation omitted).  This record, taken as a whole, could not lead a rational trier of fact to find that Morgan was ever exposed to respirable asbestos from Westinghouse products after May 19, 1979.  In other words, no reasonable jury could conclude from this evidence that Morgan's illness and death were caused by asbestos exposure that (i) was attributable to Westinghouse and (ii) occurred after the effective date of the discovery rule of accrual fashioned by § 6-2-30(b).[13]  Accordingly, Westinghouse is entitled to summary judgment on grounds that the record lacks sufficient evidence of product identification / causation within the applicable limitations period.  *See Lee v. Celotex Corp.*, 764 F.2d 1489, 1491 (11th Cir. 1985) (defendant entitled to summary judgment where "[t]he allegation that plaintiff was exposed to

---

[13]       To be sure, plaintiff may well have evidence that Morgan was exposed to asbestos-containing products manufactured by other defendants after May 19, 1979.  But applicable law imposes on plaintiff the burden of proving exposure to each particular defendant's products, not just proving exposure to asbestos in general. *See, e.g., Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir. 1990) ("the issue is whether a reasonable jury could conclude in this case by a preponderance of the evidence presented, that Mr. Hoffman was exposed to Armstrong's asbestos products, and that the exposure was a proximate cause of his injury"); *Lee v. Celotex Corp.*, 764 F.2d 1489, 1490 (11th Cir. 1985) ("The major factual issue at the summary judgment stage in asbestos litigation is whether plaintiff was exposed to the products of the defendant."); *Blackston v. Shook and Fletcher Insulation Co.*, 764 F.2d 1480, 1483 (11th Cir. 1985) ("Reasons behind the requirement that plaintiffs prove exposure to a particular defendant's products in order to establish proximate cause are well-stated in cases refusing to impose market-share or industry-wide liability upon asbestos manufacturers.").

defendant's asbestos-containing product is not supported by reasonable inferences arising from the undisputed facts, but is based on speculation and conjecture that renders them mere guesses or possibilities"); *Blackston v. Shook and Fletcher Insulation Co.*, 764 F.2d 1480, 1481 (11th Cir. 1985) (rejecting notion that plaintiff can show that he "was exposed to the asbestos in a defendant's products by simply showing that he worked at a job site at a time when the defendant's asbestos-containing products were used").

For all of the foregoing reasons, the Court finds that there are no genuine issues of material fact, and that movant is entitled to judgment as a matter of law. Defendant CBS Corporation's Motion for Summary Judgment (doc. 266) is **granted**, and plaintiff's claims against that defendant are **dismissed with prejudice**. The Clerk of Court is directed to **terminate** CBS Corporation as a party defendant. CBS Corporation's Motion to Strike (doc. 359) is **denied**.


DONE and ORDERED this 30th day of August, 2013.


s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE